**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| DIANTI EARLY ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO.: |
| v. ) | 1:22-CV-00816-SCJ |
| ) | |
| OFFICER JOHN MAYS, ) | |
| Individually, as an officer of the ) | |
| UNION CITY POLICE DEPARTMENT, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT JOHN MAYS'S**
**STATEMENT OF UNDISPUTED MATERIAL FACTS FOR**
**WHICH THERE IS NOT A GENUINE ISSUE TO BE TRIED**

COMES NOW, Defendant John Mays, ("Mays") by and through his undersigned counsel of record and pursuant to Rule 56.1(b) of the Local Rules of the United States District Court for the Northern District of Georgia, and hereby submits his statement of undisputed material facts as to which there exists no genuine issues to be tried, in support of his Motion for Summary Judgment, as follows:

1. On or about March 1, 2020, Mays, a Union City Police Officer, was aware of a BOLO for a black Jeep Grand Cherokee ("Jeep") reported as stolen and

that was involved in several crimes in surrounding jurisdictions.[1]

2.     The suspect(s) occupying the Jeep were believed to be armed and dangerous.[2]

3.     While on patrol, Mays observed a vehicle matching the Jeep at the Exxon gas station located at the intersection of Jonesboro Road and Buffington Road.[3]

4.     Mays observed Early had a large bulge at his waistband, which led Mays to believe Early was armed, enter the Jeep.[4]

5.     Mays was unable to see the license plate due to how it was parked; thus, he followed the Jeep in order to run the license plate.[5]

6.     Mays followed the Jeep as it went from the gas station to the Parks of Netherly Apartment Complex, but did not activate his blue lights.[6]

7.     About three-fourths of the way through the apartment complex,

---

[1] Deposition of John Mays, p. 11; 16-19 (November 9, 2022)[Excerpts relied upon are attached as Exhibit 1(hereinafter cited as "Dep. Mays, p. ___."); Deposition of Francisco Cedeno, p. 30-35 (November 8, 2022) (discussing the BOLO for the Jeep Grand Cherokee)[Excerpts relied upon are attached as Exhibit 2 (hereinafter cited as "Dep. Cedeno, p. ___.")].
[2] Dep. Mays, p. 11-12; *see also* Dep. Cedeno, 29-30
[3] Dep. Mays, p. 11, 19; Deposition of Justin Whitehead, p. 12 (January 6, 2023)[Excerpts relied upon are attached as Exhibit 3 (hereinafter cited as "Dep. Whitehead, p. ___."); Deposition of Dianti Early, p. 24-25 (November 18, 2022) [Excerpts relied upon attached as Exhibit 4 (hereinafter cited as "Dep. Early, p. ___.")].
[4] Dep. Mays, p. 12, 20.  (BOLO also stated that the perpetrators were believed to be armed and dangerous).
[5] Dep. Mays, p. 12.
[6] Dep. Mays, p. 12, 20; Dep. Whitehead, pp. 14-15; *see* Dep. Early, p. 25, 38-39; Fulton County 911, CAD Reports and Recording of Dispatch Call; (00:00 – 00:32).  The recording of the 911 Dispatch call is being filed on CD-ROM disk as Exhibit 7.  Hereinafter referred to as "Fulton 911."

dispatch advised the Jeep was reported stolen; thus, Mays activated his lights and siren to initiate a stop.[7]

8. When activating his lights Mays was traveling approximately two car lengths behind.[8]

9. While driving, Mays was observing the two occupants inside the Jeep and watching for potential pedestrians/children.[9]

10. Early refused to stop and continued to drive towards a dead-end in the apartment complex.[10]

11. Mays was preparing himself for a foot pursuit as he entered the dead end.[11]

12. He was looking for a place to stop so he could engage in the foot pursuit.[12]

13. At all times he tried to keep his eyes on Early.[13]

14. After cresting a slight hill, Early opened the door and jumped out of the vehicle while it was still moving.[14]

---

[7] Dep. Mays, p. 13; Dep. Whitehead, p. 15; Fulton 911.
[8] Dep. Mays, p. 24; Dep. Early, p. 49.
[9] Dep. Mays, p. 44, 48.
[10] Dep. Mays, p. 13; Dep. Whitehead, p. 15-16; Dep. Early, p. 25, 42-43; Fulton County 911, see 00:40-00:46.
[11] Dep. Mays, p. 30-31; Fulton County 911 ("bush bond") approximately at 00:50 to 1:00 mark.
[12] Dep. Mays, p. 31.
[13] Dep. Mays, p. 31.
[14] Dep. Mays, p. 13 (Officer Mays testified that the passenger, now known as Justin Whitehead jumped out of the car prior to Plaintiff. The fact is immaterial to this analysis because Whitehead is not a party to this action nor

