Page 1

1              IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF GEORGIA
2                      ATLANTA DIVISION

3

4    DIANTI EARLY,                    )
                                      )
5         Plaintiff,                  )
                                      )  CIVIL ACTION FILE
6    vs.                              )
                                      )  NO. 1:22-cv-00816-SCJ
7    OFFICER JOHN MAYS,               )
     Individually, as an officer )
8    of the UNION CITY POLICE         )
     DEPARTMENT,                      )
9                                     )
          Defendant.                  )
10

11

12        The deposition of FRANCISCO CEDENO, taken
13   pursuant to the stipulations contained herein; the
14   reading and signing of the deposition reserved,
15   before Charlene M. Hansard, B-2341, Certified Court
16   Reporter, commencing at 12:16 p.m., on Tuesday,
17   November 8, 2022, at 100 Habersham Drive,
18   Fayetteville, Georgia.

19

20

21

22

23

24

25

Francisco Cedeno                          November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 2

1               A P P E A R A N C E S

2

3    ON BEHALF OF THE PLAINTIFF:

4         Tanya F. Miller, Esq.
          DuBose Miller, LLC
5         75 14th Street, N.E.
          Suite 2110
6         Atlanta, Georgia 30309
          (404) 720-8111
7         Miller@dubosemiller.com

8

9    ON BEHALF OF THE DEFENDANT:

10        Matthew Bennett, Esq.
          Bennett Law Offices, LLC
11        1012 Memorial Drive
          Suite 13
12        Griffin, Georgia 30223
          (678) 688-3554
13        Mhb@bennettlawofficellc.com

14

15

16

17

18

19

20

     Legend of the Transcript:
21

     (sic)        Exactly as said
22   (phonetic)   Exact spelling unknown
     . . .        Trailing off or did not complete thought
23    --          Break in speech continuity
     uh-huh       Affirmative
24   uh-uh        Negative

25

Page 3

1

2                      I N D E X

3

WITNESS                                      PAGE

4

FRANCISCO CEDENO

5

6        Examination By Ms. Miller ....................4
7        Examination By Mr. Bennett ..................56

8

9                 PLAINTIFF'S EXHIBITS

10   EXHIBIT
     NUMBER          DESCRIPTION                    PAGE

11

Exhibit 1    Notice of Deposition .................4

12

Exhibit 2    Investigation Report Case No. ........12
13           20-03

14   Exhibit 3    Investigation Report Case No. ........40
             20-14

15

Exhibit 4    Investigation Report Case No. ........51
16           20-22

17   Exhibit 5    Investigation Report Case No. ........48
             22-10

18

Exhibit 5A   Notice of Reprimand .................50

19

20

21        (Originally marked exhibits attached to the
22     original of the deposition and a copy attached
23     to all copies produced.)

24

25

Page 4

1                    P R O C E E D I N G S

2                                          (12:16 p.m.)

3          (Whereupon, the court reporter complied

4      with the requirements of O.C.G.A. Section

5      9-11-28(d).)

6          (Plaintiff's Exhibit No. 1, Notice of

7      Deposition, was marked for identification

8      purposes.)

9          (The oath was administered to the witness

10     by the court reporter.)

11 Whereupon,

12                   FRANCISCO CEDENO,

13     Having been first duly sworn, was examined and

14     testified as follows:

15                      EXAMINATION

16 BY MS. MILLER:

17     Q.    Good afternoon, Lieutenant Cedeno.

18     A.    Cedeno, yes.

19     Q.    Cedeno.  I've been trying to say that right

20 for the last two days.  Cedeno.  Cedeno?

21     A.    Cedeno.

22     Q.    Cedeno?

23     A.    Yes.

24     Q.    Okay.  My name is Tanya Miller.  I represent

25 Dianti Early in this case.  Are you familiar with what

Francisco Cedeno                          November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 5

1   the deposition notice is about?

2        A.   Uh-huh.

3        Q.   Okay.  You have to say yes for the court

4   reporter.

5        A.   Yes, I do.

6        Q.   Okay.  And have you had your deposition taken

7   before?

8        A.   No.

9        Q.   Okay.  So it's really simple.  I'm just going

10  to ask you questions, and you will answer under oath.

11  Madam Court Reporter will take down every single word

12  that we both say, kind of like in court.  So it's just

13  important that, when you answer, you don't say uh-huh

14  or uh-uh, even though that's very natural in normal --

15       A.   Yes, ma'am.

16       Q.   -- conversation.  But when she's trying to

17  get the record down, we have to say yes or no audibly.

18  If I ask you something that you don't understand or you

19  need clarified, just let me know, and I'll be happy to

20  clarify it for you.  Also, if you need a break at any

21  time, you just let us know.  We'll stop, and you can

22  take a break.  If there's a question pending, though, I

23  just ask that you respond to the question, and then

24  certainly you can -- we can take a break.

25       A.   Yes, ma'am.

Francisco Cedeno                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 6

1        Q.    Okay.  So there is an option for witnesses to
2    review their deposition testimony when it's over, read
3    it and sign off on its accuracy if they want to check
4    to make sure that, you know, the words were right or
5    make small changes, not usually substantive changes but
6    small changes.  Would you like to have that
7    opportunity?
8        A.    Today?
9        Q.    No, it wouldn't be today.  But it just would
10   be at the point that Madam Court Reporter finalizes the
11   transcript.  You're welcome to do it or not do it or
12   you can think about it and let us know.  It's
13   completely up to you.
14       A.    I'm fine.
15       Q.    Okay.
16       A.    Thank you.
17       Q.    All right.  So you waive -- you waive reading
18   and signing?
19       A.    I can do it later.
20       Q.    Okay.
21       A.    How about that?
22            MS. MILLER:  So he will read and sign.
23   BY THE WITNESS:
24       A.    Yeah.
25       Q.    All right.  So why don't we just start by you

Page 7

1   giving us a little bit of your background, how long

2   you've been at Union City, what you do.

3        A.   I've been in Union City over 17 years now.

4   I've been patrol officer when I first got out of the

5   academy for about nine, ten months.  I moved into the

6   traffic unit for five and a half years.  After that I

7   became a detective for six years -- six and a half

8   years.  I got promoted to sergeant and to the internal

9   affairs investigation for three years.  And I've been a

10  lieutenant for the last year for the criminal

11  investigation division.

12       Q.   Okay.  So has your entire law enforcement

13  career been at Union City?

14       A.   Yes, ma'am.

15       Q.   All right.  Did you have a career before you

16  became a police officer?

17       A.   I was a manager at a restaurant.

18       Q.   All right.  And are you from the Atlanta

19  area?

20       A.   Puerto Rico.

21       Q.   Puerto Rico.  Okay.  Okay.  And so in March

22  of 2020, I guess you at that time were a sergeant in

23  the internal affairs division?

24       A.   Yes, ma'am.

25       Q.   Okay.  And did you -- you said you were in

Francisco Cedeno                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 8

1    internal affairs for three years.

2         A.   Yes.

3         Q.   Okay.  And before that you were a detective?

4         A.   Yes.

5         Q.   Were you assigned to a particular unit as a

6    detective?

7         A.   Just the same unit that I'm the lieutenant

8    for now.

9         Q.   CID?

10        A.   Uh-huh.

11        Q.   Okay.  And that's a yes?

12        A.   Yes.

13        Q.   Okay.  And does CID do like homicides and

14   major felonies or do you have like a homicide, sex

15   crimes unit?  How are you guys divided?

16        A.   We do it all.

17        Q.   Okay.

18        A.   We're not very big.  We just have four

19   detectives.

20        Q.   Got it.  And how big was the internal affairs

21   unit when you came on board?

22        A.   Just me.

23        Q.   Just you?  A unit of one?

24        A.   Yes, ma'am.

25        Q.   Okay.  And did you receive any particular

Francisco Cedeno
Early, Dianti v. Mays, John (Officer)
November 8, 2022

Page 9

1    training for that job?

2         A.   Yes.

3         Q.   Tell me about that.

4         A.   I went to internal affairs classes, a few

5    other classes that I can't remember right now.  Just

6    give me a second and I'll remember.

7         Q.   Okay.

8         A.   Basically just the internal affairs classes

9    and some seminars and stuff like that but not anything

10   other than that that I remember.

11        Q.   Okay.  And who put on the internal affairs

12   classes?

13        A.   I went to GPSTC for that training down in

14   Forsyth.

15        Q.   Okay.  And just for the benefit of the court

16   reporter and the record, what is GPSTC?

17        A.   That's the Georgia -- Public Georgia Training

18   Center.

19        Q.   Okay.  And is that where folks commonly go in

20   law enforcement to receive training on various topics?

21        A.   Yes, ma'am.

22        Q.   Okay.  All right.  So how long had you been

23   in internal affairs when you -- as of, I guess I'd say,

24   March 1st of 2020?

25        A.   I believe four years ago.  So four years ago

Francisco Cedeno                                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 10

1   I started -- I was promoted sergeant to IA four years

2   ago.

3         Q.   Do you remember the month?

4         A.   I believe it was October because now I know

5   that I'm -- not celebrating but coming up to my first

6   year of being a lieutenant in this -- in November.  So

7   it's been --

8         Q.   Okay.

9         A.   Yeah, it's been four years.

10        Q.   Okay.

11        A.   So you said 2020 you said?

12        Q.   March of 2020.

13        A.   So four years.  Yeah, it would be a year,

14  year and a half maybe.

15        Q.   All right.  Do you remember the specific

16  incident that I'm referring to?

17        A.   Yes, ma'am.

18        Q.   Can you kind of walk us through how you

19  became involved in investigating it?

20        A.   I get the cases from the assistant chief or

21  captain or whoever assigns it.  I'm not sure who

22  assigned it to me.  But it's either one of those

23  officers.  Once I got it, I began interviewing Mays,

24  looking through body cam, and trying to gather

25  everybody that was involved to conduct interviews.

Page 11

1              Unfortunately, I didn't talk to the -- your

2      client.  I didn't talk to him because his mom and his

3      lawyer wanted to talk to him before they talked to

4      me.  So we never -- we never ended up talking or I

5      never ended up having an interview with him.

6              So the only thing that I accomplished was

7      talking with Mays, asking him some questions,

8      reviewing the video, and that's it.  And I made -- I

9      determined my decision on just that little bit of

10     facts that I had since I didn't talk to your client

11     at that time.  So whatever I had is what, you know, I

12     came to the conclusion.

13         Q.    Sure.  And is that sort of your typical

14     practice when you get a complaint is to sort of

15     identify the witnesses to interview and collect body

16     camera --

17         A.    Yes, ma'am.

18         Q.    -- footage and things like that?

19         A.    Well, advise the officer what the allegations

20     of policy violations and, yeah, gather information,

21     gather video, gather witnesses, gather -- you know,

22     talk to all parties that are involved, if possible.

23         Q.    Okay.  And what were the specific policy

24     violations that you were investigating as it related to

25     this incident?

Francisco Cedeno                              November 8, 2022
Early, Dianti v. Mays, John (Officer)

                                                      Page 12

1      A.   It was use of force and not activating his

2  body cam.

3      Q.   And when an officer is informed that he is

4  being investigated for violations of policy, is that

5  typically like a written document that's provided to

6  him or her?

7      A.   Yes.

8      Q.   Okay.  And do you know whether or not that

9  was -- a written document was --

10     A.   I believe --

11     Q.   -- provided to --

12     A.   Yes, I do, yes.

13     Q.   Okay.  All right.  And would that be a part

14  of your report?

15     A.   No, it would be separate.  It would be -- It

16  should be in the case file.

17     Q.   And does IA maintain their own case file?

18     A.   Yes.

19     Q.   Okay.  So, for example, and I'll just show

20  you what I've marked as Exhibit Number 2.

21          (Plaintiff's Exhibit No. 2, Investigation

22      Report Case No. 20-03, was marked for

23      identification purposes.)

24  BY MS. MILLER:

25     Q.   I'll put this clip on it.  It's my

Francisco Cedeno                                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 13

1    understanding that this is -- Well, actually, I'm

2    giving you the copy I dog-eared.  Hold on.  I'm handing

3    you what I've marked as Exhibit Number 2, Lieutenant.

4    Do you recognize Exhibit Number 2?

5         A.   Yes, ma'am.

6         Q.   And is this your report -- your IA report of

7    the incident on 3/1/2020 involving Officer Mays and

8    Dianti Early?

9         A.   Yes, ma'am.

10        Q.   Okay.  And so on the front page of this

11   exhibit, there is a case number 20-03.

12        A.   Uh-huh.

13        Q.   Is that --

14        A.   Yes, ma'am.

15        Q.   Is that your internal affairs case number?

16        A.   Yes, ma'am.

17        Q.   Okay.  And then separately, there is an

18   incident report that was done, I believe, by Officer

19   Mays.  Have you seen -- Did you review this incident

20   report in --

21        A.   Yes, ma'am.

22        Q.   -- connection with your investigation?

23        A.   Yes, ma'am.

24        Q.   And that incident report had a separate case

25   number; right?

Francisco Cedeno                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 14

1       A.    Yeah.  This is -- This 20-03 are my case

2    numbers when I generate a case number for an internal

3    affairs every time I have an investigation or when I

4    did have an investigation.

5       Q.    Okay.  And if you flip kind of inside of your

6    report, it looks like there's an incident report that

7    has a different case number.  It's probably the second

8    or third page in.  Do you see it?  I think you passed

9    it, like a Union City case number.

10      A.    This is the case number right up on top.

11      Q.    Okay.  What is that number?

12      A.    I believe it's 20 -- 20-002897.

13      Q.    Yes.  Okay.  And so that would be a separate

14   case file not necessarily connected with your --

15      A.    It's not a case file.  That's just the

16   initial report.

17      Q.    Okay.

18      A.    So they have to generate a case number

19   whether it's -- whether it's a citation.  If they're --

20   You know, if they're on a traffic unit or whatever,

21   they're going to draw a case number.

22      Q.    Okay.

23      A.    So that's just the original case number.

24      Q.    Okay.  And that case number may or may not

25   have a file associated with it.

Francisco Cedeno                                     November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 15

1        A.    Yeah, it may not.

2        Q.    Okay.

3        A.    Yeah.

4        Q.    But in any event, your case number which is

5   20-03, that is -- that is the --

6        A.    We have a log.

7        Q.    Uh-huh.

8        A.    We have a log when we do our internal

9   affairs, and that's how we label our case numbers.

10       Q.    Okay.

11       A.    It's separate from this case number here.

12       Q.    Okay.

13       A.    This is just the incident report case number.

14  This is my investigation.  So we have a log that we put

15  and, you know, we go -- obviously, this is number three

16  in 2020.  And it goes so on like that.

17       Q.    Got it.

18       A.    So each time I had one I just go to the --

19  you know, whatever the next number was.

20       Q.    Okay.  And did you also keep a file in

21  connection with this case number in addition to the

22  investigation report?