15. Mays's vehicle was being driven behind the vehicle and on the left (driver) side of Early's vehicle.[15]

16. At this time, Mays's vehicle was close behind Early's vehicle (about two to three car lengths).[16]

17. According to Mays, when Early first exits the Jeep, he first stumbles and falls, and Mays was two and a half car lengths from Early and still moving.[17]

18. When Early got up to run, Early appeared to be running towards Mays' car and was more on the right side of Mays' vehicle, but stumbled.[18]

19. Mays lost sight of Early due to the hood of his car.[19]

20. Upon seeing Early stumble, Mays was coming to a stop, and stopped when he lost sight of Early.[20]

21. Mays recalls feeling a bump but was unsure what he ran over at the time.[21]

22. Mays then existed his patrol car, and Early stood up and took off

---

does the fact create an issue of fact as to the resulting events), 28, 88-81; Dep. Whitehead, p. 16; Dep. Early, p. 50(Jeep allegedly came to complete stop, but not in park, got out and car rolling causing him to fall, did not try to place in park and did not activate an emergency brake).

[15] Dep. Whitehead, p. 54-56.
[16] Dep. Whitehead, p. 53; Dep. Early, p. 49.
[17] Dep. Mays, p. 31-32, 80-81; Dep. Early, p. 53-54.
[18] Dep. Mays, p. 35; 36; Dep. Early, p. 64.
[19] Dep. Mays, p. 33.
[20] Dep. Mays p. 32-33; 36-37; 81.
[21] Dep. Mays, p. 37-39; Deposition of Barry Walker, p. 26-28 (November 8, 2022)[Excerpts relied upon attached as Exhibit 5 (hereinafter cited as "Dep. Walker, p. __.")]. .

running towards the woods.[22]

23. Mays did not know Early injured his foot at the time Early fled towards the wood line.[23]

24. At all times, Mays has denied intentionally striking Early with his vehicle to get him to stop.[24]

25. According to Early, after he jumped out of the Jeep, the Jeep continued to travel away from him.[25]

26. He initially fell to the ground hitting his chin and he got up to run towards the direction of the Jeep.[26]

27. Early claims to have looked over his shoulder, see Mays's vehicle, turned to run and looked back again and sees Mays turn his vehicle at him and then was hit.[27]

28. Early contends Mays was speeding up to hit him.[28]

29. Early admits he has no knowledge or training in how to identify the speed of the vehicle.[29]

---

[22] Dep. Mays, p. 14, 33.
[23] Dep. Mays, pp. 33-34.
[24] Deposition of City of Union City, pp. 23-25 (November 7, 2022) [Excerpts relied upon are attached as Exhibit 6 (hereinafter cited as "Dep. Union City, p. __.")].
[25] Dep. Early, p. 55.
[26] Dep. Early, p. 56.
[27] Dep. Early, p. 57.
[28] Dep. Early, p. 58.
[29] Dep. Early, p. 58.

30. Nor does he recall hearing any change in the engine as Mays approached.[30]

31. Early denies he fell or stumbled a second time.[31]

32. The Jeep continued to drive forward, jumping a curb and come to a stop after striking a tree with passenger, Justin Whitehead, still inside the vehicle.[32]

33. Early contends he was struck from the back and that Mays's car drove up his left side starting at his foot and rode over him to his neck and then reversed back off of him.[33]

34. The contact with Mays's patrol car occurred on pavement.[34]

35. After coming into contact with Mays's car, Early got up from the pavement and ran to a grassy area heading towards the woods.[35]

36. Mays tackled Early in a wooded area and they fell onto a barbed wire fence.[36]

37. Mays did not punch or kick Early.[37]

38. Early discarded his firearm by throwing it away from him into the

---

[30] Dep. Early, p. 58.
[31] Dep. Early, p. 57.
[32] Dep. Mays, p. 13; Early, p. 44.
[33] Dep. Early, p. 61, 64-65.
[34] Dep. Early, p. 65; Plaintiff's Responses to Defendants Requests to Admit, Request, # 20. A copy of Plaintiff's Responses to Defendant's Discovery Requests are attached as Exhibit 8.
[35] Dep. Early p. 65.
[36] Dep. Early, p. 66-67; Plaintiff's Responses to Defendants Requests to Admit, Request, # 23 (Officer Mays had to tackle you from behind in order to have you stop. Answer: Admitted.); Dep. Mays, p. 82.
[37] Dep. Early, p. 67.

wooded area.[38]