23       A.    A file?

24       Q.    Uh-huh.

25       A.    As in what?

Page 16

1          Q.    A file.  Did you have a --

2          A.    That's it right there.

3          Q.    -- case file?  So this is the entirety of

4    your --

5          A.    Yeah, there was only four or five summaries.

6    Because like I mentioned before, it wasn't much of an

7    investigation because I couldn't speak with your

8    client.  And I just went by what -- I didn't go by.  I

9    just -- what I had, and that was it.  So it was

10   basically not a very long investigation considering I

11   could not speak with your client and get his side of

12   the story.  So I just had what was in front of me, so

13   it wasn't very -- a long investigation.  I think it was

14   four or five summaries that I had.

15         Q.    Okay.  And you mentioned that the -- when an

16   officer is notified that he is being under -- he is

17   being investigated for violations of policy that he

18   would get a written notification.

19         A.    Yes, ma'am.

20         Q.    And you said that that would be in the case

21   file.

22         A.    Well, this is it right here.  This advises

23   him of the administrative inquiry.

24         Q.    Okay.  So the first page in here, this is the

25   notice --

Francisco Cedeno                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 17

1        A.    Uh-huh.

2        Q.    -- that goes to the officer?

3        A.    Uh-huh.

4        Q.    Okay.  All right.  And so when you say this

5   is it right here, we'll just -- I'll say for the record

6   what we're talking about.  When you turn into your

7   investigation report, the first page of Plaintiff's

8   Exhibit Number 2 is a memo dated March 4, 2020, to

9   Officer Mays from then Sergeant Cedeno.  And in this --

10  in this memo it references violation of SOP 4-11-1

11  IV.I.5, I guess, if I'm reading those roman numerals

12  correctly.  Is that right?

13       A.    Yes.

14       Q.    And was that at the beginning what your

15  investigation was to -- was focused on?

16       A.    Yes.

17       Q.    And at some point, it expanded to include a

18  violation of the body camera policy?

19       A.    Yes.

20       Q.    Okay.  And then at the conclusion of your

21  investigation, once you've done all that you can do, do

22  you notify the officer of what your conclusions are?

23       A.    Yes.

24       Q.    And did you do that in this case?

25       A.    Yeah, I -- Yeah, I did.  I don't know if --

Page 18

1    Let me -- Can I look through here?

2         Q.   Of course.

3         A.   It should have been the last summary.

4              MR. BENNETT:  If you need to take a phone

5    call --

6              THE WITNESS:  Yeah, it's my captain.

7              MS. MILLER:  Oh, sure.  Go ahead.

8              (A short break was taken.)

9    BY THE WITNESS:

10        A.   I did not -- I did -- What I do is, I come to

11   my conclusion, and I'm not the one to advise and

12   discipline and carry out with the discipline.  So once

13   I've done and come to my conclusion, I hand it over to

14   my supervisor, and they advise them of what -- you

15   know, what my investigation has concluded.

16        Q.   Okay.  And is that what happened in this

17   case?

18        A.   Yes.

19        Q.   All right.  And so who would have been the

20   supervisor that you handed your conclusions off to?

21        A.   It would either had to be Lieutenant Pittman,

22   and I can't remember whether assistant chief was

23   looking over my -- or looking over the internal affairs

24   at that time.  Because he just came in not too long --

25   you know, maybe a year after I got -- you know, I was

Francisco Cedeno                         November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 19

1  doing internal affairs.  So I'm not sure which one, but

2  it had to be one of those two.

3       Q.   Okay.

4       A.   It was probably Pittman, though.

5       Q.   Okay.

6       A.   Yeah.

7       Q.   And then we only have your report here, but

8  would it be the practice of the department to provide

9  the officer something in writing showing him what the

10 conclusion --

11      A.   Yeah.

12      Q.   -- of the investigation was?

13      A.   Yeah.  There would -- That's -- I wasn't

14 responsible for that, because my responsibility was

15 just to come to the conclusion and do the

16 investigation.

17      Q.   Okay.

18      A.   So once I turn it over, whoever reviews it,

19 my supervisor is -- they're supposed to do that.

20      Q.   Okay.  Do they typically give you a copy of

21 that?

22      A.   Yeah, sometimes.  I mean, we were in a

23 transition around that time with the old assistant

24 chief and the new one coming in.  The old assistant

25 chief really didn't provide me copies of, you know, the

Page 20

1   end result.  So in this particular case, no.

2        Q.   Okay.  If you -- If we wanted to see a copy

3   of the --

4            MS. MILLER:  Oh, sure, if you need to take

5        a call, we'll go off the record.

6            (A short break was taken.)

7            MS. MILLER:  Okay.  Going back on the

8        record.

9   BY MS. MILLER:

10       Q.   If we wanted to find the actual, I guess,

11   disposition, for lack of a better word, concerning your

12   investigation, where would we look for that?

13       A.   You'd probably have to get with the assistant

14   chief or Lieutenant Pittman for the results of my

15   investigation.

16       Q.   Okay.  And just so that -- we're talking

17   about it, but just so the record's clear, what did you

18   conclude as a result of your investigation into the use

19   of force incident?

20       A.   Well, I concluded that there was -- it was

21   unfounded.  I did not have sufficient evidence to

22   either say he used excessive force or he didn't use

23   excessive force.  And that being said, I didn't get to

24   speak with your client at that time during this

25   investigation, but I did find that he was in violation

Case 1:22-cv-00816-SCJ   Document 51-4   Filed 08/07/23   Page 21 of 80
Francisco Cedeno                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 21

1    of the body cam video policy at that time.

2        Q.    Okay.   And I'm going to ask you some specific

3    questions about your investigation, but we're just

4    going to talk big picture for a few minutes here.   So

5    what was the department's body cam policy at the time

6    this incident happened?

7        A.    I believe you have to -- if you make any

8    contact with a citizen that you would have to turn your

9    body cam on.

10       Q.    Okay.   And are officers trained on the

11   department's policy as it relates to body cameras?

12       A.    Yes.

13       Q.    And are you part of that training?

14       A.    No.

15       Q.    No?   Okay.   We had --

16       A.    I am an instructor, but I don't train on

17   that.

18       Q.    Oh, you don't train on that?

19       A.    No.

20       Q.    Okay.   Do you know who does train on that?

21       A.    I think it's -- Well, the way that they've

22   been doing is that when they come out of FT -- when

23   they come out of the academy and they receive their

24   body cam, they're with a trainer.   And I'm not sure who

25   his trainer was.   When you get out of the academy, you

Francisco Cedeno                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 22

1   get provided this camera, and along with all the other

2   training, they train you how to operate the camera.

3          Q.    And do they also train you on when to

4   activate the camera --

5          A.    Yes, ma'am.

6          Q.    -- on what is required by policy at the

7   department?

8          A.    Yes, ma'am.

9          Q.    And just for my education, how does an

10  officer activate his body cam?

11         A.    There's a center button on it.  You hold it

12  down -- You hit it twice, and it comes on.

13         Q.    Okay.  So it's -- Would you characterize it

14  as pretty simple to operate?

15         A.    Uh-huh.

16         Q.    Yes?

17         A.    Yes, ma'am.

18         Q.    Okay.  Now, you said you interviewed Officer

19  Mays, you could not interview Mr. Early due to his

20  counsel --

21         A.    Uh-huh.

22         Q.    -- his attorney.

23         A.    Yes, ma'am.

24         Q.    Who else did you interview?

25         A.    Officer Glasgow --

Francisco Cedeno                      November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 23

1      Q.   Okay.

2      A.   -- when he was there.  I spoke with Mr.

3   Early's mom, but I didn't interview her.  I was just

4   speaking with her trying to set up the time to speak

5   with Mr. Early.

6      Q.   Okay.  Let's see.  Anybody else?

7      A.   I don't recall talking to anybody else.

8      Q.   Okay.  I think that's all I saw too.  So who

9   was the -- who would have been the first person you

10  talked to?

11     A.   Well, I would have spoke with Mays first

12  because I would have advised him, and which I did, I

13  advised him of the policies -- you know, the alleged

14  violation of policy.

15     Q.   Okay.

16     A.   Well, before that it would have probably been

17  the assistant chief or whoever gave me the internal

18  affairs.  And I have it logged in on a log book who

19  actually assigned it to me.

20     Q.   Okay.

21     A.   So I don't recall who I assigned it to me,

22  but it would be them.  And then I would get the -- you

23  know, the report, and then I spoke with Officer Mays.

24     Q.   Okay.  And did you speak to Officer Mays in

25  person, over the phone?

Francisco Cedeno                          November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 24

1       A.   No, in person.

2       Q.   Did you record the interview?

3       A.   I believe I did, yes.

4       Q.   Audio or video?

5       A.   Both.

6       Q.   Is that your normal practice?

7       A.   Yes.  We -- I started to do that because I

8   was fairly new doing internal affairs when I started.

9   I never did it before.  At first -- My first interview

10  or my first cases, I didn't use the body cam.  We

11  didn't have them.  You know, I think we got body cams

12  in late 2008, November.  So --

13      Q.   2008?

14      A.   '18.  I'm sorry.

15      Q.   I was going to say you guys were way ahead of

16  the curve.

17      A.   No, no, '18 --

18      Q.   Okay.

19      A.   -- '18.  I'm sorry.  So in the beginning of

20  my investigations, I didn't use it, but I do believe I

21  did use it on that one.

22      Q.   Okay.

23      A.   I started recording it with my body cam.

24      Q.   Okay.  And if we wanted to get a copy of that

25  recording, the audio/video, where would that be?

Francisco Cedeno                   November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 25

1        A.    You would have to open records request, and I

2   was actually responsible for the videos as well as

3   internal affairs.  So you would have to get with the

4   new sergeant of internal affairs and request it.

5        Q.    Okay.  And is that Ms. Davis or --

6        A.    Sergeant Davis.

7        Q.    -- Sergeant Davis?

8        A.    Yes, ma'am.

9        Q.    Okay.  All right.  How much of your

10  investigation, if any, involved assessing the scene

11  where the incident took place?

12       A.    I did not go and assess the scene.

13       Q.    Okay.  Now, you said that you used to be a

14  traffic officer; correct?

15       A.    Yes, ma'am.

16       Q.    And so what types of things do traffic

17  officers normally do if they're responding to a scene

18  where, let's say, a vehicle has struck a pedestrian?

19       A.    They go out there.  They reconstruct the

20  accidents.  You have to have reconstruction classes if

21  they're qualified to do that.  They also talk to

22  witnesses, mark scenes, stuff like that, gather

23  evidence.

24       Q.    Take photos?

25       A.    Take photos, yeah.

Francisco Cedeno                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 26

1        Q.    Take measurements?

2        A.    That's the old style of doing it.

3        Q.    No measurements anymore?  So would you use

4   that software now or --

5        A.    Yeah.

6        Q.    -- what -- how do you do it?

7        A.    That's what I used when I was -- we used when

8   I was in traffic, so.  But I haven't been in traffic in

9   10, 11 years, so.

10       Q.    Okay.

11       A.    So I don't know what they do in traffic right

12   now --

13       Q.    Okay.

14       A.    -- how they go out and how they function, I

15   don't know.

16       Q.    Okay.

17       A.    Yeah.

18       Q.    All right.  Would -- Okay.  So I guess as the

19   lieutenant over CID, if there's a serious injury by

20   vehicle or a vehicular homicide, those are done by

21   traffic unit, not by your --

22       A.    Yes.

23       Q.    -- your detectives?

24       A.    Yes.

25       Q.    Okay.

Francisco Cedeno                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 27

1          A.    I believe they now call the state patrol --

2     Georgia State Patrol for all major accidents.  I don't

3     know if they do it themselves anymore.

4          Q.    Okay.  What would be considered a major

5     accident?

6          A.    A hit and -- Someone that's seriously

7     injured, a death.

8          Q.    Okay.  And this may sound like a silly

9     question, but what's seriously injured?

10          A.    Entrapment.  You know, you can, you know --

11          Q.    Stuck in a vehicle --

12          A.    Stuck in a vehicle.

13          Q.    -- meaning you can't get them out?

14          A.    Yeah, stuck in a vehicle.  You know, a lot of

15     bodily injuries.

16          Q.    Okay.  But if it -- if it's -- if it doesn't

17     rise to that level, is your -- and I understand you're

18     not in traffic, but is your just general understanding

19     as a lieutenant in the department that the traffic

20     unit -- there is a traffic unit in Union City that

21     would respond for, like, vehicle pedestrian collisions?

22          A.    If available, yeah.

23          Q.    If available.  Okay.

24          A.    Our officers are trained to do accidents as

25     well --

Francisco Cedeno                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 28

1        Q.    Okay.

2        A.    -- so --

3        Q.    Regular patrol officers?

4        A.    Yes, ma'am.

5        Q.    Okay.  So if -- is your sense that if there

6    was a vehicle pedestrian sort of collision where the

7    pedestrian had a broken limb as a result, would that be

8    something that patrol would handle or is that something

9    that traffic would probably be called to the scene for?

10       A.    Like I said, I haven't been in traffic in 11

11   years, so I don't know how -- what their protocol is.

12   I just know that I was supposed to do what I was

13   supposed to do in internal affairs.  That's it.

14       Q.    Okay.

15       A.    So I'm not sure what their, you know --

16       Q.    Okay.  Fair enough.  Now, you talked about,

17   in your report, that the Jeep that Mr. Early was

18   driving -- I think that -- let me see if I can find the

19   exact way you phrased it.  So I'm looking on like the

20   last page of your report in your conclusions.

21       A.    Yes, ma'am.

22       Q.    "Cedeno concluded due to the circumstances

23   which involved Early operating a stolen black Jeep that

24   had been confirmed to have participated in numerous

25   felony crime sprees in the Fulton County area and

Francisco Cedeno                                November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 29

1    having prior knowledge that the occupants of the

2    vehicle were armed and dangerous."

3            Can we just unpack that?  What information

4    did you have concerning the vehicle being involved in

5    numerous felony sprees in the Fulton County area?

6        A.   I was told by other officers, Glasgow and --

7    and, you know, they send out BOLOs as well through the

8    department.  And we were having a very serious issues

9    of cars getting broken into and a lot of these numerous

10   felony crimes that was involving this particular Jeep.

11   So, I mean, as a police department, everybody's kind of

12   aware of that.  Even though that I was administrative

13   and working in the office, you know, I have a radio, I

14   hear bolos, and everybody pretty much knows what's

15   going on, you know, crime-wise.

16       Q.   Okay.  Can -- Where would I find

17   documentation of this stolen black Jeep being confirmed

18   to have participated in numerous felony crime sprees?

19       A.   You would probably have to go to the CAD,

20   Fulton County Communications.

21       Q.   What am I asking them for?

22       A.   Any BOLOs that were put out, because we have

23   to -- we go through them.  When we put a BOLO out, we

24   advise the communications center to put them out.