39. Mays was then able to detain Early but the other suspect ("Whitehead") was still at large.[39]

40. Mays's body worn camera captured the remaining interaction between Mays and Early.[40]

41. Once detained, Mays attempted to speak with Early.[41]

42. Mays was out of breath, and Early was on the ground.[42]

43. Mays walked to secure the gun tossed by Early.[43]

44. Mays radioed dispatch and stated Early was injured and that it appeared he run up under his vehicle.[44]

45. Mays then attempted to have Early sit up and lean back so he was not on his leg.[45]

46. Mays returned to his vehicle to place the gun on his hood.[46]

---

[38] Dep. Mays, p. 14; *see* Dep. Early, p. 67-69; 72 (admitting to having a gun on his person); Fulton County 911, 1:30 to 1:35.
[39] Dep. Mays, p. 14, 42, Fulton County 911 at 1:20-1:30.
[40] Mays Body Worn Camera Video, 00:00 to 28:12. (March 1, 2020) [hereinafter cited as "Mays BWC video, ____ to _____."]. A true and correct copy of Mays BWC Video is attached as Exhibit 8.
[41] Mays Body Worn Camera Video, 00:00 to 00:42. Additionally video from Officer J. Simmons shows a portion of the interactions once the other officer arrived at the scene and medical treatment of Early. These videos are included as Exhibit 9 and 10.
[42] Mays BWC video, 00:00 to 00:42.
[43] Mays BWC video, 00:42 to 1:05.
[44] Mays BWC video, 1:05 to 1:11; Fulton County 911, at 2:45-2:50.
[45] Mays BWC video, 1:12 to 1:32. Dep. Early, p. 67-69 (discussing being moved off the barb wire fence which caused his stomach to bleed).
[46] Mays BWC video 1:40 to 1:51.

47. Mays returns and moves Early briefly in an effort to move him to the Jeep.[47]

48. Mays performs a brief search and asks for Early's age.[48]

49. Mays radios dispatch to report his location again.[49]

50. Mays states he was going to move Early to his truck so he could sit.[50]

51. Early requests he be allowed to sit down, and Mays tries to have him sit/lean on the side of the Jeep.[51]

52. Shortly thereafter, Mays informs Officer J. Simmons, who arrived to the scene, about the situation and states "he is guessing that his foot ran up under his car" and explains what occurred.[52]

53. Mays states he is allowing Early to remain in whatever position Early finds comfortable.[53]

54. Mays and Simmons place Early in the Jeep to allow him to lay down across the back seat.[54]

55. Several minutes later, EMTs arrived at the scene to render medical aid

---

[47] Mays BWC video, 1:51 to 2:25; Dep. Early, p. 73-75 (stating Mays moved him a little bit more).
[48] Mays BWC video, 2:25 to 2:50.
[49] Mays BWC video, 3:01 to 3:11.
[50] Mays BWC video, 4:15 to 5:20; Dep. Early, p. 75-76.
[51] Mays BWC video, 4:15 to 5:20. Officer Simmons arrives at 5:25 in the video.
[52] Mays BWC video, 5:50 to 6:09.
[53] Mays BWC video, 6:10 to 6:21.
[54] Mays BWC video, 6:21 to 7:14; Dep. Early, p. 78-79 (Early does not recall Mays calling him out of his name or using profanity or striking him).

to the Early.[55]

56.   As a result of the incident, Early suffered various injuries to his face (teeth), back, and shoulder, a broken ankle, and various cuts and contusions.[56]

57.   Early was charged with theft by receiving stolen property (O.C.G.A. § 16-8-7), possession of firearm during commission of a felony (O.C.G.A. § 16-11-106), possession of firearm by convicted felon (O.C.G.A. § 16-11-131(b)) and obstruction (O.C.G.A. § 16-10-24(a)).[57]

58.   Early entered a negotiated plea of guilty to the obstruction charge in exchange for the nolle pros of the other charges.[58]

This 9th day of January, 2023.

Respectfully Submitted:

/s/Matthew H. Bennett
Matthew H. Bennett
Georgia Bar No. 123408

BENNETT LAW OFFICE, LLC
1012 Memorial Drive Suite 13
Griffin, Georgia 30224
Telephone: (678) 688-3554          Attorney for Defendant John Mays
Facsimile: (678) 688-3555
Email: mhb@bennettlawofficellc.com

---

[55] Mays BWC video, 19:13 (Grady Ambulance seen arriving at scene).
[56] Dep. Early, p. 80-81.
[57] Indictment, 21SC177918 and Finals Dismissal. A true and correct copy of the same is attached as Exhibit 11.
[58] Dep. Early, p. 99.

## CERTIFICATE OF COMPLIANCE

The undersigned, in accordance with L.R. 7.1 and 5.1 hereby certify that the typefont used herein is 14-Point Times New Roman font.

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2023, I electronically filed the foregoing **DEFENDANT JOHN MAYS'S STATEMENT OF UNDISPUTED MATERIAL FACTS TO WHICH THERE IS NOT A GENUINE ISSUE TO BE TRIED** with the clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

This 3rd day of July, 2023.

/s/Matthew H. Bennett
Matthew H. Bennett
Georgia Bar No. 123408

**BENNETT LAW OFFICE, LLC**   Attorney for Defendant
1012 Memorial Drive, Suite 13   Solomon Muhammad
Griffin, Georgia 30223
Telephone: (678) 688-3554
Facsimile:  (678) 688-3555
Email: mhb@bennettlawofficellc.com