25       Q.   Okay.  Did you do that?  Did you go to the

Francisco Cedeno                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 30

1    Fulton County Communications Center?

2        A.   No, I did not.  I just -- I heard it over the

3    radio.  I heard -- You know, I sit in the briefings --

4    you know, the shift change briefings.  I used to sit in

5    those, and that's when they would talk about, you know,

6    what to look for on that particular day or, you know,

7    we're having issues with this black Jeep, be on the

8    lookout.  So, yeah, that's where I heard it from.

9        Q.   Okay.  And you know it was this specific

10   black Jeep as opposed to a black Jeep?

11       A.   Oh, it had a tag number, so they were looking

12   for that.

13       Q.   So the BOLOs and all the communications --

14       A.   Should have a tag number because they mention

15   tag number.

16       Q.   -- reference this specific tag number?

17       A.   Yes.

18       Q.   Okay.  And to find that information, I would

19   go to Fulton County Communications and ask for any --

20       A.   Dispatch.

21       Q.   -- Dispatch and ask for any BOLOs with this

22   license plate?  Where do I -- How would I --

23       A.   You could do that or you can reference that

24   case number that -- not my investigation case number,

25   but the case number, the initial report, and they

Francisco Cedeno                                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 31

1   should --

2        Q.   Oh.

3        A.   -- yeah, they should be able to find all the

4   BOLOs and stuff because I know there were.

5        Q.   Okay.  So the Union City case number

6   20-002897?

7        A.   Uh-huh.

8        Q.   Got it.  Okay.  And then you mentioned

9   Glasgow.  Is Glasgow a male or female?

10       A.   Male.

11       Q.   Male.  Okay.  Just saw the name Jade and I

12  assumed it was --

13       A.   No, he's a male.

14       Q.   Okay.  So Officer -- Tell me about how you

15  came to interview Officer Glasgow.

16       A.   He was actually at a -- I think he was parked

17  at the Gathering Center in Union City.  And like I

18  said, they had a bolo out for this vehicle, and he

19  actually saw this vehicle backed in.  That's the MO

20  that the black Jeep had where it would back in so you

21  can't see the tag.  And he actually saw the vehicle

22  there with four individuals.  He -- I believe he ran

23  the tag, and he was trying to pursue the vehicle, but

24  he lost visual on it.

25       Q.   Okay.  And so how did you, though, come to

Francisco Cedeno                                  November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 32

1   know about Glasgow's information?

2       A.   About his information?

3       Q.   Uh-huh.

4       A.   Because I spoke with him.  He -- Because he

5   told me, you know, about this incident that he had.

6   You know, after I started doing my investigation, then

7   I spoke with him to verify, you know, his story.

8       Q.   I see.

9       A.   And I got his statement and -- yeah.

10      Q.   Okay.  I see.  So the reason I'm asking is I

11  didn't see an incident report from Officer Glasgow

12  concerning what he described in your statement, just a

13  written statement.

14      A.   He didn't -- He didn't do an incident report.

15  He didn't generate a report.  That was just something

16  that he noticed.  He was sitting there.  I don't know

17  why he was -- I don't know if he was there -- You know,

18  sometimes that Gathering Center had police officers

19  there off-duty for part-time work to -- you know, for

20  security.  I think they were having an event there or

21  something, so I think he was there doing security or

22  there -- I believe.  And once this came out, then he

23  mentioned that he had this incident with this Jeep.

24      Q.   Okay.  I see.  So he -- Okay.  I understand.

25  So Glasgow heard that this March 1st incident occurred

Francisco Cedeno                          November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 33

1    with the Jeep --

2         A.    With the Jeep --

3         Q.    -- knew you were --

4         A.    -- and then he came --

5         Q.    -- investigating --

6         A.    Yeah.

7         Q.    -- came to you to tell you about what he had

8    witnessed back in --

9         A.    Exactly.

10        Q.    -- February and then you got his statement?

11        A.    Yes.

12        Q.    Okay.  I got it.  And you may or may not know

13   the answer to this, but the statement -- and it's

14   inside of Plaintiff's Number 2 like the -- about four

15   pages -- four or five pages from the end, the statement

16   itself is dated April 30, 2020.

17        A.    Okay.  Yeah.

18        Q.    Do you see that?  And the incident that

19   Officer Glasgow is describing occurred on February 29,

20   2020.

21        A.    Uh-huh.

22        Q.    Yes?

23        A.    Yes.

24        Q.    Did Officer Glasgow have a memo book or

25   something that he kept notes in where he was able to

Page 34

1    rattle off the plate number?

2         A.   I believe he ran the plate number.  And so

3    that's something else that you can probably get, that

4    he would probably went over on air and ran that plate

5    number.

6         Q.   I see.  So he -- So --

7         A.   So I don't know if he has a memo book or

8    anything, but I'm sure that he actually called it out

9    on the radio.

10        Q.   And so in April, if he -- would there be a

11   way for him to go back and find out --

12        A.   Yeah, because if he --

13        Q.   -- what plate he called out?

14        A.   Yeah, if you see here contacted dispatch,

15   see, he contacted the dispatch and ran the tag on the

16   air.  Yeah, that's -- See.  And dispatch advised him

17   that it was confirmed stolen.

18        Q.   Okay.

19        A.   So he ran it on the radio --

20        Q.   Okay.

21        A.   -- called it out on the Fulton County

22   Communications.  They verified the tag number which

23   they told him it was stolen.

24        Q.   He did that on the day of the --

25        A.   Yes.

Francisco Cedeno                         November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 35

1      Q.    -- incident --

2      A.    Yeah, that's correct.

3      Q.    -- February 29, 2020?

4      A.    Yes.

5      Q.    And so then, just to -- for my education

6    purposes, if Glasgow wanted to go back and find out

7    what tag he called out over the air, he could do that,

8    go back to dispatch and find that information?

9      A.    Yes.

10     Q.    Okay.

11     A.    And, also, he was in traffic at the time, and

12   I believe his car is equipped with license plates

13   readers.  So he probably had it on his -- you know, his

14   license plate reader computer or whatever.  I've never

15   dealt with that, so.  But he was in traffic, and I

16   believe he did have that capability as well.

17     Q.    Got it.  Okay.  Thank you.  Is Glasgow still

18   at Union City?

19     A.    No, ma'am.

20     Q.    Where is he now?

21     A.    I have no clue.

22     Q.    All right.  Just one second and I'll be ready

23   to move on.  So in addition to the recorded interview

24   that you would have done with Officer Mays, there was a

25   handwritten statement that was prepared.  Did you see

Francisco Cedeno                                  November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 36

1    that in your report?  And I'm sorry.  The pages aren't

2    numbered, but it's about halfway in the middle of

3    everything.

4         A.    Yes, ma'am, the -- Yeah, I see it there.

5         Q.    Okay.  So when in time would the handwritten

6    statement be done versus your interview?

7         A.    Generally the statement would be done before

8    my interview.  Because I would have to -- What I do is

9    I get their interview, I get their statement -- not the

10   interview.  I'm sorry.  I get their statements, and I

11   proceed with my investigation.  And then once I gather,

12   you know, my information and speak with everybody

13   involved, then I come back and I formulate questions

14   that I need to ask them for the next time -- you know,

15   the next interview.

16        Q.    Okay.  So did you take this first statement

17   or did someone else take this first statement?

18        A.    No, I did.  That's my signature right there.

19        Q.    Okay.  By witness?

20        A.    Yeah, that's my signature.

21        Q.    Okay.  And then a couple more pages in, you

22   describe how -- I'm assuming this is you writing it --

23   on April 30th --

24        A.    Are we talking about the --

25        Q.    Where it says --

Francisco Cedeno                          November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 37

1        A.   Yeah.  Okay.  The --

2        Q.   -- question and answer.

3        A.   -- questionnaire, yeah.

4        Q.   Do you see at the bottom where it says 20-07.

5    Is that just a typo?

6        A.   It's a typo.

7        Q.   Okay.

8        A.   Yes, it is.

9        Q.   And is this the interview that would have

10   been recorded by you?

11       A.   Yes.

12       Q.   All right.  Were there any other interviews,

13   for lack of a better word, with Officer Mays that were

14   done by you other than this one?

15       A.   No.

16       Q.   Okay.  So just the handwritten statement and

17   then the interview?

18       A.   I don't know if the handwritten statement was

19   recorded, but I'm sure that this questionnaire was

20   recorded.

21       Q.   Okay.

22       A.   Not saying that it wasn't.  It could -- I

23   possibly could have done both.  I know I did the

24   questionnaire and possibly when I spoke with him

25   initially to get his interview -- I mean, his

Page 38

1    statement.

2         Q.    Okay.

3         A.    I just can't recall right now.

4         Q.    Sure.  I understand.  All right.  So the

5    incident occurs on March 1, 2020.  Yes?

6         A.    Yes.

7         Q.    You interview -- Well, you take a statement

8    from Officer Mays on March 2nd, the next day.  Yes?

9         A.    Yes.

10        Q.    And it looks like you do some -- I'm just

11   following your report chronologically -- you make some

12   efforts around the 5th of March to interview Mr. Early,

13   speaking to his attorney.

14        A.    Yes.

15        Q.    Okay.  And then we have on the 30th your

16   interview of -- recorded interview of Officer Mays and

17   your interview of Officer Glasgow.

18        A.    Yes, ma'am.

19        Q.    All right.  Was there any other investigation

20   that occurred on your behalf between March 5th and then

21   April 30th?

22        A.    No, ma'am.

23        Q.    And then after April 30th, we have a May 6th

24   entry that basically summarizes your conclusions.

25        A.    Yes, ma'am.

Page 39

1        Q.   Okay.  Was there any investigation that you

2   conducted between April 30th and -- well, I guess

3   that's pretty close in time.  But was there anything

4   that's not included in this report that happened

5   between April 30th and May 6th?

6        A.   No, ma'am.

7        Q.   Okay.  Now, after you concluded that Officer

8   Mays violated the department's body camera policy and

9   reported that up the chain, what, to your knowledge,

10  was done as a result of that conclusion?

11       A.   I don't know.

12       Q.   Okay.  Do you know if there was additional

13  training done for Officer Mays on body cameras?

14       A.   Don't know.

15       Q.   You did not conduct any additional training?

16       A.   No, ma'am, I didn't.

17       Q.   Okay.  Did you talk to him or have a

18  conversation with him about your conclusions, explain

19  them to him?

20       A.   I don't -- I can't recall.

21       Q.   Okay.

22       A.   I may have talked to him about it.  But like

23  I said, initially, I just come to my conclusion, and I

24  had it over to my supervisor.  And they take over and

25  sit them down and, you know, discuss the case.  So I

Page 40

1    might have had a conversation with him saying that, you

2    know, what I concluded, but I don't have the final say

3    or outcome of it.

4         Q.   So what is -- what would be -- if you know

5    this just because you were in IA for a good bit of

6    time, what would be the -- penalty seems like the wrong

7    word, but what corrective action would you expect to

8    see the department take for someone not activating

9    their body camera in accordance with policy the first

10   time it happens?

11        A.   I don't know because I wasn't privileged to

12   get that information at first.  Like I said, there was

13   a transition there where it was going from the new --

14   the old assistant chief to the new chief, and there was

15   things that were being changed with the new assistant

16   chief.  So I don't know what the punishment would be

17   for not having your camera on.

18        Q.   Okay.

19        A.   And, you know, that's fairly new.  We only

20   had it for about a year so -- before -- prior to this

21   incident, so I wouldn't know.

22             (Plaintiff's Exhibit No. 3, Investigation

23        Report Case No. 20-14, was marked for

24        identification purposes.)

25   BY MS. MILLER:

Francisco Cedeno                                November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 41

1      Q.   Okay.  All right.  I'm going to hand you

2   what's been marked as Plaintiff's Exhibit Number 3.

3   Plaintiff's Exhibit Number 3 is another internal

4   affairs investigation report.  This one is authored by

5   you, and John Mays is the subject of this internal

6   affairs investigation; is that correct?

7      A.   Correct.

8      Q.   And the case number for Plaintiff's Exhibit

9   Number 3 is 20-14.

10     A.   Correct.

11     Q.   All right.  And that is, again, your internal

12   affairs case number?

13     A.   Yes, ma'am.

14     Q.   So that would mean, by your explanation, that

15   for 2020 this was the 14th case --

16     A.   Correct.

17     Q.   -- that was investigated by you.  And here we

18   have -- looks like looking back at Plaintiff's Exhibit

19   Number 2, you reach your conclusion around May 6th or

20   so, and then a couple of months later you're opening

21   another investigation into Officer Mays for a similar

22   reason.  Is that correct?

23     A.   For a body cam violation --

24     Q.   Yes, sir.

25     A.   -- yes.

Francisco Cedeno                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 42

1      Q.   Okay.  And do you remember this

2   investigation?

3      A.   Yes.

4      Q.   Okay.  Can you tell me how it came to you?

5      A.   It was probably assigned to me by either the

6   captain or assistant chief --

7      Q.   Okay.

8      A.   -- like normal.

9      Q.   Okay.

10     A.   It's either one of those.  I would have to

11  look at my log sheet on my computer to tell me who

12  exactly gave it to me --

13     Q.   Okay.

14     A.   -- because I have it logged on who assigned

15  it to me.

16     Q.   Okay.

17     A.   But it either had to be the assistant chief

18  or the captain.

19     Q.   Okay.  And are there occasions where you get

20  assigned investigations -- Let me ask you this.  Do

21  citizens sometimes call to complain about a police

22  officer and ask that a violation of policy be

23  investigated?

24     A.   Yes.

25     Q.   Do those come directly to you or would they

Page 43

1    come through that same system you described where your

2    supervisor assigns the case to you?

3         A.    They normally come through -- They do a

4    written statement.  They don't have to do a written

5    statement.  They can just actually call.  And they --

6    Yes, they go to the supervisor.  They're advised, or if

7    it's a lieutenant or a sergeant that gathered that

8    information, then they relay it to their higher up, and

9    then it gets assigned to me.

10        Q.    Got it.  Okay.  So by and large, when cases

11   come to you, do you know how they emanated or are you

12   just getting the case because the supervisor assigned

13   it to you?

14        A.    When you say emanated, what do you mean by

15   that?

16        Q.    I mean, how it came to the attention of the

17   department.  In other words, did a citizen complain?

18   Did a fellow officer complain?  Was it an anonymous

19   complaint?

20        A.    There usually could be any of those.  But

21   most of the time, it's a citizen that complained on --

22   especially if it's things against, you know, a citizen.

23   They said, you know, their allegations.  Then a citizen

24   will call, or they'll come up there and document it.

25        Q.    Okay.  And I was trying to see how this one

Francisco Cedeno                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 44

1    came to y'all's attention.  Do you know based on

2    looking at this?

3           A.    Yeah.  Let me read this little folder, and I

4    can --

5           Q.    Okay.

6           A.    -- see if I can answer that question for you.

7           Q.    Okay.  Thank you.

8           A.    I don't recall how this came to me, but I'm

9    sure -- I know that I used to look over body cams just

10   to see -- just to look -- not to beat people up but

11   just to see if -- you know, what kind of training we

12   need to give to the officers.  And I would review

13   videos.  And I believe, if I can recall, captain -- the

14   captain gave me this.  And they were -- She must have

15   saw it on video or something or was told that he --

16   that his camera wasn't on.

17          Q.    Okay.

18          A.    Because this is an incident where -- it

19   involved January -- Officer January, and he had his

20   camera on.  So it could have easily been that they were

21   looking at his camera and saw that he was on scene and,

22   you know, said, "Well, where's your camera?"  You know,

23   and that's probably how it came up.

24          Q.    Okay.  And I think this is one we don't have

25   to spend a lot of time with.  It looks like you

Page 45

1    concluded that -- you sustained, in essence, a

2    violation of the body camera policy.

3          A.    Yes, ma'am.

4          Q.    Tell me how this is -- how do these two --

5    how does this one play in your mind at the time you're

6    investigating it coming on the heels of one you had

7    just done for the same officer?

8          A.    I think that we were having issues with

9    officers, not just Mays, we were having issues with a

10   lot of officers that, you know, their cameras are

11   fairly new.  Yes, they've been trained on it, and they

12   just forget to tap it and turn it on.  So -- And Mays

13   is not the only one that was violating that policy, so.

14         Q.    So in 2020, if we're just talking about that

15   year, Union City has approximately how many officers?

16   Someone said 75.  Does that --

17         A.    Seventy --

18         Q.    -- sound about right?

19         A.    Yeah.

20         Q.    Okay.

21         A.    That includes detectives and -- yeah.

22         Q.    Okay.  So if we subtract the detectives

23   because detectives don't typically wear body cameras;

24   right?

25         A.    We have them.

Francisco Cedeno                          November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 46

1          Q.    Oh, you guys have them?

2          A.    Uh-huh.

3          Q.    Oh, okay.  You guys are different from APD.

4          A.    Yeah, we have them.  We started to get them

5    shortly after that, because, you know, we go on scenes

6    and stuff like that.  Well, I didn't have them.  I

7    recommended they have them back there when I was in

8    internal affairs so they can have it on scene and stuff

9    like that so to --

10         Q.    Okay.

11         A.    -- help them out with interviews and things

12   like that.

13         Q.    Okay.  And so in your -- if you had to say,

14   since you were the internal affairs unit of one in 2020

15   for the most part, how many officers did you sustain a

16   violation of the body camera policy on for 2020?

17         A.    Are you referring to how many investigations

18   I had or just --

19         Q.    No, sustained.

20         A.    -- knowledge of somebody not having their --

21   or putting their camera on?

22         Q.    No.  I mean, like an investigation where you

23   sustain a violation of policy.

24         A.    Oh, there was a few.  There was -- I can't

25   remember, but I know there was a few.  Because like I

Francisco Cedeno                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 47

1    said, he's not the only one -- he wasn't the only one

2    that had issues with turning on their cameras --

3         Q.    Okay.

4         A.    -- so there's . . .

5         Q.    Okay.  Okay.  So the violation is sustained,

6    and then what happens as a result of that?

7         A.    I just hand my investigation over to the

8    supervisor, and, you know, they discipline them or

9    whatever they do.

10        Q.    Okay.  And what is the significance -- like

11   why even bother having officers wear body cameras?

12        A.    What's the significance of it?

13        Q.    Yeah, tell me why it's even a policy that

14   the --

15        A.    That protects --

16        Q.    -- department has.

17        A.    That protects the officer.  It protects the

18   citizens.  It captures, you know, what really happened.

19        Q.    So do you think that body camera usage is an

20   important part of a police officer's duties?

21        A.    Yes, it's very important.  But, you know,

22   there are circumstances that come up that, you know, in

23   the heat of the moment, things get hot and get excited.

24   And, you know, when you're trying -- you know, we have

25   a lot of police officers that are -- want to do their

Page 48

1    job well.  And, you know, when you get to a point where

2    it's a hot call or something and you're focusing on

3    something on a violent crime or something like that,

4    you know, people tend to forget to, you know, hit their

5    body cam, so.  Yes, it's very important.  But it's

6    something that -- it can be forgotten sometimes, you

7    know, or not in time, you know, once you're in that --

8    that -- the heat of the moment, so.

9         Q.    It can also be intentionally not turned on.

10        A.    Correct.

11        Q.    Okay.  So --

12        A.    I don't feel that that was the situation with

13   Mays, though.

14              (Plaintiff's Exhibit No. 5, Investigation

15        Report Case No. 22-10, was marked for

16        identification purposes.)

17   BY MS. MILLER:

18        Q.    Okay.  Let's talk about -- I'm going to skip

19   4 and go to 5 -- Plaintiff's Exhibit Number 5.  This is

20   not an investigation that you did.  And in 2020, which

21   is the date of this investigation, I'm not even sure if

22   you were still in internal affairs, were you?

23        A.    No, ma'am.  I was -- That's April?  No,

24   uh-uh.

25        Q.    Okay.  So you had gone on to CID supervisor

Francisco Cedeno                            November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 49

1    at that point.

2         A.    Yeah, November 2021, I was -- yeah, a year

3    ago.

4         Q.    Okay.  November -- Early November or late

5    November?

6         A.    I believe it was maybe early, maybe a week or

7    two into November.

8         Q.    Okay.  And so I'm going to -- Just can you

9    take a look at that and just tell me if you have any

10   knowledge about that.  And by that, I mean, Plaintiff's

11   Number 5 which is another investigative report

12   concerning Officer Mays that --

13        A.    I don't have no knowledge of this.  I

14   don't --

15        Q.    Okay.

16        A.    No.

17        Q.    You don't --

18        A.    Internal affairs is -- Nobody should have

19   knowledge of internal affairs investigations except for

20   the chiefs and the sergeant.

21        Q.    Okay.

22        A.    So I have no knowledge of anything else past

23   November, but -- other than the ones that were assigned

24   to me when she's not available to do it, then I'm aware

25   of those.

Page 50

1      Q.   Well, I just meant kind of like how you

2   described Glasgow being aware that an investigation was

3   going on --

4      A.   No, I was --

5      Q.   -- and coming and talking to you.

6      A.   I was not aware.

7      Q.   You're not aware of this thing?

8      A.   Uh-uh.

9      Q.   Okay.

10     A.   Let me tell you something.  When I got back

11  in the back as a detective -- lieutenant detective, the

12  first week I got there, we had three people die.  Dead.

13  I was too busy to even -- You know, and it's been like

14  that.  It's been -- I've been -- We've been busy back

15  there.  So I don't -- Yeah, there's a lot of chit

16  chatter, you know, in every job.  But I pretty much

17  stay to myself and do what I got to do in the back, and

18  I don't hear this stuff.

19          (Plaintiff's Exhibit No. 5-A, Notice of

20      Reprimand, was marked for identification

21      purposes.)

22  BY MS. MILLER:

23     Q.   Sure.  And so then just to be clear, handing

24  you 5-A, there are a bunch of signatures on that.  I'm

25  going to assume none of those are yours.

Francisco Cedeno                November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 51

1          A.    This was the 17th.  No, none of those are

2     mine.  None of those are my signatures.

3          Q.    None of -- Okay.  And so 5-A for the record

4     is a Notice of Reprimand for Officer Mays for a failure

5     to use his body camera or to properly activate his body

6     camera in November of 2021.  It's labeled 5-A because

7     it's connected to the investigation -- the internal

8     affairs investigation that we've labeled Exhibit 5.  So

9     that's why we have that numbering.

10               MR. BENNETT:  Exhibit 5, that's the 22-10?

11               MS. MILLER:  Yes, that's --

12               MR. BENNETT:  Okay.

13               MS. MILLER:  -- 22- -- case number 22-10.

14               MR. BENNETT:  Okay.

15               MS. MILLER:  Okay.

16               (Plaintiff's Exhibit No. 4, Investigation

17          Report Case No. 20-22, was marked for

18          identification purposes.)

19     BY MS. MILLER:

20          Q.    And then lastly, just another -- I'm handing

21     you 4 just so that we're complete.  I went out of

22     order, but we're just going to button this down.  This

23     is Plaintiff's Exhibit Number 4.  It is an internal

24     affairs investigation dated 8/23/2020.  This was an

25     investigation conducted by you, Lieutenant, at least

Francisco Cedeno                         November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 52

1    according to the cover page.

2          A.    Yes, ma'am.

3          Q.    Yes?  And this was case number 20-22 meaning

4    it was the 22nd internal affairs investigation you

5    opened in 2020; is that accurate?

6          A.    Yes, ma'am.

7          Q.    Okay.  And this investigation did not involve

8    body cameras, but it did involve Officer Mays; fair?

9          A.    Correct.

10         Q.    Can you just summarize in three sentences or

11   less, or as many sentences as you want, what this

12   investigation was about?

13         A.    Can you give me a minute to --

14         Q.    Sure.

15         A.    Yeah.

16         Q.    Sure, sure, sure.

17         A.    I believe I remember, but I just want to make

18   sure.

19         Q.    Absolutely.

20         A.    Oh, okay.  This was an incident where it was

21   alleged subordination -- insubordination on a

22   supervisor which was Donna Baker.

23         Q.    And Donna Baker was a sergeant at the time?

24         A.    Yes.

25         Q.    Was she Mays' sergeant?

Page 53

1      A.   Yes.

2      Q.   Okay.  So a sergeant over patrol?

3      A.   Yes.

4      Q.   And Sergeant Baker had an issue.  I guess the

5  genesis of the insubordination was Sergeant Baker had

6  an issue with Mays' reports.  Is that fair to say?

7      A.   Yeah, there was -- we were having a lot of

8  issues with our report system.  They were coming --

9  getting into a new system and apparently he did not --

10 was not able to do some diagrams for his accidents.

11 And I think he told his other -- his lieutenant

12 actually at the time that he was having issues with it.

13 And then Baker, again, tried to address the issue, and

14 then they got in a -- I think a verbal argument or

15 confrontation or something like that.

16     Q.   Okay.  And what did you do in -- Just kind of

17 walk me through your -- like, what did you do to

18 investigate this allegation?

19     A.   Well --

20     Q.   Did you interview people?  Did you --

21     A.   -- I interviewed -- Yeah, without reading

22 everything there, I interviewed him, I interviewed her,

23 anybody that was involved or anybody that, you know,

24 had an earshot of it, if there was anybody involved or,

25 you know, that was in there when this happened.

Francisco Cedeno                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 54

1       Q.   Okay.  And what was your conclusion?

2       A.   I don't think this happened with anybody

3    around.  I think, actually, if I can recall, Baker took

4    him to the side actually and spoke with him, I believe.

5    I think I concluded that it was -- I'm not sure -- I

6    didn't conclude that he violated anything.  I think

7    that after they had the discussion and they -- him and

8    Baker actually handled it on their own terms.  You

9    know, they spoke about it, and I think that was the

10   outcome of that.

11      Q.   Okay.  You mention in this report, and I

12   think it -- I don't know if it's a typo or not, but I

13   wanted to make sure and ask you.  I'll just show you

14   because there are no page numbers, so it's easier if I

15   just show you where I am.

16      A.   Yes, ma'am.

17      Q.   On this paragraph here inside of the

18   investigative report which is about halfway through,

19   you say that --

20      A.   This paragraph right here?

21      Q.   Yeah.  "Baker advised Mays he had numerous

22   disproved reports."

23      A.   Disapproved, yeah.

24      Q.   Disapproved?

25      A.   Disapproved.

Francisco Cedeno                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 55

1        Q.    Okay.  So it's not disproved meaning --

2        A.    No, no.

3        Q.    -- they were false?

4        A.    Disapproved.

5        Q.    Disapproved?

6        A.    Yeah, that's a typo on my part.

7        Q.    All right.

8        A.    Disapproved reports, that means that

9   something was wrong with them and they needed to be --

10  they were sent back to him to correct.

11       Q.    Okay.

12       A.    Yeah.

13       Q.    So what was -- Like, if she's the sergeant

14  and she's looking at his reports in order to approve

15  them, what kind of stuff is she looking for?

16       A.    Grammar.  That was an accident report, so

17  she's looking for diagrams of the accident which I know

18  at that time they were having issues with the diagrams

19  with that new -- you know, the new report system that

20  we had.  So they were having a lot of issues with that,

21  so that's what this all stemmed from is the -- him not

22  having a diagram on there.  There was a lot of issues

23  with them.

24       Q.    Okay.  With him in his reports or everybody's

25  reports?

Francisco Cedeno                       November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 56

1          A.    No.  They were having issues across the board

2     in reference to that new program because they were

3     working out the kinks of it because it was new and

4     everybody had to be trained on it.  It just was not

5     picking up diagrams.

6          Q.    Okay.  I think I'm almost done.  Let me just

7     check my notes.  Okay?

8          A.    I hope so.  My stomach's growling.

9          Q.    You ready to eat some lunch?  I guess so.

10    It's 1:30, huh?

11         A.     I got to head back to the city because I got

12    to see what's going on.

13              MS. MILLER:  I think that is all I have,

14         and I will let Mr. Bennett ask you any questions

15         he has.

16              MR. BENNETT:  I just have just a couple of

17         follow-up questions.

18                        EXAMINATION

19    BY MR. BENNETT:

20         Q.    You walked through a timeline of what your

21    investigation was related to the IA investigation

22    regarding our complaint here, Exhibit 2, the 20-03 IA.

23    You kind of walked us through a timeline of what you

24    did.  And if I heard you correctly, you said March 1st,

25    of course, was the incident date, and then March 2nd

Case 1:22-cv-00816-SCJ   Document 51-4   Filed 08/07/23   Page 57 of 80
Francisco Cedeno                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 57

1    you got a statement from Mays; correct?

2         A.   Uh-huh.

3         Q.   And then it appears that on -- sometime

4    around March 5th, you were trying to get in contact

5    with Mr. Early?

6         A.   Uh-huh.

7         Q.   Okay.

8              MS. MILLER:  Yes?

9              THE WITNESS:  Yes.

10   BY MR. BENNETT:

11        Q.   Okay.  Do you remember at what time you would

12   have looked over and reviewed the body cam video?

13        A.   I probably looked at it immediately just to

14   take a look at the camera.  Because when I have these

15   complaints that come, I normally try to look at the

16   camera just to get a feel of what happened.

17        Q.   Do you --

18        A.   But I can't honestly tell you when I did.  I

19   know I did at some point.

20        Q.   Do you recall ever seeing any photos of the

21   scene?

22        A.   No.

23        Q.   Based on Exhibit 2, did you ever receive a

24   phone call or any communication from Mr. Early or his

25   attorney saying that they weren't going to speak with

Francisco Cedeno                          November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 58

1    you?

2         A.   I had an interview set up with Ms. Early's --

3    with Mr. Early's mom at their house.  I actually drove

4    out to the house, and our -- we were supposed to meet

5    at 11:00 o'clock that morning.  I got there at 10:40.

6            I gave Ms. Early a call and advised her

7    that I was sitting outside waiting, and that's when

8    she told me that her attorney advised him not to

9    speak with me at this time.  Then I said okay.  And I

10   think about 15 minutes later I got a call from the

11   attorney, and she let me know that once he's -- you

12   know, once he -- she's had time to talk to him that

13   she would make him available to me, but that never

14   happened, so.

15        Q.   Was that -- And so that was the only time you

16   spoke to -- I believe it was Ms. Flat who was the

17   attorney; is that --

18        A.   Yes, yes, Ms. Flat.  And I never spoke to Mr.

19   Early, just the mom.

20            MR. BENNETT:  That's all I have.

21            THE WITNESS:  Thank you.

22            MS. MILLER:  Thank you.

23            THE WITNESS:  You're welcome.

24            (The deposition in the above-entitled

25       matter was concluded at approximately 1:32 p.m.)

Francisco Cedeno                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 59

1                    C E R T I F I C A T E

2    STATE OF GEORGIA    )

3    COUNTY OF FAYETTE   )

4         I, CHARLENE M. HANSARD, Certified Court

5    Reporter, State of Georgia, do hereby certify that

6    the foregoing pages were reported by me via speech

7    recognition and reduced to print by me personally or

8    under my direct supervision and is a true, complete

9    and correct transcript of the aforesaid proceedings

10   reported by me.

11        I further certify that I am not a relative,

12   employee, attorney or counsel of any of the parties;

13   that I am not a relative or employee of attorney or

14   counsel for any of said parties; nor am I financially

15   interested in the outcome of the action.

16        This certification is expressly withdrawn and

17   denied upon the disassembly or photocopying of the

18   foregoing transcript, unless said disassembly or

19   photocopying is done by the undersigned certified

20   court reporter and original signature and seal is

21   attached thereto.

22        This the 18th day of November, 2022.

23

24        *Charlene M. Hansard*

          CHARLENE M. HANSARD, CCR, CVR-M

25        Certificate No. B-2341

Veritext Legal Solutions
800.808.4958                                    770.343.9696

Francisco Cedeno                              November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 60

1                      D I S C L O S U R E

2        I, Charlene M. Hansard, do hereby disclose

3    pursuant to Article 10.B. of the Rules and

4    Regulations of the Board of Court Reporting of the

5    Judicial Council of Georgia that I was contacted by

6    the party taking the proceedings to provide court

7    reporting services for this proceeding and there is

8    no contract that is prohibited by O.C.G.A. Section

9    15-14-37(a) and (b) or Article 7.C. of the Rules and

10   Regulations of the Board for the taking of this

11   proceeding.

12       There is no contract to provide reporting

13   services between myself or any person with whom I

14   have a principal and agency relationship nor any

15   attorney at law in this action, party to this action,

16   party having a financial interest in this action, or

17   agent for an attorney at law in this action, party to

18   this action, or party having a financial interest in

19   this action.  Any and all financial arrangements

20   beyond my usual and customary rates have been

21   disclosed and offered to all parties.

22       DATED:  November 8, 2022.

23

24

                        _Charlene M. Hansard_

25                 CHARLENE M. HANSARD, CCR-B-2341

Francisco Cedeno                                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

                                                            Page 61

```
 1   To:
 2        Matthew Bennett, Esq.  mhb@bennettlawofficellc.com
          Bennett Law Offices, LLC
 3        1012 Memorial Drive
          Suite 13
 4        Griffin, Georgia 30223
          (678) 688-3554
 5        mhb@bennettlawofficellc.com
 6
     Re: Signature of Deponent
 7
     Date Errata due back at our offices:  30 days
 8
 9   Greetings:
10   The deponent has reserved the right to read and sign.
     Please have the deponent review the attached PDF
11   transcript, noting any changes or corrections on the
     attached PDF Errata.  The deponent may fill out the
12   Errata electronically or print and fill out manually.
13   Once the Errata is signed by the deponent and
     notarized, please mail it to the offices of Veritext
14   (below).
15   When the signed Errata is returned to us, we will
     seal and forward to the taking attorney to file with
16   the original transcript.  We will also send copies of
     the Errata to all ordering parties.
17
     If the signed Errata is not returned within the time
18   above, the original transcript may be filed with the
     court without the signature of the deponent.
19
     Please send completed Errata to:
20
     Veritext Production Facility
21
     20 Mansell Court, Suite 300
22
     Roswell, GA 30076
23
     (770) 343-9696
24
     cs-southeast@veritext.com
25
```

Francisco Cedeno                              November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 62

```
 1    ERRATA FOR ASSIGNMENT #5571025
 2    I, the undersigned, do hereby certify that I have
      read the transcript of my testimony, and that
 3
      ____ There are no changes noted.
 4
      ____ The following changes are noted:
 5
      Pursuant to Rule 30(7)(e) of the Federal Rules of
 6    Civil Procedure and/or OCGA 9-11-30(e), any changes
      in form or substance which you desire to make to your
 7    testimony shall be entered upon the deposition with a
      statement of the reasons given for making them.  To
 8    assist you in making any such corrections, please use
      the form below.  If additional pages are necessary,
 9    please furnish same and attach.
10
      Page _____ Line _____ Change_____
11

12    _____

      Reason for change _____
13
      Page _____ Line _____ Change_____
14

15    _____

      Reason for change _____
16
      Page _____ Line _____ Change_____
17

18    _____

      Reason for change _____
19
      Page _____ Line _____ Change_____
20

21    _____

      Reason for change _____
22
      Page _____ Line _____ Change_____
23

24    _____

      Reason for change _____
25
```

Francisco Cedeno                                       November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 63

1   Page _____ Line _____ Change_____

2   _____

3   Reason for change _____

4   Page _____ Line _____ Change_____

5   _____

6   Reason for change _____

7   Page _____ Line _____ Change_____

8   _____

9   Reason for change _____

10  Page _____ Line _____ Change_____

11  _____

12  Reason for change _____

13  Page _____ Line _____ Change_____

14  _____

15  Reason for change _____

16  Page _____ Line _____ Change_____

17  _____

18  Reason for change _____

19

                    _____

20                      FRANCISCO CEDENO

21  Sworn to and subscribed

    before me this ___ day

22  of _____, _____.

23

    _____

24  NOTARY PUBLIC

25  My Commission Expires:_____

Francisco Cedeno
Early, Dianti v. Mays, John (Officer)
November 8, 2022

**[00816 - administered]**

Page 1

| 0 |
|---|
| **00816**   1:6 |

| 1 |
|---|

**1**   3:11 4:6 38:5
**10**   26:9
**10.b.**   60:3
**100**   1:17
**1012**   2:11 61:3
**10:40**   58:5
**11**   26:9 28:10
**11:00**   58:5
**12**   3:12
**12:16**   1:16 4:2
**13**   2:11 61:3
**14th**   2:5 41:15
**15**   58:10
**15-14-37**   60:9
**17**   7:3
**17076**   59:24
  60:24
**17th**   51:1
**18**   24:14,17,19
**18th**   59:22
**1:22**   1:6
**1:30**   56:10
**1:32**   58:25
**1st**   9:24 32:25
  56:24

| 2 |
|---|

**2**   3:12 12:20,21
  13:3,4 17:8
  33:14 41:19
  56:22 57:23
**20**   14:12 61:21
**20-002897**   14:12
  31:6

**20-03**   3:13 12:22
  13:11 14:1 15:5
  56:22
**20-07**   37:4
**20-14**   3:14 40:23
  41:9
**20-22**   3:16 51:17
  52:3
**2008**   24:12,13
**2020**   7:22 9:24
  10:11,12 15:16
  17:8 33:16,20
  35:3 38:5 41:15
  45:14 46:14,16
  48:20 52:5
**2021**   49:2 51:6
**2022**   1:17 59:22
  60:22
**2110**   2:5
**22**   51:13
**22-10**   3:17 48:15
  51:10,13
**22nd**   52:4
**2341**   1:15 59:25
  60:25
**29**   33:19 35:3
**2nd**   38:8 56:25

| 3 |
|---|

**3**   3:14 40:22
  41:2,3,9
**3/1/2020**   13:7
**30**   33:16 61:7
  62:5
**300**   61:21
**30076**   61:22
**30223**   2:12 61:4

**30309**   2:6
**30th**   36:23 38:15
  38:21,23 39:2,5
**343-9696**   61:23

| 4 |
|---|

**4**   3:6,11,15 17:8
  48:19 51:16,21
  51:23
**4-11-1**   17:10
**40**   3:14
**404**   2:6
**48**   3:17

| 5 |
|---|

**5**   3:17 48:14,19
  48:19 49:11
  50:19,24 51:3,6
  51:8,10
**50**   3:18
**51**   3:15
**5571025**   62:1
**56**   3:7
**5a**   3:18
**5th**   38:12,20
  57:4

| 6 |
|---|

**678**   2:12 61:4
**688-3554**   2:12
  61:4
**6th**   38:23 39:5
  41:19

| 7 |
|---|

**7**   62:5
**7.c.**   60:9
**720-8111**   2:6
**75**   2:5 45:16

**770**   61:23

| 8 |
|---|

**8**   1:17 60:22
**8/23/2020**   51:24

| 9 |
|---|

**9-11-28**   4:5
**9-11-30**   62:6

| a |
|---|

**able**   31:3 33:25
  53:10
**absolutely**   52:19
**academy**   7:5
  21:23,25
**accident**   27:5
  55:16,17
**accidents**   25:20
  27:2,24 53:10
**accomplished**
  11:6
**accuracy**   6:3
**accurate**   52:5
**action**   1:5 40:7
  59:15 60:15,15
  60:16,17,18,19
**activate**   22:4,10
  51:5
**activating**   12:1
  40:8
**actual**   20:10
**addition**   15:21
  35:23
**additional**   39:12
  39:15 62:8
**address**   53:13
**administered**
  4:9

Francisco Cedeno                                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

**[administrative - bodily]**                                    Page 2

**administrative**
16:23 29:12
**advise** 11:19
18:11,14 29:24
**advised** 23:12,13
34:16 43:6
54:21 58:6,8
**advises** 16:22
**affairs** 7:9,23
8:1,20 9:4,8,11
9:23 13:15 14:3
15:9 18:23 19:1
23:18 24:8 25:3
25:4 28:13 41:4
41:6,12 46:8,14
48:22 49:18,19
51:8,24 52:4
**affirmative** 2:23
**aforesaid** 59:9
**afternoon** 4:17
**agency** 60:14
**agent** 60:17
**ago** 9:25,25 10:2
49:3
**ahead** 18:7
24:15
**air** 34:4,16 35:7
**allegation** 53:18
**allegations**
11:19 43:23
**alleged** 23:13
52:21
**anonymous**
43:18
**answer** 5:10,13
33:13 37:2 44:6
**anybody** 23:6,7
53:23,23,24 54:2

**anymore** 26:3
27:3
**apd** 46:3
**apparently** 53:9
**appears** 57:3
**approve** 55:14
**approximately**
45:15 58:25
**april** 33:16
34:10 36:23
38:21,23 39:2,5
48:23
**area** 7:19 28:25
29:5
**argument** 53:14
**armed** 29:2
**arrangements**
60:19
**article** 60:3,9
**asking** 11:7
29:21 32:10
**assess** 25:12
**assessing** 25:10
**assigned** 8:5
10:22 23:19,21
42:5,14,20 43:9
43:12 49:23
**assignment** 62:1
**assigns** 10:21
43:2
**assist** 62:8
**assistant** 10:20
18:22 19:23,24
20:13 23:17
40:14,15 42:6,17
**associated** 14:25
**assume** 50:25

**assumed** 31:12
**assuming** 36:22
**atlanta** 1:2 2:6
7:18
**attach** 62:9
**attached** 3:21,22
59:21 61:10,11
**attention** 43:16
44:1
**attorney** 22:22
38:13 57:25
58:8,11,17 59:12
59:13 60:15,17
61:15
**audibly** 5:17
**audio** 24:4,25
**authored** 41:4
**available** 27:22
27:23 49:24
58:13
**aware** 29:12
49:24 50:2,6,7

**b**

**b** 1:15 59:25
60:9,25
**back** 20:7 31:20
33:8 34:11 35:6
35:8 36:13
41:18 46:7
50:10,11,14,17
55:10 56:11
61:7
**backed** 31:19
**background** 7:1
**baker** 52:22,23
53:4,5,13 54:3,8
54:21

**based** 44:1 57:23
**basically** 9:8
16:10 38:24
**beat** 44:10
**began** 10:23
**beginning** 17:14
24:19
**behalf** 2:3,9
38:20
**believe** 9:25 10:4
12:10 13:18
14:12 21:7 24:3
24:20 27:1
31:22 32:22
34:2 35:12,16
44:13 49:6
52:17 54:4
58:16
**benefit** 9:15
**bennett** 2:10,10
3:7 18:4 51:10
51:12,14 56:14
56:16,19 57:10
58:20 61:2,2
**bennettlawoffi...**
2:13 61:2,5
**better** 20:11
37:13
**beyond** 60:20
**big** 8:18,20 21:4
**bit** 7:1 11:9 40:5
**black** 28:23
29:17 30:7,10,10
31:20
**board** 8:21 56:1
60:4,10
**bodily** 27:15

Francisco Cedeno
Early, Dianti v. Mays, John (Officer)
November 8, 2022

**[body - collect]**

Page 3

**body** 10:24
11:15 12:2
17:18 21:1,5,9
21:11,24 22:10
24:10,11,23 39:8
39:13 40:9
41:23 44:9 45:2
45:23 46:16
47:11,19 48:5
51:5,5 52:8
57:12
**bolo** 29:23 31:18
**bolos** 29:7,14,22
30:13,21 31:4
**book** 23:18
33:24 34:7
**bother** 47:11
**bottom** 37:4
**break** 2:23 5:20
5:22,24 18:8
20:6
**briefings** 30:3,4
**broken** 28:7
29:9
**bunch** 50:24
**busy** 50:13,14
**button** 22:11
51:22

**c**

**c** 2:1 4:1 59:1,1
60:1
**cad** 29:19
**call** 18:5 20:5
27:1 42:21 43:5
43:24 48:2
57:24 58:6,10

**called** 28:9 34:8
34:13,21 35:7
**cam** 10:24 12:2
21:1,5,9,24
22:10 24:10,23
41:23 48:5
57:12
**camera** 11:16
17:18 22:1,2,4
39:8 40:9,17
44:16,20,21,22
45:2 46:16,21
47:19 51:5,6
57:14,16
**cameras** 21:11
39:13 45:10,23
47:2,11 52:8
**cams** 24:11 44:9
**capability** 35:16
**captain** 10:21
18:6 42:6,18
44:13,14
**captures** 47:18
**car** 35:12
**career** 7:13,15
**carry** 18:12
**cars** 29:9
**case** 3:12,14,15
3:17 4:25 12:16
12:17,22 13:11
13:15,24 14:1,2
14:7,9,10,14,15
14:18,21,23,24
15:4,9,11,13,21
16:3,20 17:24
18:17 20:1
30:24,24,25 31:5
39:25 40:23

41:8,12,15 43:2
43:12 48:15
51:13,17 52:3
**cases** 10:20
24:10 43:10
**ccr** 59:24 60:25
**cedeno** 1:12 3:4
4:12,17,18,19,20
4:20,21,22 17:9
28:22 63:20
**celebrating** 10:5
**center** 9:18
22:11 29:24
30:1 31:17
32:18
**certainly** 5:24
**certificate** 59:25
**certification**
59:16
**certified** 1:15
59:4,19
**certify** 59:5,11
62:2
**chain** 39:9
**change** 30:4
62:10,12,13,15
62:16,18,19,21
62:22,24 63:1,3
63:4,6,7,9,10,12
63:13,15,16,18
**changed** 40:15
**changes** 6:5,5,6
61:11 62:3,4,6
**characterize**
22:13
**charlene** 1:15
59:4,24 60:2,25

**chatter** 50:16
**check** 6:3 56:7
**chief** 10:20
18:22 19:24,25
20:14 23:17
40:14,14,16 42:6
42:17
**chiefs** 49:20
**chit** 50:15
**chronologically**
38:11
**cid** 8:9,13 26:19
48:25
**circumstances**
28:22 47:22
**citation** 14:19
**citizen** 21:8
43:17,21,22,23
**citizens** 42:21
47:18
**city** 1:8 7:2,3,13
14:9 27:20 31:5
31:17 35:18
45:15 56:11
**civil** 1:5 62:6
**clarified** 5:19
**clarify** 5:20
**classes** 9:4,5,8
9:12 25:20
**clear** 20:17
50:23
**client** 11:2,10
16:8,11 20:24
**clip** 12:25
**close** 39:3
**clue** 35:21
**collect** 11:15

**collision** 28:6
**collisions** 27:21
**come** 18:10,13
  19:15 21:22,23
  31:25 36:13
  39:23 42:25
  43:1,3,11,24
  47:22 57:15
**comes** 22:12
**coming** 10:5
  19:24 45:6 50:5
  53:8
**commencing**
  1:16
**commission**
  63:25
**commonly** 9:19
**communication**
  57:24
**communications**
  29:20,24 30:1,13
  30:19 34:22
**complain** 42:21
  43:17,18
**complained**
  43:21
**complaint** 11:14
  43:19 56:22
**complaints**
  57:15
**complete** 2:22
  51:21 59:8
**completed** 61:19
**completely** 6:13
**complied** 4:3
**computer** 35:14
  42:11

**concerning**
  20:11 29:4
  32:12 49:12
**conclude** 20:18
  54:6
**concluded** 18:15
  20:20 28:22
  39:7 40:2 45:1
  54:5 58:25
**conclusion** 11:12
  17:20 18:11,13
  19:10,15 39:10
  39:23 41:19
  54:1
**conclusions**
  17:22 18:20
  28:20 38:24
  39:18
**conduct** 10:25
  39:15
**conducted** 39:2
  51:25
**confirmed** 28:24
  29:17 34:17
**confrontation**
  53:15
**connected** 14:14
  51:7
**connection**
  13:22 15:21
**considered** 27:4
**considering**
  16:10
**contact** 21:8
  57:4
**contacted** 34:14
  34:15 60:5

**contained** 1:13
**continuity** 2:23
**contract** 60:8,12
**conversation**
  5:16 39:18 40:1
**copies** 3:23
  19:25 61:16
**copy** 3:22 13:2
  19:20 20:2
  24:24
**correct** 25:14
  35:2 41:6,7,10
  41:16,22 48:10
  52:9 55:10 57:1
  59:9
**corrections**
  61:11 62:8
**corrective** 40:7
**correctly** 17:12
  56:24
**council** 60:5
**counsel** 22:20
  59:12,14
**county** 28:25
  29:5,20 30:1,19
  34:21 59:3
**couple** 36:21
  41:20 56:16
**course** 18:2
  56:25
**court** 1:1,15 4:3
  4:10 5:3,11,12
  6:10 9:15 59:4
  59:20 60:4,6
  61:18,21
**cover** 52:1
**crime** 28:25
  29:15,18 48:3

**crimes** 8:15
  29:10
**criminal** 7:10
**cs** 61:24
**curve** 24:16
**customary** 60:20
**cv** 1:6
**cvr** 59:24

**d**

**d** 3:2 4:1,5 60:1
**dangerous** 29:2
**date** 48:21 56:25
  61:7
**dated** 17:8 33:16
  51:24 60:22
**davis** 25:5,6,7
**day** 30:6 34:24
  38:8 59:22
  63:21
**days** 4:20 61:7
**dead** 50:12
**dealt** 35:15
**death** 27:7
**decision** 11:9
**defendant** 1:9
  2:9
**denied** 59:17
**department** 1:8
  19:8 22:7 27:19
  29:8,11 40:8
  43:17 47:16
**department's**
  21:5,11 39:8
**deponent** 61:6
  61:10,10,11,13
  61:18

Francisco Cedeno
November 8, 2022
Early, Dianti v. Mays, John (Officer)

[deposition - explanation]

Page 5

**deposition** 1:12 1:14 3:11,22 4:7 5:1,6 6:2 58:24 62:7
**describe** 36:22
**described** 32:12 43:1 50:2
**describing** 33:19
**description** 3:10
**desire** 62:6
**detective** 7:7 8:3 8:6 50:11,11
**detectives** 8:19 26:23 45:21,22 45:23
**determined** 11:9
**diagram** 55:22
**diagrams** 53:10 55:17,18 56:5
**dianti** 1:4 4:25 13:8
**die** 50:12
**different** 14:7 46:3
**direct** 59:8
**directly** 42:25
**disapproved** 54:23,24,25 55:4 55:5,8
**disassembly** 59:17,18
**discipline** 18:12 18:12 47:8
**disclose** 60:2
**disclosed** 60:21
**discuss** 39:25
**discussion** 54:7

**dispatch** 30:20 30:21 34:14,15 34:16 35:8
**disposition** 20:11
**disproved** 54:22 55:1
**district** 1:1,1
**divided** 8:15
**division** 1:2 7:11 7:23
**document** 12:5,9 43:24
**documentation** 29:17
**dog** 13:2
**doing** 19:1 21:22 24:8 26:2 32:6 32:21
**donna** 52:22,23
**draw** 14:21
**drive** 1:17 2:11 61:3
**driving** 28:18
**drove** 58:3
**dubose** 2:4
**dubosemiller.c...** 2:7
**due** 22:19 28:22 61:7
**duly** 4:13
**duties** 47:20
**duty** 32:19

**e**

**e** 2:1,1 3:2 4:1,1 59:1,1 60:1 62:5 62:6

**eared** 13:2
**early** 1:4 4:25 13:8 22:19 23:5 28:17,23 38:12 49:4,6 57:5,24 58:6,19
**early's** 23:3 58:2 58:3
**earshot** 53:24
**easier** 54:14
**easily** 44:20
**eat** 56:9
**education** 22:9 35:5
**efforts** 38:12
**either** 10:22 18:21 20:22 42:5,10,17
**electronically** 61:12
**emanated** 43:11 43:14
**employee** 59:12 59:13
**ended** 11:4,5
**enforcement** 7:12 9:20
**entered** 62:7
**entire** 7:12
**entirety** 16:3
**entitled** 58:24
**entrapment** 27:10
**entry** 38:24
**equipped** 35:12
**errata** 61:7,11 61:12,13,15,16 61:17,19 62:1

**especially** 43:22
**esq** 2:4,10 61:2
**essence** 45:1
**event** 15:4 32:20
**everybody** 10:25 29:14 36:12 56:4
**everybody's** 29:11 55:24
**evidence** 20:21 25:23
**exact** 2:22 28:19
**exactly** 2:21 33:9 42:12
**examination** 3:6 3:7 4:15 56:18
**examined** 4:13
**example** 12:19
**excessive** 20:22 20:23
**excited** 47:23
**exhibit** 3:10,11 3:12,14,15,17,18 4:6 12:20,21 13:3,4,11 17:8 40:22 41:2,3,8 41:18 48:14,19 50:19 51:8,10,16 51:23 56:22 57:23
**exhibits** 3:9,21
**expanded** 17:17
**expect** 40:7
**expires** 63:25
**explain** 39:18
**explanation** 41:14

Francisco Cedeno
Early, Dianti v. Mays, John (Officer)

November 8, 2022

**[expressly - hand]**

Page 6

| | | | |
|---|---|---|---|
| **expressly** 59:16 | 34:11 35:6,8 | **front** 13:10 | 38:17 50:2 |

**f**

| | | | |
|---|---|---|---|
| **f** 2:4 59:1 | **fine** 6:14 | 16:12 | **glasgow's** 32:1 |
| **facility** 61:20 | **first** 4:13 7:4 | **ft** 21:22 | **go** 9:19 15:15,18 |
| **facts** 11:10 | 10:5 16:24 17:7 | **fulton** 28:25 | 16:8 18:7 20:5 |
| **failure** 51:4 | 23:9,11 24:9,9 | 29:5,20 30:1,19 | 25:12,19 26:14 |
| **fair** 28:16 52:8 | 24:10 36:16,17 | 34:21 | 29:19,23,25 |
| 53:6 | 40:9,12 50:12 | **function** 26:14 | 30:19 34:11 |
| **fairly** 24:8 40:19 | **five** 7:6 16:5,14 | **furnish** 62:9 | 35:6,8 43:6 46:5 |
| 45:11 | 33:15 | **further** 59:11 | 48:19 |
| **false** 55:3 | **flat** 58:16,18 | | **goes** 15:16 17:2 |
| **familiar** 4:25 | **flip** 14:5 | **g** | **going** 5:9 14:21 |
| **fayette** 59:3 | **focused** 17:15 | **g** 4:1 | 20:7 21:2,4 |
| **fayetteville** 1:18 | **focusing** 48:2 | **ga** 61:22 | 24:15 29:15 |
| **february** 33:10 | **folder** 44:3 | **gather** 10:24 | 40:13 41:1 |
| 33:19 35:3 | **folks** 9:19 | 11:20,21,21,21 | 48:18 49:8 50:3 |
| **federal** 62:5 | **follow** 56:17 | 25:22 36:11 | 50:25 51:22 |
| **feel** 48:12 57:16 | **following** 38:11 | **gathered** 43:7 | 56:12 57:25 |
| **fellow** 43:18 | 62:4 | **gathering** 31:17 | **good** 4:17 40:5 |
| **felonies** 8:14 | **follows** 4:14 | 32:18 | **gpstc** 9:13,16 |
| **felony** 28:25 | **footage** 11:18 | **general** 27:18 | **grammar** 55:16 |
| 29:5,10,18 | **force** 12:1 20:19 | **generally** 36:7 | **greetings** 61:9 |
| **female** 31:9 | 20:22,23 | **generate** 14:2,18 | **griffin** 2:12 61:4 |
| **file** 1:5 12:16,17 | **foregoing** 59:6 | 32:15 | **growling** 56:8 |
| 14:14,15,25 | 59:18 | **genesis** 53:5 | **guess** 7:22 9:23 |
| 15:20,23 16:1,3 | **forget** 45:12 | **georgia** 1:1,18 | 17:11 20:10 |
| 16:21 61:15 | 48:4 | 2:6,12 9:17,17 | 26:18 39:2 53:4 |
| **filed** 61:18 | **forgotten** 48:6 | 27:2 59:2,5 60:5 | 56:9 |
| **fill** 61:11,12 | **form** 62:6,8 | 61:4 | **guys** 8:15 24:15 |
| **final** 40:2 | **formulate** 36:13 | **getting** 29:9 | 46:1,3 |
| **finalizes** 6:10 | **forsyth** 9:14 | 43:12 53:9 | |
| **financial** 60:16 | **forward** 61:15 | **give** 9:6 19:20 | **h** |
| 60:18,19 | **four** 8:18 9:25 | 44:12 52:13 | **habersham** 1:17 |
| **financially** 59:14 | 9:25 10:1,9,13 | **given** 62:7 | **half** 7:6,7 10:14 |
| **find** 20:10,25 | 16:5,14 31:22 | **giving** 7:1 13:2 | **halfway** 36:2 |
| 28:18 29:16 | 33:14,15 | **glasgow** 22:25 | 54:18 |
| 30:18 31:3 | **francisco** 1:12 | 29:6 31:9,9,15 | **hand** 18:13 41:1 |
| | 3:4 4:12 63:20 | 32:11,25 33:19 | 47:7 |
| | | 33:24 35:6,17 | |

Francisco Cedeno
Early, Dianti v. Mays, John (Officer)

November 8, 2022

**[handed - involved]**

Page 7

**handed** 18:20
**handing** 13:2
  50:23 51:20
**handle** 28:8
**handled** 54:8
**handwritten**
  35:25 36:5
  37:16,18
**hansard** 1:15
  59:4,24 60:2,25
**happened** 18:16
  21:6 39:4 47:18
  53:25 54:2
  57:16 58:14
**happens** 40:10
  47:6
**happy** 5:19
**head** 56:11
**hear** 29:14 50:18
**heard** 30:2,3,8
  32:25 56:24
**heat** 47:23 48:8
**heels** 45:6
**help** 46:11
**higher** 43:8
**hit** 22:12 27:6
  48:4
**hold** 13:2 22:11
**homicide** 8:14
  26:20
**homicides** 8:13
**honestly** 57:18
**hope** 56:8
**hot** 47:23 48:2
**house** 58:3,4
**huh** 2:23 5:2,13
  8:10 13:12 15:7
  15:24 17:1,3

22:15,21 31:7
32:3 33:21 46:2
56:10 57:2,6

**i**

**ia** 10:1 12:17
  13:6 40:5 56:21
  56:22
**identification**
  4:7 12:23 40:24
  48:16 50:20
  51:18
**identify** 11:15
**immediately**
  57:13
**important** 5:13
  47:20,21 48:5
**incident** 10:16
  11:25 13:7,18,19
  13:24 14:6
  15:13 20:19
  21:6 25:11 32:5
  32:11,14,23,25
  33:18 35:1 38:5
  40:21 44:18
  52:20 56:25
**include** 17:17
**included** 39:4
**includes** 45:21
**individually** 1:7
**individuals**
  31:22
**information**
  11:20 29:3
  30:18 32:1,2
  35:8 36:12
  40:12 43:8

**informed** 12:3
**initial** 14:16
  30:25
**initially** 37:25
  39:23
**injured** 27:7,9
**injuries** 27:15
**injury** 26:19
**inquiry** 16:23
**inside** 14:5 33:14
  54:17
**instructor** 21:16
**insubordination**
  52:21 53:5
**intentionally**
  48:9
**interest** 60:16,18
**interested** 59:15
**internal** 7:8,23
  8:1,20 9:4,8,11
  9:23 13:15 14:2
  15:8 18:23 19:1
  23:17 24:8 25:3
  25:4 28:13 41:3
  41:5,11 46:8,14
  48:22 49:18,19
  51:7,23 52:4
**interview** 11:5
  11:15 22:19,24
  23:3 24:2,9
  31:15 35:23
  36:6,8,9,10,15
  37:9,17,25 38:7
  38:12,16,16,17
  53:20 58:2
**interviewed**
  22:18 53:21,22
  53:22

**interviewing**
  10:23
**interviews** 10:25
  37:12 46:11
**investigate**
  53:18
**investigated**
  12:4 16:17
  41:17 42:23
**investigating**
  10:19 11:24
  33:5 45:6
**investigation**
  3:12,14,15,17
  7:9,11 12:21
  13:22 14:3,4
  15:14,22 16:7,10
  16:13 17:7,15,21
  18:15 19:12,16
  20:12,15,18,25
  21:3 25:10
  30:24 32:6
  36:11 38:19
  39:1 40:22 41:4
  41:6,21 42:2
  46:22 47:7
  48:14,20,21 50:2
  51:7,8,16,24,25
  52:4,7,12 56:21
  56:21
**investigations**
  24:20 42:20
  46:17 49:19
**investigative**
  49:11 54:18
**involve** 52:7,8
**involved** 10:19
  10:25 11:22

Francisco Cedeno
Early, Dianti v. Mays, John (Officer)

November 8, 2022

**[involved - manually]**

Page 8

25:10 28:23
29:4 36:13
44:19 53:23,24
**involving** 13:7
29:10
**issue** 53:4,6,13
**issues** 29:8 30:7
45:8,9 47:2 53:8
53:12 55:18,20
55:22 56:1
**iv.i.5** 17:11

**j**

**jade** 31:11
**january** 44:19
44:19
**jeep** 28:17,23
29:10,17 30:7,10
30:10 31:20
32:23 33:1,2
**job** 9:1 48:1
50:16
**john** 1:7 41:5
**judicial** 60:5

**k**

**keep** 15:20
**kept** 33:25
**kind** 5:12 10:18
14:5 29:11
44:11 50:1
53:16 55:15
56:23
**kinks** 56:3
**knew** 33:3
**know** 5:19,21
6:4,12 10:4
11:11,21 12:8
14:20 15:15,19

17:25 18:15,25
18:25 19:25
21:20 23:13,23
24:11 26:11,15
27:3,10,10,14
28:11,12,15 29:7
29:13,15 30:3,4
30:5,6,9 31:4
32:1,5,6,7,16,17
32:17,19 33:12
34:7 35:13
36:12,14 37:18
37:23 39:11,12
39:14,25 40:2,4
40:11,16,19,21
43:11,22,23 44:1
44:9,11,22,22
45:10 46:5,25
47:8,18,21,22,24
47:24 48:1,4,4,7
48:7 50:13,16
53:23,25 54:9,12
55:17,19 57:19
58:11,12
**knowledge** 29:1
39:9 46:20
49:10,13,19,22
**knows** 29:14

**l**

**l** 60:1
**label** 15:9
**labeled** 51:6,8
**lack** 20:11 37:13
**large** 43:10
**lastly** 51:20
**late** 24:12 49:4

**law** 2:10 7:12
9:20 60:15,17
61:2
**lawyer** 11:3
**legend** 2:20
**level** 27:17
**license** 30:22
35:12,14
**lieutenant** 4:17
7:10 8:7 10:6
13:3 18:21
20:14 26:19
27:19 43:7
50:11 51:25
53:11
**limb** 28:7
**line** 62:10,13,16
62:19,22 63:1,4
63:7,10,13,16
**little** 7:1 11:9
44:3
**llc** 2:4,10 61:2
**log** 15:6,8,14
23:18 42:11
**logged** 23:18
42:14
**long** 7:1 9:22
16:10,13 18:24
**look** 18:1 20:12
30:6 42:11 44:9
44:10 49:9
57:14,15
**looked** 57:12,13
**looking** 10:24
18:23,23 28:19
30:11 41:18
44:2,21 55:14,15
55:17

**lookout** 30:8
**looks** 14:6 38:10
41:18 44:25
**lost** 31:24
**lot** 27:14 29:9
44:25 45:10
47:25 50:15
53:7 55:20,22
**lunch** 56:9

**m**

**m** 1:15 59:4,24
59:24 60:2,25
**ma'am** 5:15,25
7:14,24 8:24
9:21 10:17
11:17 13:5,9,14
13:16,21,23
16:19 22:5,8,17
22:23 25:8,15
28:4,21 35:19
36:4 38:18,22,25
39:6,16 41:13
45:3 48:23 52:2
52:6 54:16
**madam** 5:11
6:10
**mail** 61:13
**maintain** 12:17
**major** 8:14 27:2
27:4
**making** 62:7,8
**male** 31:9,10,11
31:13
**manager** 7:17
**mansell** 61:21
**manually** 61:12

Francisco Cedeno
Early, Dianti v. Mays, John (Officer)
November 8, 2022

**[march - occurs]**

Page 9

| | | | |
|---|---|---|---|
| **march** 7:21 9:24 | **memorial** 2:11 | **name** 4:24 31:11 | **november** 1:17 |
| 10:12 17:8 | 61:3 | **natural** 5:14 | 10:6 24:12 49:2 |
| 32:25 38:5,8,12 | **mention** 30:14 | **necessarily** | 49:4,4,5,7,23 |
| 38:20 56:24,25 | 54:11 | 14:14 | 51:6 59:22 |
| 57:4 | **mentioned** 16:6 | **necessary** 62:8 | 60:22 |
| **mark** 25:22 | 16:15 31:8 | **need** 5:19,20 | **number** 3:10 |
| **marked** 3:21 4:7 | 32:23 | 18:4 20:4 36:14 | 12:20 13:3,4,11 |
| 12:20,22 13:3 | **mhb** 2:13 61:2,5 | 44:12 | 13:15,25 14:2,7 |
| 40:23 41:2 | **middle** 36:2 | **needed** 55:9 | 14:9,10,11,18,21 |
| 48:15 50:20 | **miller** 2:4,4,7 | **negative** 2:24 | 14:23,24 15:4,11 |
| 51:17 | 3:6 4:16,24 6:22 | **never** 11:4,4,5 | 15:13,15,19,21 |
| **matter** 58:25 | 12:24 18:7 20:4 | 24:9 35:14 | 17:8 30:11,14,15 |
| **matthew** 2:10 | 20:7,9 40:25 | 58:13,18 | 30:16,24,24,25 |
| 61:2 | 48:17 50:22 | **new** 19:24 24:8 | 31:5 33:14 34:1 |
| **mays** 1:7 10:23 | 51:11,13,15,19 | 25:4 40:13,14,15 | 34:2,5,22 41:2,3 |
| 11:7 13:7,19 | 56:13 57:8 | 40:19 45:11 | 41:8,9,12,19 |
| 17:9 22:19 | 58:22 | 53:9 55:19,19 | 48:19 49:11 |
| 23:11,23,24 | **mind** 45:5 | 56:2,3 | 51:13,23 52:3 |
| 35:24 37:13 | **mine** 51:2 | **nine** 7:5 | **numbered** 36:2 |
| 38:8,16 39:8,13 | **minute** 52:13 | **normal** 5:14 | **numbering** 51:9 |
| 41:5,21 45:9,12 | **minutes** 21:4 | 24:6 42:8 | **numbers** 14:2 |
| 48:13 49:12 | 58:10 | **normally** 25:17 | 15:9 54:14 |
| 51:4 52:8,25 | **mo** 31:19 | 43:3 57:15 | **numerals** 17:11 |
| 53:6 54:21 57:1 | **mom** 11:2 23:3 | **northern** 1:1 | **numerous** 28:24 |
| **mean** 19:22 | 58:3,19 | **notarized** 61:13 | 29:5,9,18 54:21 |
| 29:11 37:25 | **moment** 47:23 | **notary** 63:24 | |
| 41:14 43:14,16 | 48:8 | **noted** 62:3,4 | **o** |
| 46:22 49:10 | **month** 10:3 | **notes** 33:25 56:7 | **o** 4:1 60:1 |
| **meaning** 27:13 | **months** 7:5 | **notice** 3:11,18 | **o'clock** 58:5 |
| 52:3 55:1 | 41:20 | 4:6 5:1 16:25 | **o.c.g.a.** 4:4 60:8 |
| **means** 55:8 | **morning** 58:5 | 50:19 51:4 | **oath** 4:9 5:10 |
| **meant** 50:1 | **move** 35:23 | **noticed** 32:16 | **obviously** 15:15 |
| **measurements** | **moved** 7:5 | **notification** | **occasions** 42:19 |
| 26:1,3 | **n** | 16:18 | **occupants** 29:1 |
| **meet** 58:4 | **n** 2:1 3:2 4:1 | **notified** 16:16 | **occurred** 32:25 |
| **memo** 17:8,10 | **n.e.** 2:5 | **notify** 17:22 | 33:19 38:20 |
| 33:24 34:7 | | **noting** 61:11 | **occurs** 38:5 |

Francisco Cedeno                                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

**[ocga - photocopying]**                                           Page 10

**ocga**   62:6
**october**   10:4
**offered**   60:21
**office**   29:13
**officer**   1:7,7 7:4
   7:16 11:19 12:3
   13:7,18 16:16
   17:2,9,22 19:9
   22:10,18,25
   23:23,24 25:14
   31:14,15 32:11
   33:19,24 35:24
   37:13 38:8,16,17
   39:7,13 41:21
   42:22 43:18
   44:19 45:7
   47:17 49:12
   51:4 52:8
**officer's**   47:20
**officers**   10:23
   21:10 25:17
   27:24 28:3 29:6
   32:18 44:12
   45:9,10,15 46:15
   47:11,25
**offices**   2:10 61:2
   61:7,13
**oh**   18:7 20:4
   21:18 30:11
   31:2 46:1,3,24
   52:20
**okay**   4:24 5:3,6
   5:9 6:1,15,20
   7:12,21,21,25
   8:3,11,13,17,25
   9:7,11,15,19,22
   10:8,10 11:23
   12:8,13,19 13:10

13:17 14:5,11,13
14:17,22,24 15:2
15:10,12,20
16:15,24 17:4,20
18:16 19:3,5,17
19:20 20:2,7,16
21:2,10,15,20
22:13,18 23:1,6
23:8,15,20,24
24:18,22,24 25:5
25:9,13 26:10,13
26:16,18,25 27:4
27:8,16,23 28:1
28:5,14,16 29:16
29:25 30:9,18
31:5,8,11,14,25
32:10,24,24
33:12,17 34:18
34:20 35:10,17
36:5,16,19,21
37:1,7,16,21
38:2,15 39:1,7
39:12,17,21
40:18 41:1 42:1
42:4,7,9,13,16
42:19 43:10,25
44:5,7,17,24
45:20,22 46:3,10
46:13 47:3,5,5
47:10 48:11,18
48:25 49:4,8,15
49:21 50:9 51:3
51:12,14,15 52:7
52:20 53:2,16
54:1,11 55:1,11
55:24 56:6,7
57:7,11 58:9

**old**   19:23,24
   26:2 40:14
**once**   10:23 17:21
   18:12 19:18
   32:22 36:11
   48:7 58:11,12
   61:13
**ones**   49:23
**open**   25:1
**opened**   52:5
**opening**   41:20
**operate**   22:2,14
**operating**   28:23
**opportunity**   6:7
**opposed**   30:10
**option**   6:1
**order**   51:22
   55:14
**ordering**   61:16
**original**   3:22
   14:23 59:20
   61:16,18
**originally**   3:21
**outcome**   40:3
   54:10 59:15
**outside**   58:7

**p**

**p**   2:1,1 4:1
**p.m.**   1:16 4:2
   58:25
**page**   3:3,10
   13:10 14:8
   16:24 17:7
   28:20 52:1
   54:14 62:10,13
   62:16,19,22 63:1
   63:4,7,10,13,16

**pages**   33:15,15
   36:1,21 59:6
   62:8
**paragraph**   54:17
   54:20
**parked**   31:16
**part**   12:13 21:13
   32:19 46:15
   47:20 55:6
**participated**
   28:24 29:18
**particular**   8:5
   8:25 20:1 29:10
   30:6
**parties**   11:22
   59:12,14 60:21
   61:16
**party**   60:6,15,16
   60:17,18
**passed**   14:8
**patrol**   7:4 27:1,2
   28:3,8 53:2
**pdf**   61:10,11
**pedestrian**   25:18
   27:21 28:6,7
**penalty**   40:6
**pending**   5:22
**people**   44:10
   48:4 50:12
   53:20
**person**   23:9,25
   24:1 60:13
**personally**   59:7
**phone**   18:4
   23:25 57:24
**phonetic**   2:22
**photocopying**
   59:17,19

Francisco Cedeno
Early, Dianti v. Mays, John (Officer)
November 8, 2022

[photos - records]

Page 11

photos 25:24,25
57:20
phrased 28:19
picking 56:5
picture 21:4
pittman 18:21
19:4 20:14
place 25:11
plaintiff 1:5 2:3
plaintiff's 3:9
4:6 12:21 17:7
33:14 40:22
41:2,3,8,18
48:14,19 49:10
50:19 51:16,23
plate 30:22 34:1
34:2,4,13 35:14
plates 35:12
play 45:5
please 61:10,13
61:19 62:8,9
point 6:10 17:17
48:1 49:1 57:19
police 1:8 7:16
29:11 32:18
42:21 47:20,25
policies 23:13
policy 11:20,23
12:4 16:17
17:18 21:1,5,11
22:6 23:14 39:8
40:9 42:22 45:2
45:13 46:16,23
47:13
possible 11:22
possibly 37:23
37:24

practice 11:14
19:8 24:6
prepared 35:25
pretty 22:14
29:14 39:3
50:16
principal 60:14
print 59:7 61:12
prior 29:1 40:20
privileged 40:11
probably 14:7
19:4 20:13
23:16 28:9
29:19 34:3,4
35:13 42:5
44:23 57:13
procedure 62:6
proceed 36:11
proceeding 60:7
60:11
proceedings
59:9 60:6
produced 3:23
production
61:20
program 56:2
prohibited 60:8
promoted 7:8
10:1
properly 51:5
protects 47:15
47:17,17
protocol 28:11
provide 19:8,25
60:6,12
provided 12:5
12:11 22:1

public 9:17
63:24
puerto 7:20,21
punishment
40:16
purposes 4:8
12:23 35:6
40:24 48:16
50:21 51:18
pursuant 1:13
60:3 62:5
pursue 31:23
put 9:11 12:25
15:14 29:22,23
29:24
putting 46:21

q

qualified 25:21
question 5:22,23
27:9 37:2 44:6
questionnaire
37:3,19,24
questions 5:10
11:7 21:3 36:13
56:14,17

r

r 2:1 4:1 59:1
60:1
radio 29:13 30:3
34:9,19
ran 31:22 34:2,4
34:15,19
rates 60:20
rattle 34:1
reach 41:19
read 6:2,22 44:3
61:10 62:2

reader 35:14
readers 35:13
reading 1:14
6:17 17:11
53:21
ready 35:22 56:9
really 5:9 19:25
47:18
reason 32:10
41:22 62:12,15
62:18,21,24 63:3
63:6,9,12,15,18
reasons 62:7
recall 23:7,21
38:3 39:20 44:8
44:13 54:3
57:20
receive 8:25 9:20
21:23 57:23
recognition 59:7
recognize 13:4
recommended
46:7
reconstruct
25:19
reconstruction
25:20
record 5:17 9:16
17:5 20:5,8 24:2
51:3
record's 20:17
recorded 35:23
37:10,19,20
38:16
recording 24:23
24:25
records 25:1

Francisco Cedeno
Early, Dianti v. Mays, John (Officer)
November 8, 2022

[reduced - sheet]                                                                                   Page 12

**reduced**  59:7
**reference**  30:16
  30:23 56:2
**references**  17:10
**referring**  10:16
  46:17
**regarding**  56:22
**regular**  28:3
**regulations**  60:4
  60:10
**related**  11:24
  56:21
**relates**  21:11
**relationship**
  60:14
**relative**  59:11,13
**relay**  43:8
**remember**  9:5,6
  9:10 10:3,15
  18:22 42:1
  46:25 52:17
  57:11
**report**  3:12,14
  3:15,17 12:14,22
  13:6,6,18,20,24
  14:6,6,16 15:13
  15:22 17:7 19:7
  23:23 28:17,20
  30:25 32:11,14
  32:15 36:1
  38:11 39:4
  40:23 41:4
  48:15 49:11
  51:17 53:8
  54:11,18 55:16
  55:19
**reported**  39:9
  59:6,10

**reporter**  1:16
  4:3,10 5:4,11
  6:10 9:16 59:5
  59:20
**reporting**  60:4,7
  60:12
**reports**  53:6
  54:22 55:8,14,24
  55:25
**represent**  4:24
**reprimand**  3:18
  50:20 51:4
**request**  25:1,4
**required**  22:6
**requirements**
  4:4
**reserved**  1:14
  61:10
**respond**  5:23
  27:21
**responding**
  25:17
**responsibility**
  19:14
**responsible**
  19:14 25:2
**restaurant**  7:17
**result**  20:1,18
  28:7 39:10 47:6
**results**  20:14
**returned**  61:15
  61:17
**review**  6:2 13:19
  44:12 61:10
**reviewed**  57:12
**reviewing**  11:8
**reviews**  19:18

**rico**  7:20,21
**right**  4:19 6:4,17
  6:25 7:15,18 9:5
  9:22 10:15
  12:13 13:25
  14:10 16:2,22
  17:4,5,12 18:19
  25:9 26:11,18
  35:22 36:18
  37:12 38:3,4,19
  41:1,11 45:18,24
  54:20 55:7
  61:10
**rise**  27:17
**roman**  17:11
**roswell**  61:22
**rule**  62:5
**rules**  60:3,9 62:5

**s**

**s**  2:1 4:1 60:1,1
**saw**  23:8 31:11
  31:19,21 44:15
  44:21
**saying**  37:22
  40:1 57:25
**says**  36:25 37:4
**scene**  25:10,12
  25:17 28:9
  44:21 46:8
  57:21
**scenes**  25:22
  46:5
**scj**  1:6
**seal**  59:20 61:15
**second**  9:6 14:7
  35:22

**section**  4:4 60:8
**security**  32:20
  32:21
**see**  14:8 20:2
  23:6 28:18
  31:21 32:8,10,11
  32:24 33:18
  34:6,14,15,16
  35:25 36:4 37:4
  40:8 43:25 44:6
  44:10,11 56:12
**seeing**  57:20
**seen**  13:19
**seminars**  9:9
**send**  29:7 61:16
  61:19
**sense**  28:5
**sent**  55:10
**sentences**  52:10
  52:11
**separate**  12:15
  13:24 14:13
  15:11
**separately**  13:17
**sergeant**  7:8,22
  10:1 17:9 25:4,6
  25:7 43:7 49:20
  52:23,25 53:2,4
  53:5 55:13
**serious**  26:19
  29:8
**seriously**  27:6,9
**services**  60:7,13
**set**  23:4 58:2
**seventy**  45:17
**sex**  8:14
**sheet**  42:11

Francisco Cedeno                          November 8, 2022
Early, Dianti v. Mays, John (Officer)

**[shift - talk]**                                                    Page 13

shift  30:4
short  18:8 20:6
shortly  46:5
show  12:19
  54:13,15
showing  19:9
sic  2:21
side  16:11 54:4
sign  6:3,22 61:10
signature  36:18
  36:20 59:20,24
  60:24 61:6,18
signatures  50:24
  51:2
signed  61:13,15
  61:17
significance
  47:10,12
signing  1:14
  6:18
silly  27:8
similar  41:21
simple  5:9 22:14
single  5:11
sir  41:24
sit  30:3,4 39:25
sitting  32:16
  58:7
situation  48:12
six  7:7,7
skip  48:18
small  6:5,6
software  26:4
somebody  46:20
sop  17:10
sorry  24:14,19
  36:1,10

sort  11:13,14
  28:6
sound  27:8
  45:18
southeast  61:24
speak  16:7,11
  20:24 23:4,24
  36:12 57:25
  58:9
speaking  23:4
  38:13
specific  10:15
  11:23 21:2 30:9
  30:16
speech  2:23 59:6
spelling  2:22
spend  44:25
spoke  23:2,11,23
  32:4,7 37:24
  54:4,9 58:16,18
sprees  28:25
  29:5,18
start  6:25
started  10:1 24:7
  24:8,23 32:6
  46:4
state  27:1,2 59:2
  59:5
statement  32:9
  32:12,13 33:10
  33:13,15 35:25
  36:6,7,9,16,17
  37:16,18 38:1,7
  43:4,5 57:1 62:7
statements  36:10
states  1:1
stay  50:17

stemmed  55:21
stipulations  1:13
stolen  28:23
  29:17 34:17,23
stomach's  56:8
stop  5:21
story  16:12 32:7
street  2:5
struck  25:18
stuck  27:11,12
  27:14
stuff  9:9 25:22
  31:4 46:6,8
  50:18 55:15
style  26:2
subject  41:5
subordination
  52:21
subscribed
  63:21
substance  62:6
substantive  6:5
subtract  45:22
sufficient  20:21
suite  2:5,11 61:3
  61:21
summaries  16:5
  16:14
summarize
  52:10
summarizes
  38:24
summary  18:3
supervision  59:8
supervisor  18:14
  18:20 19:19
  39:24 43:2,6,12
  47:8 48:25

52:22
supposed  19:19
  28:12,13 58:4
sure  6:4 10:21
  11:13 18:7 19:1
  20:4 21:24
  28:15 34:8
  37:19 38:4 44:9
  48:21 50:23
  52:14,16,16,16
  52:18 54:5,13
sustain  46:15,23
sustained  45:1
  46:19 47:5
sworn  4:13
  63:21
system  43:1 53:8
  53:9 55:19

**t**

t  59:1,1
tag  30:11,14,15
  30:16 31:21,23
  34:15,22 35:7
take  5:11,22,24
  18:4 20:4 25:24
  25:25 26:1
  36:16,17 38:7
  39:24 40:8 49:9
  57:14
taken  1:12 5:6
  18:8 20:6
talk  11:1,2,3,10
  11:22 21:4
  25:21 30:5
  39:17 48:18
  58:12

Francisco Cedeno
Early, Dianti v. Mays, John (Officer)

November 8, 2022

**[talked - vehicle]**

Page 14

| | | | |
|---|---|---|---|
| **talked** 11:3 | **thought** 2:22 | 22:2 39:13,15 | 57:2,6 |
| 23:10 28:16 | **three** 7:9 8:1 | 44:11 | **undersigned** |
| 39:22 | 15:15 50:12 | **transcript** 2:20 | 59:19 62:2 |
| **talking** 11:4,7 | 52:10 | 6:11 59:9,18 | **understand** 5:18 |
| 17:6 20:16 23:7 | **time** 5:21 7:22 | 61:11,16,18 62:2 | 27:17 32:24 |
| 36:24 45:14 | 11:11 14:3 | **transition** 19:23 | 38:4 |
| 50:5 | 15:18 18:24 | 40:13 | **understanding** |
| **tanya** 2:4 4:24 | 19:23 20:24 | **tried** 53:13 | 13:1 27:18 |
| **tap** 45:12 | 21:1,5 23:4 | **true** 59:8 | **unfortunately** |
| **tell** 9:3 31:14 | 32:19 35:11 | **try** 57:15 | 11:1 |
| 33:7 42:4,11 | 36:5,14 39:3 | **trying** 4:19 5:16 | **unfounded** |
| 45:4 47:13 49:9 | 40:6,10 43:21 | 10:24 23:4 | 20:21 |
| 50:10 57:18 | 44:25 45:5 48:7 | 31:23 43:25 | **union** 1:8 7:2,3 |
| **ten** 7:5 | 52:23 53:12 | 47:24 57:4 | 7:13 14:9 27:20 |
| **tend** 48:4 | 55:18 57:11 | **tuesday** 1:16 | 31:5,17 35:18 |
| **terms** 54:8 | 58:9,12,15 61:17 | **turn** 17:6 19:18 | 45:15 |
| **testified** 4:14 | **timeline** 56:20 | 21:8 45:12 | **unit** 7:6 8:5,7,15 |
| **testimony** 6:2 | 56:23 | **turned** 48:9 | 8:21,23 14:20 |
| 62:2,7 | **today** 6:8,9 | **turning** 47:2 | 26:21 27:20,20 |
| **thank** 6:16 35:17 | **told** 29:6 32:5 | **twice** 22:12 | 46:14 |
| 44:7 58:21,22 | 34:23 44:15 | **two** 4:20 19:2 | **united** 1:1 |
| **thereto** 59:21 | 53:11 58:8 | 45:4 49:7 | **unknown** 2:22 |
| **thing** 11:6 50:7 | **top** 14:10 | **types** 25:16 | **unpack** 29:3 |
| **things** 11:18 | **topics** 9:20 | **typical** 11:13 | **usage** 47:19 |
| 25:16 40:15 | **traffic** 7:6 14:20 | **typically** 12:5 | **use** 12:1 20:18 |
| 43:22 46:11 | 25:14,16 26:8,8 | 19:20 45:23 | 20:22 24:10,20 |
| 47:23 | 26:11,21 27:18 | **typo** 37:5,6 | 24:21 26:3 51:5 |
| **think** 6:12 14:8 | 27:19,20 28:9,10 | 54:12 55:6 | 62:8 |
| 16:13 21:21 | 35:11,15 | | **usual** 60:20 |
| 23:8 24:11 | **trailing** 2:22 | **u** | **usually** 6:5 |
| 28:18 31:16 | **train** 21:16,18 | | 43:20 |
| 32:20,21 44:24 | 21:20 22:2,3 | **u** 60:1 | |
| 45:8 47:19 | **trained** 21:10 | **uh** 2:23,24,24 | **v** |
| 53:11,14 54:2,3 | 27:24 45:11 | 5:2,13,14,14 | |
| 54:5,6,9,12 56:6 | 56:4 | 8:10 13:12 15:7 | **various** 9:20 |
| 56:13 58:10 | **trainer** 21:24,25 | 15:24 17:1,3 | **vehicle** 25:18 |
| **third** 14:8 | **training** 9:1,13 | 22:15,21 31:7 | 26:20 27:11,12 |
| | 9:17,20 21:13 | 32:3 33:21 46:2 | 27:14,21 28:6 |
| | | 48:24,24 50:8,8 | 29:2,4 31:18,19 |

Francisco Cedeno
November 8, 2022
Early, Dianti v. Mays, John (Officer)

[vehicle - years]                                                    Page 15

| | | |
|---|---|---|
| 31:21,23 | wanted 11:3 | **x** |
| vehicular 26:20 | 20:2,10 24:24 | |
| verbal 53:14 | 35:6 54:13 | x 3:2 |
| verified 34:22 | way 21:21 24:15 | **y** |
| verify 32:7 | 28:19 34:11 | y'all's 44:1 |
| veritext 61:13,20 | we've 50:14 51:8 | yeah 6:24 10:9 |
| veritext.com | wear 45:23 | 10:13 11:20 |
| 61:24 | 47:11 | 14:1 15:1,3 16:5 |
| versus 36:6 | week 49:6 50:12 | 17:25,25 18:6 |
| video 11:8,21 | welcome 6:11 | 19:6,11,13,22 |
| 21:1 24:4,25 | 58:23 | 25:25 26:5,17 |
| 44:15 57:12 | went 9:4,13 16:8 | 27:14,22 30:8 |
| videos 25:2 | 34:4 51:21 | 31:3 32:9 33:6 |
| 44:13 | wise 29:15 | 33:17 34:12,14 |
| violated 39:8 | withdrawn | 34:16 35:2 36:4 |
| 54:6 | 59:16 | 36:20 37:1,3 |
| violating 45:13 | witness 3:3 4:9 | 44:3 45:19,21 |
| violation 17:10 | 6:23 18:6,9 | 46:4 47:13 49:2 |
| 17:18 20:25 | 36:19 57:9 | 49:2 50:15 |
| 23:14 41:23 | 58:21,23 | 52:15 53:7,21 |
| 42:22 45:2 | witnessed 33:8 | 54:21,23 55:6,12 |
| 46:16,23 47:5 | witnesses 6:1 | year 7:10 10:6 |
| violations 11:20 | 11:15,21 25:22 | 10:13,14 18:25 |
| 11:24 12:4 | word 5:11 20:11 | 40:20 45:15 |
| 16:17 | 37:13 40:7 | 49:2 |
| violent 48:3 | words 6:4 43:17 | years 7:3,6,7,8,9 |
| visual 31:24 | work 32:19 | 8:1 9:25,25 10:1 |
| vs 1:6 | working 29:13 | 10:9,13 26:9 |
| **w** | 56:3 | 28:11 |
| waiting 58:7 | writing 19:9 | |
| waive 6:17,17 | 36:22 | |
| walk 10:18 | written 12:5,9 | |
| 53:17 | 16:18 32:13 | |
| walked 56:20,23 | 43:4,4 | |
| want 6:3 47:25 | wrong 40:6 55:9 | |
| 52:11,17 | | |

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.