Page 1

1          IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF GEORGIA
2                     ATLANTA DIVISION

3

4    DIANTI EARLY,                    )
                                      )
5         Plaintiff,                  )
                                      )   CIVIL ACTION FILE
6    vs.                              )
                                      )   NO. 1:22-cv-00816-SCJ
7    OFFICER JOHN MAYS,               )
     Individually, as an officer )
8    of the UNION CITY POLICE         )
     DEPARTMENT,                      )
9                                     )
          Defendant.                  )
10

11

12        The deposition of BARRY WALKER, taken pursuant
13   to the stipulations contained herein; the reading and
14   signing of the deposition waived, before Charlene M.
15   Hansard, B-2341, Certified Court Reporter, commencing
16   at 10:04 a.m., on Tuesday, November 8, 2022, at 100
17   Habersham Drive, Fayetteville, Georgia.

18

19

20

21

22

23

24

25

Barry Walker                                November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 2

1                    A P P E A R A N C E S
2
3    ON BEHALF OF THE PLAINTIFF:
4         Tanya F. Miller, Esq.
          DuBose Miller, LLC
5         75 14th Street, N.E.
          Suite 2110
6         Atlanta, Georgia 30309
          (404) 720-8111
7         miller@dubosemiller.com
8
9    ON BEHALF OF THE DEFENDANT:
10        Matthew Bennett, Esq.
          Bennett Law Offices, LLC
11        1012 Memorial Drive
          Suite 13
12        Griffin, Georgia 30223
          (678) 688-3554
13        mhb@bennettlawofficellc.com
14
15
16
17
18
19
20
     Legend of the Transcript:
21
     (sic)          Exactly as said
22   (phonetic)     Exact spelling unknown
     . . .          Trailing off or did not complete thought
23    --            Break in speech continuity
     uh-huh         Affirmative
24   uh-uh          Negative
25

Barry Walker                                     November 8, 2022
Early, Dianti v. Mays, John (Officer)

                                                      Page 3

1

2                            I N D E X

3

     WITNESS                                          PAGE

4

     BARRY WALKER

5

          Examination By Ms. Miller ....................6

6

7

8

9

10

11

                      PLAINTIFF'S EXHIBITS

12

     EXHIBIT

13   NUMBER          DESCRIPTION                      PAGE

14   Exhibit 1     Notice of Deposition ................4

15   Exhibit 2     Georgia Motor Vehicle Crash Report ...13

16

17          (Originally marked exhibits attached to the

18       original of the deposition and a copy attached

19       to all copies produced.)

20

21

22

23

24

25

Page 4

1              P R O C E E D I N G S

2                                      (10:04 a.m.)

3         (Whereupon, the court reporter complied

4      with the requirements of O.C.G.A. Section

5      9-11-28(d).)

6         (Plaintiff's Exhibit No. 1, Notice of

7      Deposition, was marked for identification

8      purposes.)

9         MS. MILLER:  Good morning, Captain Walker.

10     My name is Tanya Miller, and I'm an attorney.  I

11     represent the plaintiff, Dianti Early, in this

12     case.  Did you receive notice of your deposition

13     today?

14        MR. WALKER:  Yes.

15        MS. MILLER:  Okay.  And you're here

16     pursuant to that notice?

17        MR. WALKER:  Yes.

18        MS. MILLER:  Have you had your deposition

19     taken before?

20        MR. WALKER:  Yes.

21        MS. MILLER:  Okay.  So you know kind of the

22     basic ground rules.  I'll just repeat them just

23     to refresh you.  The court reporter is obviously

24     taking down everything we say.  So it helps her

25     tremendously if we answer yes, no as opposed to

Page 5

1       uh-huh, uh-uh, so make sure your responses are

2       audible.  No nodding even though that's what we

3       naturally do in conversation.  Obviously she

4       can't get that down.

5            If I ask a question you don't understand or

6       it's not clear, of course, you know you can just

7       tell me to rephrase it or ask it again.  I'm not

8       trying to confuse you with my questions, and

9       you're entitled to a question that is clear and

10      makes sense.  So let me know if I ask you

11      anything that doesn't.

12           You have the opportunity at the end of this

13      deposition to review the transcript and make

14      sure that there are no typos or words that are

15      not correct.  If you want the opportunity to

16      review and sign, you can just let us know that,

17      and we'll give you the opportunity to review and

18      sign.

19           MR. WALKER:  Okay.

20           MS. MILLER:  Okay?  All right.  Cool.  So

21      you are a captain with the Union City Police

22      Department?

23           MR. WALKER:  Yes.

24           MS. MILLER:  How long have you been with

25      Union City?

                                                        Page 6

1              MR. WALKER:  Ten years.

2              MS. MILLER:  Okay.

3              THE COURT REPORTER:  We haven't sworn him

4       in.

5              MS. MILLER:  Oh, I'm so sorry.  See there,

6       moving too fast.  I knew I was going to forget

7       something.

8              (The oath was administered to the witness

9       by the court reporter.)

10   Whereupon,

11                    BARRY WALKER,

12       Having been first duly sworn, was examined and

13       testified as follows:

14                       EXAMINATION

15   BY MS. MILLER:

16       Q.   See, I trust you so much I didn't even need

17   you to be under oath.  So you said ten years with Union

18   City?

19       A.   Yes.

20       Q.   And was that the only department you've ever

21   worked at?

22       A.   I worked for Atlanta Metropolitan College for

23   two years.

24       Q.   Okay.  What years were you there?

25       A.   Twelve years ago.

Page 7

1      Q.    Twelve years ago.  I can't do math.  That's

2  what?

3      A.    2010.

4      Q.    2010.  Did you know Captain Long?

5      A.    I did.

6      Q.    I mean Chief Long?

7      A.    Chief Long, that was my chief.

8      Q.    That was your chief.  Yeah, he used to be my

9  investigator in Fulton.

10      A.    Okay.

11      Q.    We worked together for many years.  That's my

12  good friend.  Okay.  And so when you came to Union

13  City, kind of describe your trajectory to captain.

14      A.    I started off as an officer.  I went to the

15  traffic unit for a minute.  Then I made a -- We have

16  what's called a master patrol officer -- master patrol

17  officer.  Then I made a sergeant, went back to the

18  street, was on the street as a sergeant for -- I don't

19  know -- maybe a year.

20            Then I went back over to the traffic unit

21  as a sergeant, got promoted to a detective sergeant,

22  got promoted as lieutenant, all in the traffic unit.

23  Then I became a certification manager.  And after I

24  became the certification manager, I got promoted to

25  captain and went back over to patrol.

Page 8

1      Q.   Okay.  So would you say that the lion's share

2   of your experience has been in the traffic unit?

3      A.   I'd say patrol.

4      Q.   Patrol.  Okay.

5      A.   When you're on the traffic team, you still

6   work patrol.

7      Q.   Okay.  All right.  So what do you do

8   differently on the traffic unit than just general

9   patrol?

10      A.   So on the traffic unit, your primary function

11   is actually to investigate accidents and write tickets.

12   However, you still support patrol and answer calls.

13      Q.   I see.  And you -- I guess, on March 1, 2020,

14   what was your position?

15      A.   I think I was a lieutenant over the traffic

16   unit at that time.

17      Q.   Okay.  And so you got a call to an apartment

18   complex in Union City on that day --

19      A.   Yes.

20      Q.   -- to assist?  Tell me about the call.

21      A.   I got a call about -- said an officer hit

22   somebody.  There were actually two accidents happened

23   at the same time.  One officer had a wreck responding

24   to the -- to that accident.  So when I got there, I

25   actually ended up on the first accident where an

Barry Walker                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 9

1    officer turned in front of another vehicle.

2         Q.    I see.

3         A.    So after I made sure he was good, I went to

4    the apartment complex, and that's where the officer

5    struck the person.

6         Q.    Okay.  And that apartment complex --

7         A.    6770 Buffington Road.

8         Q.    Correct.

9         A.    Yes.

10        Q.    Yes.  Do you know the name of that complex?

11        A.    It changed.

12        Q.    Okay.

13        A.    It was Shannon Lakes then.  I don't know what

14   they call it today.

15        Q.    Okay.  And you're pretty familiar with that

16   complex?

17        A.    I am.

18        Q.    Okay.  Have you responded to a lot of calls

19   over there?

20        A.    Yeah.  When I was on patrol, it was my -- it

21   was my area.

22        Q.    Got it.  Okay.  So describe, if you would,

23   sort of the scene when you arrived at the apartment

24   complex.

25        A.    There was a car in the bushes.  There was a

Barry Walker                              November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 10

1   person laying on the ground, and there were numerous

2   police cars that were parked.  Where it was there's a

3   dead end, and that's where it was.  So all the cars

4   were kind of blocking the area.

5       Q.   And about how many patrol cars were there?

6       A.   I don't remember.

7       Q.   Okay.  Did you have your body camera on?

8       A.   I didn't.  I actually think I was in my

9   personal car.

10      Q.   Okay.  Were you off that day or --

11      A.   I was on call.

12      Q.   I see.

13      A.   So I just responded in the car that I was in.

14      Q.   Okay.  And on call means what?  Even if

15  you're not on shift, if something happens, you got to

16  come in?

17      A.   Yeah.

18      Q.   Okay.  All right.  And so now, have you seen

19  any body camera footage from the incident?

20      A.   No.

21      Q.   Okay.  Do you recall whether or not you had a

22  camera with you when you arrived?

23      A.   I don't remember.

24      Q.   You don't remember.  Okay.  I'm going to see

25  if I can pull up a -- the body camera footage and show

Barry Walker                                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 11

1    you what I think might be you, but I'm not sure if it's

2    you.  Okay?  I'll do that in a second.  In any event,

3    you were responding in your capacity as a patrol

4    officer, as a traffic officer, or what?

5         A.   As a traffic officer.

6         Q.   Okay.  And would it be customary for you as a

7    traffic officer to have some ability to take

8    photographs?

9         A.   It would.

10        Q.   Okay.

11        A.   Typically, I would carry a kit.  But for some

12   reason, I feel like I remember being in my personal

13   car, so I may not have had it.  I don't know.

14        Q.   Okay.

15        A.   And I actually had another person who was

16   normally on call.  But I believe he was out of town,

17   and that's why I had to go.

18        Q.   Okay.  So if you don't have a kit with you

19   and you respond, how do you document the scene?

20        A.   I may utilize my phone.  Sometimes the

21   supervisor has a camera.  And I may have had a camera

22   that day.  I just don't remember.

23        Q.   Okay.  Did you -- Do you know whether or not

24   you documented the scene at all?

25        A.   I don't remember.  I just remember doing the

Page 12

1    report.

2        Q.    Okay.  And so you said there was a car in the

3    bushes and a bunch of police cars and there was someone

4    lying on the ground.

5        A.    He actually might have already been in the

6    ambulance when I got there.

7        Q.    I'm sorry?

8        A.    He actually might have already been in the

9    ambulance when I got there.

10       Q.    Okay.

11       A.    I don't -- I don't remember.

12       Q.    Okay.  You don't remember -- You don't

13   remember whether he was on the ground or in the

14   ambulance?

15       A.    I don't remember.

16       Q.    Okay.  Tell me what you did when you got to

17   the scene.

18       A.    Spoke to the officer, spoke to other officers

19   trying to find out what happened.  I don't remember if

20   I spoke to him or not.  I just looked at the evidence

21   on the scene and did a report.

22       Q.    And what did you determine -- By the way,

23   let's just hand you this.  This may help you if you --

24   Do you have your report with you?

25       A.    I don't.

Barry Walker                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 13

1        Q.    Okay.  I think this is your report.  You'll

2   tell me if it's not.

3              (Plaintiff's Exhibit No. 2, Georgia Motor

4        Vehicle Crash Report, was marked for

5        identification purposes.)

6   BY MS. MILLER:

7        Q.    I'm handing you what's been marked for

8   identification purposes as Exhibit Number 2 -- which is

9   actually Plaintiff's Exhibit Number 2 to this

10  deposition.  You can take a moment to look at that.

11  Let me know if that's your report.

12       A.    That is Officer Mays' report.

13       Q.    Oh, it is?  Let me see.  I thought your name

14  was on the bottom of that somewhere.

15       A.    I checked it.  Yeah, this is Officer Mays'

16  report.  I just checked it.

17       Q.    Okay.  So you did separately a report?

18       A.    I probably did a supplemental maybe.  I'm not

19  sure.  I don't remember.

20       Q.    Okay.  Did you talk to anybody in preparation

21  for your deposition today?

22       A.    I did not.

23       Q.    Okay.  So how did you -- how were you

24  informed you had a deposition today?

25       A.    I received an e-mail.

Page 14

1          Q.    Okay.  From who?

2          A.    From the assistant chief.

3          Q.    And when you received that e-mail, what did

4     you do?

5          A.    I responded to the deposition --

6          Q.    Oh, okay.

7          A.    -- today.

8          Q.    Just showed up today?

9          A.    I did.

10         Q.    You didn't review anything --

11         A.    I did not.

12         Q.    -- to see if you had done a report or --

13         A.    I did not.

14         Q.    Why not?

15         A.    I did not.

16         Q.    Why not?

17         A.    I don't have a good reason for you.

18         Q.    Okay.  Just not --

19         A.    The information -- There were different dates

20    thrown out, and there were different times thrown out.

21    And then there was like there's no time, and then all

22    of a sudden there was a time.  I don't feel like it was

23    prepared properly from the very beginning.  It wasn't

24    explained exactly -- I didn't find out until this

25    morning exactly what the deposition was in reference to

Barry Walker                                      November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 15

1    as far as that he was being sued individually and it

2    wasn't the city.  So all that information wasn't given

3    to me.

4        Q.   Oh, okay.  Who would ordinarily give you that

5    information?

6        A.   I would assume, in this particular situation,

7    it would have been the assistant chief.

8        Q.   Okay.  So you were not aware that Officer

9    Mays was being sued?

10       A.   I was made aware today.

11       Q.   Okay.  But before today --

12       A.   Well, actually, yesterday.

13       Q.   -- you didn't -- You didn't know before then?

14       A.   I didn't have all the information, no.

15       Q.   Okay.  And so what was your, I guess, role on

16   the scene?

17       A.   So because any time a person gets hurt or

18   injured from a traffic accident, someone from the

19   traffic unit has to respond.  So I responded and I

20   would basically look over everything and make sure

21   everything occurred the way it was supposed to be.  He

22   may have done the accident report himself.  I don't

23   know why he did the accident report himself.  There

24   should have been an accident report that somebody from

25   the traffic unit actually did.

Barry Walker                                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 16

1          Q.    Okay.  And so you just -- I guess my thing --
2    my understanding is a little bit different of what
3    traffic officers do.  But it's my understanding that
4    you actually conduct an investigation, you look at the
5    scene, you look for tire marks, you try to determine
6    how the accident occurred.  If someone's injured, then,
7    you know, it may be a little bit more of an in-depth
8    investigation than if it's a fender bender.  And if
9    someone is gravely injured or dies, the investigation
10   can be even more intense.  Is that fair to say?
11         A.    Yes, I agree.
12         Q.    Okay.  Did you take any measurements at the
13   scene?
14         A.    I did not.
15         Q.    Okay.  And you don't recall if you took any
16   photographs?
17         A.    I don't remember.
18         Q.    Okay.  Were there any tire marks or anything
19   that would indicate an effort to stop?
20         A.    I don't remember seeing any tire marks.
21         Q.    Okay.  So there's no -- you didn't document
22   the scene -- the physical scene in any way.  Is that
23   fair to say?
24         A.    Unless there are photos, then that would be
25   fair to say.

Barry Walker                            November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 17

1      Q.    Okay.  So how did you determine what

2   happened?

3      A.    So the vehicle was in the bushes.  What I was

4   told was that he was following the car --

5      Q.    He meaning just for the record?

6      A.    Mays.

7      Q.    Okay.

8      A.    Officer Mays was following a stolen car.  He

9   was going toward the back of the complex.  And as the

10  vehicle was moving, the door opened, and a person got

11  out of the vehicle.  And as he got out of the vehicle,

12  he didn't have time to stop, and he struck the person

13  that got out of the vehicle.  The vehicle then

14  continued over into the bushes.

15     Q.    Okay.

16     A.    So the evidence on the scene with the vehicle

17  in the bushes supports that the vehicle was not stopped

18  and put in park.  Where his vehicle was, because I

19  believe that he was already in the ambulance when I got

20  there, he wasn't -- I couldn't tell where he was

21  exactly when he got struck.  So that's all the

22  information that I had.

23     Q.    Did you make any effort to speak to him or

24  was he --

25     A.    I don't remember --

Barry Walker                                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 18

1        Q.    -- unable to talk?

2        A.    I don't remember if I spoke to him or not.

3        Q.    Okay.  Did you see anything on the ground

4   that would indicate where the point of contact was

5   between the body and the car?

6        A.    I don't remember.

7        Q.    Okay.  And I want to be very specific in what

8   Officer Mays told you happened.  So would you recount,

9   please, for us what Officer Mays told you happened that

10  day?

11       A.    So I can't tell you exactly what he said

12  because I don't remember.  But if he had his body

13  camera on, it should have been captured on his body

14  camera.

15       Q.    Yeah, his body camera wasn't on.

16       A.    Of course.

17       Q.    So you don't remember exactly what he told

18  you about how the --

19       A.    I couldn't -- I couldn't quote him, no.

20       Q.    Okay.  All right.  Do you think that your

21  investigation of this incident was -- Is this your

22  normal method of investigating an incident like this if

23  someone gets hit by a car?

24       A.    It's not.

25       Q.    Okay.  Can you tell me why this is different?

Page 19

1      A.    Probably because I wasn't prepared to

2    respond.  Like I said, normally there was another

3    person who would respond.  I believe he was out of

4    town, and that's why I had to respond.

5      Q.    When you say another person, who -- someone

6    else on the traffic unit?

7      A.    Correct.

8      Q.    Okay.  Who was that person?

9      A.    Ken Mohney.

10     Q.    All right.  And so were you his supervisor?

11     A.    Yes.

12     Q.    So in theory you are a more experienced

13   officer or at least a higher ranking officer?

14     A.    In theory.

15     Q.    So I guess I'm just trying to understand.

16   Like, I've seen a lot of accidents in my time, one

17   where someone was actually ran over.  And did you -- do

18   you remember seeing the person who was run over?

19     A.    I do.

20     Q.    Okay.  Did he appear to you to be in pain?

21     A.    He did.

22     Q.    Okay.  Did you see his foot or his leg?

23     A.    I remember that he definitely had a leg

24   injury.

25     Q.    Okay.  Well, describe how it appeared to you.

Page 20

1      A.   I don't remember exactly.  I do remember

2    seeing that his leg was not the way a normal leg would

3    look.

4      Q.   Okay.

5      A.   Like maybe it was twisted in the wrong

6    direction.

7      Q.   Okay.  And how could you tell that he was in

8    pain?

9      A.   Because you could look at him and tell that

10   he was in pain.

11     Q.   Was he saying anything?

12     A.   I don't remember if he said anything.  I do

13   remember looking at him, and he was obviously hurting.

14     Q.   And I know you don't understand specifically

15   what Officer Mays -- or you don't remember specifically

16   what Officer Mays told you and -- right?

17     A.   Correct.

18     Q.   And you did not have your body camera on;

19   correct?

20     A.   Correct.

21     Q.   You weren't in a patrol car, so there was no

22   dash camera footage --

23     A.   I don't believe --

24     Q.   -- correct?

25     A.   I don't believe I was in a patrol car.  I

Barry Walker                                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 21

 1   don't think I was.

 2        Q.   But you're not sure?

 3        A.   No, I'm not sure, but I don't think I was.

 4   But even if I was, it still wouldn't have had dash

 5   camera footage.

 6        Q.   Okay.  So you -- the traffic unit does not

 7   have dash cameras?

 8        A.   Mine does.  However, it doesn't work.

 9        Q.   Okay.  It didn't work then or it just never

10   works?

11        A.   It worked in the beginning.  It hadn't worked

12   in quite some time.  Actually, none of them work on the

13   traffic cars.

14        Q.   Okay.  You're not sure if there are

15   photographs.  Yes?

16        A.   Correct.

17        Q.   There are no measurements.

18        A.   There are not.

19        Q.   Okay.  What's that little machine that y'all

20   use sometime?

21        A.   Called a Total Station.

22        Q.   Yeah, no Total Station that --

23        A.   So the only time we would utilize a Total

24   Station or do measurements or take photos would be if

25   it was a serious injury or a death.  A serious

Barry Walker                          November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 22

```
 1   injury -- We would consider a serious injury where it

 2   may become a death.  And the injuries that he had

 3   didn't line up with that.

 4        Q.   Okay.  But what were his injuries?

 5        A.   He had a injury to his leg.

 6        Q.   Okay.  And that's the only place he was

 7   injured?

 8        A.   That's all I saw.

 9        Q.   Okay.  So if someone gets ran over -- Just

10   want to make sure I understand the traffic unit's sort

11   of policy on investigations, if somebody gets ran over

12   by a vehicle and, let's say, their leg gets crushed,

13   you're telling me that you would not photograph or

14   otherwise document a scene unless that leg injury would

15   lead or could potentially lead to death?

16        A.   We would not utilize a Total Station, we

17   would not do measurements unless it was a serious

18   injury or a death.  Ran over is very vague.  Did his

19   whole body get ran over?  Did he -- Or did he get hit?

20   So --

21        Q.   Right.  That's part of the investigation;

22   right?

23        A.   I understand.

24        Q.   I can't -- I wasn't there.

25        A.   So unless it was a serious injury or a death
```

Page 23

1  then we would not take measurements or utilize a Total

2  Station.  There should have been photos taken.

3       Q.   Okay.  Do you -- How typically are you able

4  to, after the fact of an incident like this, tell how

5  fast the vehicles were going?

6       A.   There are multiple ways you can tell how fast

7  a vehicle is going.  The vehicle could have been

8  downloaded if the vehicle -- If the crash was

9  significant enough, we could download the vehicle.  Or

10  if there were tire marks, we could possibly get the

11  speed of the vehicle.

12       Q.   Okay.  But in this case, we didn't do any of

13  that.

14       A.   No.

15       Q.   So we don't have any sense of how fast the

16  vehicle was going --

17       A.   No.

18       Q.   -- when it struck the -- Mr. Early?

19       A.   No.

20       Q.   Okay.  Let me ask you a hypothetical.  Let's

21  say it was Officer Mays who had gotten struck by Mr.

22  Early.  Would you have investigated it the same way?

23       A.   We would have called a outside agency.

24       Q.   Okay.  How would you have expected them to

25  investigate it?  Similar to how you did or in a

Page 24

```
 1   different fashion?
 2        A.    I guess it would depend on what their policy
 3   is.
 4        Q.    Yeah.  No, but I'm asking you as captain, how
 5   would you expect them to have investigated an officer
 6   being run over and having his leg crushed by a
 7   civilian?
 8        A.    It would depend on the agency policy.  I
 9   don't know.
10        Q.    You don't have any -- take any position on
11   that one way or another?
12        A.    If the injury is not a serious injury --
13        Q.    The leg got crushed.
14        A.    Okay.  I hear what you're saying.
15        Q.    Uh-huh.
16        A.    Okay.  I see people whose head get chopped
17   off, so to me --
18        Q.    I have too.
19        A.    -- that's different.
20        Q.    Yeah.
21        A.    So in this particular situation, it would
22   depend on the agency's policy.
23        Q.    Okay.  And you don't have -- and I guess my
24   question is you don't have a position one way or
25   another as a captain in Union City about how that
```

Page 25

1   investigation should be conducted.

2        A.   I think it should be appropriate depending on

3   the injuries.

4        Q.   Okay.  And what does that mean?  I said the

5   injury was his leg crushed, so what would be

6   appropriate depending on the injuries if the victim had

7   been a police officer as opposed to a civilian in your

8   opinion?

9        A.   In my opinion they should take photographs

10  and they should document the scene.

11       Q.   How should they document the scene?

12       A.   It depends.

13       Q.   On?

14       A.   The seriousness of the injury.

15       Q.   I just said his leg got crushed.

16       A.   Okay.  So what does that mean?

17       Q.   I mean --

18       A.   When I saw --

19       Q.   -- someone ran over a person --

20       A.   When a leg gets crushed to me --

21       Q.   -- and their leg --

22       A.   -- is it flat?  Is it -- What is it exactly?

23       Q.   Broken.

24       A.   Okay.  So his leg got broken?

25       Q.   Ran over and broken.

Barry Walker                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 26

1        A.    Okay.

2        Q.    So let's say the officer's leg got run over

3    and broken, how would you expect -- as a captain,

4    supervisor, as a Union City Police Department traffic

5    unit, how would you expect an agency to investigate

6    that?

7        A.    I would expect them to take pictures and

8    document the scene.

9        Q.    Okay.  Like you -- similar to what you did?

10       A.    No.

11       Q.    How different?

12       A.    There probably should have been measurements.

13       Q.    Probably should have been?

14       A.    As far as -- As far as there being a Total

15    Station, not necessarily, but there may have been

16    measurements.

17       Q.    There may have been measurements or there

18    should have been measurements?

19       A.    There may have been measurements.  It would

20    depend on the situation.  I didn't see his injury as

21    being a serious injury.  You're telling me his leg is

22    crushed.  I didn't see it as his leg being crushed.

23    Was his leg broken?  Yes.  Was he run over?  I don't

24    know.  That's what you're telling me today.

25       Q.    Well, you don't agree that he was run over?

Page 27

1    You didn't know that -- You were at the scene and you

2    didn't know that he was run over by a car?

3          A.    I don't know he was run over.  I know he was

4    hit by the car.

5          Q.    So I'm looking at Plaintiff's 2, and this is

6    a report that -- I guess officer Mays prepared his own

7    report of the accident.  Yes?

8          A.    That's what it looks like, yes.

9          Q.    And you would have reviewed it.

10         A.    Uh-huh.

11         Q.    Yes?

12         A.    Yes.

13         Q.    Okay.  And in the narrative on page 5 of 6,

14   it says, in the last paragraph on that page, "Once

15   Early fell to the ground, he stumbled attempting to

16   stand before he fell on the ground and rolled in front

17   of Mays' patrol unit.  Mays felt a bump as if the front

18   tire had rolled over something."

19         A.    Okay.

20         Q.    What did that mean to you when you reviewed

21   it?

22         A.    So I reviewed it after the fact, after we had

23   already cleared the scene.  But based off of what

24   you're saying, it does sound like it rolled over

25   something, which we can assume or I guess we'd like to

Page 28

1    assume that's his leg.  But I don't know if that was

2    his leg or not.

3         Q.   Okay.  Now, what did your review of this

4    report entail?  Like, what does that -- what does that

5    entail normally?

6         A.   Checking for grammatical errors, making sure

7    he checked all the boxes.

8         Q.   So it would not have entailed a review of his

9    body camera?

10        A.   No.  Officers take reports all day every day.

11   If they reviewed every video, then we'd have to hire a

12   whole another department just to review videos.

13        Q.   Well, how many times a day does an officer

14   run over a citizen?

15        A.   It's not often.

16        Q.   Okay.  So let's just focus on that, because

17   that's what we're dealing with, a situation where a

18   civilian got run over by a police officer.

19        A.   Okay.

20        Q.   Is that the kind of situation that is so

21   voluminous that you wouldn't have time to review his

22   body camera before you signed off on his report?

23        A.   Well, you told me he didn't have on his body

24   camera.

25        Q.   Well, I'm not telling you answer from what I

Page 29

1    tell you.  I'm asking you as the person who was the

2    captain over this unit --

3        A.   I'm --

4        Q.   We can't talk at the same time -- as the

5    person who was the captain over this traffic unit, who

6    was the ranking officer on the scene, who signed off on

7    the report by the officer who caused -- who actually

8    struck the civilian with a vehicle, whether you thought

9    it would be prudent to review his body camera before

10   you signed off on his report?

11       A.   So, apparently, there's no body camera for me

12   to review.

13       Q.   Let's assume there was.

14       A.   Okay.  Well, there isn't.  I don't assume.

15       Q.   Would you have typically asked for a body

16   camera under a circumstance like this?

17       A.   I would if there was a body camera.

18       Q.   Okay.  Did you ask on that day?

19       A.   I don't remember.

20       Q.   Give me just one second.  I'm trying to find

21   the guy with the camera on this body camera and see if

22   it's you.  It may not be you.

23            This guy right here seems to have a camera.

24   So I'm going to show you what has been produced to me

25   by Officer Mays as part of the body camera footage in

Case 1:22-cv-00816-SCJ   Document 59   Filed 03/15/24   Page 30 of 61
Barry Walker                          November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 30

1    connection with this incident.  There's a man in this

2    footage with a camera, and I'm just trying to

3    identify him and I want you to tell me if it's you.

4    So just watch this.

5         A.   Can you make it bigger?

6         Q.   I don't know if I can.  I don't know if that

7    makes it bigger?  Oh, it does.  Okay.  I'm going up a

8    little bit.

9              (Video playing.)

10   BY MS. MILLER:

11        Q.   So when he walks towards the back of this,

12   there's a guy with a camera.

13        A.   That's me.

14        Q.   That is you?

15        A.   Yeah.

16        Q.   Do you see the camera in your hand?

17        A.   Uh-huh.

18        Q.   Okay.  Where do we find that -- the photos

19   that you took?

20        A.   I'll have to check the drive and see if they

21   were uploaded.

22        Q.   Is there any reason they would not have been

23   uploaded?

24        A.   There shouldn't be, no.

25        Q.   And when you say the drive, what drive are

Barry Walker                          November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 31

1    you referring to?

2         A.   There's a shared drive where all the photos

3    are.

4         Q.   Okay.  All right.  Okay.  I'll just wrap this

5    up.  Where would we -- If we wanted to find your

6    supplement, if you did it -- if you did a supplement,

7    where would we find that?

8         A.   If there's not a case file, which I'd have to

9    go and check and see if there is a case file -- I don't

10   believe there is one -- then the supplement should be

11   included with the documents that you already have.  It

12   should be attached to the report.

13        Q.   And if it's not -- if there is not a

14   supplement attached to the report, does that mean you

15   didn't do one?

16        A.   Possibly or it just wasn't attached.  I'd

17   have to check.

18        Q.   Okay.  So there's a way for you to check,

19   though, to see for sure --

20        A.   Uh-huh.

21        Q.   -- whether you did a supplement?

22        A.   Yes.  There's a way to see if it's attached.

23        Q.   Okay.  And can you --

24             MS. MILLER:  Mr. Bennett, can you talk to

25        Captain Walker --

Barry Walker                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 32

 1              MR. BENNETT:  Yeah.

 2              MS. MILLER:  -- after and see if he did a

 3       supplement and also to see about the photos that

 4       it looks like he did take at the scene?

 5              MR. BENNETT:  Do you mind if I ask you one

 6       question?

 7              THE WITNESS:  Sure.

 8              MR. BENNETT:  On that particular camera,

 9       does it have one -- like a micro SD card to the

10       camera or how do you guys upload it to the --

11              THE WITNESS:  It's a micro SD.

12              MR. BENNETT:  Micro SD.  Okay.

13   BY MS. MILLER:

14       Q.   All right.  Well, since I don't have your

15   supplement and I don't have your pictures and I don't

16   have any measurements and really no tangible

17   documentation of the scene, I guess we'll have to call

18   this deposition today.  And I don't know if Mr. --

19              MS. MILLER:  Do you have any additional

20       questions for Captain Walker before we close

21       out?

22              MR. BENNETT:  No, I don't think so.  I'll

23       check with Chief Dorsey about the photos and see

24       if there were any taken.

25   BY MS. MILLER:

Page 33

1       Q.   Let me ask you this.  Is there a -- If you --

2   Are the -- Is the decision about how a scene is

3   documented where there's a traffic injury -- related

4   injury, is that within your discretion or are there

5   SOPs that would dictate how that's supposed to be done?

6       A.   There are SOPs.  And there are -- They're --

7   Typically in a case like that, it's referred up the

8   command staff, and then it's determined how it's going

9   to be worked.  In that particular situation, I'm not

10  sure exactly when or how the decision was made.  I'd

11  have to, like I said, look into it further.

12      Q.   Well, when you say it's referred, what do you

13  mean by that?

14      A.   Any situation like that, we would call the --

15  we'd call the chief or the assistant chief --

16      Q.   Okay.

17      A.   -- and they would -- they would say -- we'd

18  say, hey, this is how we're going to handle it or

19  whatever.  And they'd either sign off on it or not sign

20  off on it.

21      Q.   Okay.  So how do we know what decision was

22  made in connection with this case?  Because I -- Is it

23  fair to assume you don't remember how it happened in

24  this case?

25      A.   I don't.

Barry Walker                        November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 34

1        Q.    Okay.  So how would we go about understanding

2    how this was -- the decision was made how to document

3    this traffic injury?

4        A.    So I would tell you that any time -- if a

5    person got anywhere, if it wasn't life threatening,

6    there would be no Total Station, there would be -- none

7    of that would happen.  There would be photos and there

8    would be a report.  If it was a life-threatening

9    injury, then they would take -- bring out a Total

10   Station.  Actually, lately we've just been calling

11   Georgia State Patrol.  But, typically, there would be a

12   Total Station brought out.  They'd do measurements.

13   They'd do the whole nine yards.

14       Q.    Uh-huh.  Okay.  And --

15       A.    That would be the only factor is if it's

16   life-threatening or not.

17       Q.    Okay.  And is that in your SOPs or is that --

18   where is that -- what is that derived from?

19       A.    Practice.

20       Q.    Okay.  And life-threatening, does that appear

21   anywhere in your traffic SOPs in terms of a deciding

22   factor on how a scene should be documented?

23       A.    I believe it's going to say serious injury or

24   death in the SOPs, I believe.

25       Q.    Okay.  And where is serious injury defined

Barry Walker                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 35

1   at?

2       A.   It may not be defined.

3       Q.   Okay.  All right.  But in your mind, serious

4   injury means something that you could die from.

5       A.   Correct.

6       Q.   Okay.  All right.  So let me ask you this.

7   And maybe you answered it, and maybe I just missed it.

8   How do I find out the chain of command and who made the

9   final decision on how this incident was going to be

10  treated and documented and investigated?

11      A.   You may not.  I know that a supervisor would

12  have made a phone call, and the chief is informed of

13  anything that is newsworthy.  And that would have been

14  newsworthy, and it would have went up the chain.  How

15  it came back down the chain, I don't remember.

16      Q.   Okay.  So do you think it came back down the

17  chain for you not to take measurements?

18      A.   I don't know how it came back down.  But I

19  will tell you that unless it was life-threatening, then

20  we would not do measurements like that.  There would

21  not be a Total Station brought out.  None of that would

22  happen.

23      Q.   Okay.  I know.  I'm beyond Total Station.

24  I'm just talking about just plain old basic traffic

25  scene investigation 101.

Barry Walker                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 36

1      A.   So that's not traffic scene 101 because --

2      Q.   Measurements aren't?

3      A.   No, it's not.

4      Q.   In Union City?

5      A.   I'm telling you that out of 100 accidents,

6  unless there is a life-threatening injury, there are no

7  measurements done.

8      Q.   No, no, no, no, no, no.

9      A.   And that's not Union City.  That's

10 everywhere.

11     Q.   Fair.  I'm not talking about fender benders,

12 bumpers.  I'm talking about --

13     A.   I'm not talking about fender benders.  I'm

14 talking about --

15     Q.   We can't talk at the same time.

16     A.   I'm talking about people hit.

17     Q.   We can't talk at the same time.

18     A.   I understand.

19     Q.   Captain, we can't talk at the same time.

20     A.   You asked me a question.

21     Q.   You answered it.

22     A.   Okay.

23     Q.   So I'm trying to clarify.

24     A.   All right.

25     Q.   Okay?  If we're not talking about a fender

Barry Walker                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 37

1    bender and we're talking about, let's say, an incident
2    where a pedestrian gets their leg run over --
3         A.    Uh-huh.
4         Q.    -- that is not the kind of scene that Union
5    City would do measurements for.
6         A.    If it's not life-threatening, then, no, they
7    will not do measurements.
8         Q.    Okay.  Is there ever -- How do you determine
9    if something is life-threatening?
10        A.    We refer to the ambulance, and we ask them
11   how serious the injury is.  If they tell us that it's
12   life-threatening, then we do measurements.  We shut the
13   whole scene down, we block off the scene, and we do
14   measurements.
15        Q.    So as a captain over the traffic unit, who do
16   you report -- whose your direct report?  Who do you
17   report to?
18        A.    I report to the chief.  I wasn't the captain
19   over the traffic unit at that moment.
20        Q.    Who are you reporting to at this moment?
21        A.    Today?
22        Q.    Uh-uh.  At the moment that we're here about.
23        A.    It would have been Gloria Hodgson -- Captain
24   Gloria Hodgson.
25        Q.    Can you spell her last name?

Barry Walker                          November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 38

1        A.    H-o-d-g-s-o-n.

2        Q.    And where is she now?

3        A.    I guess she's at work.  I'm not sure.

4        Q.    Is she still a captain?

5        A.    She is.

6        Q.    What unit is she assigned to?

7        A.    She's an administrative captain.

8        Q.    And did you consult with her on this day,

9   this day meaning May 1, 2020?

10       A.    I don't remember.  She would have been in the

11   chain of command, so she should have been contacted.

12       Q.    So for lack of a better word, who would be

13   the lead on this case?

14       A.    When you say lead, what do you mean?

15       Q.    I mean the lead investigator or the person

16   who is responsible for this case -- this case number?

17       A.    At that particular time, the case number

18   would have been Mays because he did the report.

19       Q.    Did it become someone else's at a later time?

20       A.    No, it didn't go past that point.

21       Q.    So Mays was the lead investigator on this

22   accident?

23       A.    Yes, according to the documentation, yes.

24       Q.    Well, do you know one way or another?

25       A.    He did the report.

Barry Walker                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

Page 39

1      Q.   So that makes him --

2      A.   According to the --

3      Q.   -- the lead?

4      A.   According to the documentation, yes.

5      Q.   And who made that decision?

6      A.   I'm not sure.

7      Q.   Is there someone besides you who would have

8  made that decision?

9      A.   It could have been his supervisor.

10     Q.   Okay.  I do think that -- I know I said

11 before I was done, but I do think I am done.  One more

12 second here.

13          MS. MILLER:  Okay.  I am done with Captain

14     Walker.  And unless Mr. Bennett has any

15     questions for you, that's it.

16          MR. BENNETT:  No, no questions.

17          (The deposition in the above-entitled

18     matter was concluded at approximately 10:45

19     a.m.)

20

21

22

23

24

25

Page 40

C E R T I F I C A T E

1

2       STATE OF GEORGIA    )

3       COUNTY OF FAYETTE   )

4              I, CHARLENE M. HANSARD, Certified Court

5       Reporter, State of Georgia, do hereby certify that

6       the foregoing pages were reported by me via speech

7       recognition and reduced to print by me personally or

8       under my direct supervision and is a true, complete

9       and correct transcript of the aforesaid proceedings

10      reported by me.

11             I further certify that I am not a relative,

12      employee, attorney or counsel of any of the parties;

13      that I am not a relative or employee of attorney or

14      counsel for any of said parties; nor am I financially

15      interested in the outcome of the action.

16             This certification is expressly withdrawn

17      and denied upon the disassembly or photocopying of

18      the foregoing transcript, unless said disassembly or

19      photocopying is done by the undersigned certified

20      court reporter and original signature and seal is

21      attached thereto.

22             This the 17th day of November 2022.

23

24             CHARLENE M. HANSARD, CCR, CVR-M

25             Certificate No. B-2341

Page 41

1                    D I S C L O S U R E

2              I, Charlene M. Hansard, do hereby disclose

3        pursuant to Article 10.B. of the Rules and

4        Regulations of the Board of Court Reporting of the

5        Judicial Council of Georgia that I was contacted by

6        the party taking the proceedings to provide court

7        reporting services for this proceeding and there is

8        no contract that is prohibited by O.C.G.A. Section

9        15-14-37(a) and (b) or Article 7.C. of the Rules and

10       Regulations of the Board for the taking of this

11       proceeding.

12               There is no contract to provide reporting

13       services between myself or any person with whom I

14       have a principal and agency relationship nor any

15       attorney at law in this action, party to this action,

16       party having a financial interest in this action, or

17       agent for an attorney at law in this action, party to

18       this action, or party having a financial interest in

19       this action.  Any and all financial arrangements

20       beyond my usual and customary rates have been

21       disclosed and offered to all parties.

22               DATED:  November 8, 2022.

23

24

25               CHARLENE M. HANSARD, CCR-B-2341

Barry Walker
Early, Dianti v. Mays, John (Officer)

November 8, 2022

**[00816 - believe]**

Page 1

| **0** | **5** |
| --- | --- |
| **00816**  1:6 | **5**  27:13 |

| **1** | **6** |
| --- | --- |
| **1**  3:14 4:6 8:13 38:9 | **6**  3:5 27:13 |
| **10.b.**  41:3 | **6770**  9:7 |
| **100**  1:16 36:5 | **678**  2:12 |
| **101**  35:25 36:1 | **688-3554**  2:12 |
| **1012**  2:11 | |

| **10:04**  1:16 4:2 | **7** |
| --- | --- |
| **13**  2:11 3:15 | **7.c.**  41:9 |
| **14th**  2:5 | **720-8111**  2:6 |
| **15-14-37**  41:9 | **75**  2:5 |

**17076**  40:24 41:24

| | **8** |
| --- | --- |
| **17th**  40:22 | **8**  1:16 41:22 |

**1:22**  1:6

| | **9** |
| --- | --- |
| **2** | **9-11-28**  4:5 |

| **2**  3:15 13:3,8,9 27:5 | **a** |
| --- | --- |
| **2010**  7:3,4 | **a.m.**  1:16 4:2 39:19 |
| **2020**  8:13 38:9 | **ability**  11:7 |
| **2022**  1:16 40:22 41:22 | **able**  23:3 |
| **2110**  2:5 | **accident**  8:24,25 15:18,22,23,24 16:6 27:7 38:22 |
| **2341**  1:15 40:25 41:25 | **accidents**  8:11 8:22 19:16 36:5 |

| **3** | **action**  1:5 40:15 41:15,15,16,17 41:18,19 |
| --- | --- |
| **30223**  2:12 | **additional**  32:19 |
| **30309**  2:6 | **administered**  6:8 |

| **4** | **administrative**  38:7 |
| --- | --- |
| **4**  3:14 | **affirmative**  2:23 |
| **404**  2:6 | |

| | |
| --- | --- |
| **aforesaid**  40:9 | **assist**  8:20 |
| **agency**  23:23 24:8 26:5 41:14 | **assistant**  14:2 15:7 33:15 |
| **agency's**  24:22 | **assume**  15:6 27:25 28:1 29:13,14 33:23 |
| **agent**  41:17 | **atlanta**  1:2 2:6 6:22 |
| **ago**  6:25 7:1 | |
| **agree**  16:11 26:25 | **attached**  3:17,18 31:12,14,16,22 40:21 |
| **ambulance**  12:6 12:9,14 17:19 37:10 | **attempting**  27:15 |
| **answer**  4:25 8:12 28:25 | **attorney**  4:10 40:12,13 41:15 41:17 |
| **answered**  35:7 36:21 | **audible**  5:2 |
| **anybody**  13:20 | **aware**  15:8,10 |
| **apartment**  8:17 9:4,6,23 | **b** |
| **apparently**  29:11 | **b**  1:15 40:25 41:9,25 |
| **appear**  19:20 34:20 | **back**  7:17,20,25 17:9 30:11 35:15,16,18 |
| **appeared**  19:25 | |
| **appropriate**  25:2,6 | **barry**  1:12 3:4 6:11 |
| **approximately**  39:18 | **based**  27:23 |
| **area**  9:21 10:4 | **basic**  4:22 35:24 |
| **arrangements**  41:19 | **basically**  15:20 |
| **arrived**  9:23 10:22 | **beginning**  14:23 21:11 |
| **article**  41:3,9 | **behalf**  2:3,9 |
| **asked**  29:15 36:20 | **believe**  11:16 17:19 19:3 20:23,25 31:10 34:23,24 |
| **asking**  24:4 29:1 | |
| **assigned**  38:6 | |

Barry Walker                                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

[bender - correct]                                              Page 2

| bender | 16:8 37:1 |
| benders | 36:11 |
| | 36:13 |
| bennett | 2:10,10 |
| | 31:24 32:1,5,8 |
| | 32:12,22 39:14 |
| | 39:16 |
| bennettlawoffi... | |
| | 2:13 |
| better | 38:12 |
| beyond | 35:23 |
| | 41:20 |
| bigger | 30:5,7 |
| bit | 16:2,7 30:8 |
| block | 37:13 |
| blocking | 10:4 |
| board | 41:4,10 |
| body | 10:7,19,25 |
| | 18:5,12,13,15 |
| | 20:18 22:19 |
| | 28:9,22,23 29:9 |
| | 29:11,15,17,21 |
| | 29:25 |
| bottom | 13:14 |
| boxes | 28:7 |
| break | 2:23 |
| bring | 34:9 |
| broken | 25:23,24 |
| | 25:25 26:3,23 |
| brought | 34:12 |
| | 35:21 |
| buffington | 9:7 |
| bump | 27:17 |
| bumpers | 36:12 |
| bunch | 12:3 |
| bushes | 9:25 12:3 |
| | 17:3,14,17 |

**c**

| c | 2:1 4:1 40:1,1 |
| | 41:1 |
| call | 8:17,20,21 |
| | 9:14 10:11,14 |
| | 11:16 32:17 |
| | 33:14,15 35:12 |
| called | 7:16 21:21 |
| | 23:23 |
| calling | 34:10 |
| calls | 8:12 9:18 |
| camera | 10:7,19 |
| | 10:22,25 11:21 |
| | 11:21 18:13,14 |
| | 18:15 20:18,22 |
| | 21:5 28:9,22,24 |
| | 29:9,11,16,17,21 |
| | 29:21,23,25 30:2 |
| | 30:12,16 32:8,10 |
| cameras | 21:7 |
| capacity | 11:3 |
| captain | 4:9 5:21 |
| | 7:4,13,25 24:4 |
| | 24:25 26:3 29:2 |
| | 29:5 31:25 |
| | 32:20 36:19 |
| | 37:15,18,23 38:4 |
| | 38:7 39:13 |
| captured | 18:13 |
| car | 9:25 10:9,13 |
| | 11:13 12:2 17:4 |
| | 17:8 18:5,23 |
| | 20:21,25 27:2,4 |
| card | 32:9 |
| carry | 11:11 |
| cars | 10:2,3,5 |
| | 12:3 21:13 |

| case | 4:12 23:12 |
| | 31:8,9 33:7,22 |
| | 33:24 38:13,16 |
| | 38:16,17 |
| caused | 29:7 |
| ccr | 40:24 41:25 |
| certificate | 40:25 |
| certification | |
| | 7:23,24 40:16 |
| certified | 1:15 |
| | 40:4,19 |
| certify | 40:5,11 |
| chain | 35:8,14,15 |
| | 35:17 38:11 |
| changed | 9:11 |
| charlene | 1:14 |
| | 40:4,24 41:2,25 |
| check | 30:20 31:9 |
| | 31:17,18 32:23 |
| checked | 13:15 |
| | 13:16 28:7 |
| checking | 28:6 |
| chief | 7:6,7,7,8 |
| | 14:2 15:7 32:23 |
| | 33:15,15 35:12 |
| | 37:18 |
| chopped | 24:16 |
| circumstance | |
| | 29:16 |
| citizen | 28:14 |
| city | 1:8 5:21,25 |
| | 6:18 7:13 8:18 |
| | 15:2 24:25 26:4 |
| | 36:4,9 37:5 |
| civil | 1:5 |
| civilian | 24:7 |
| | 25:7 28:18 29:8 |

| clarify | 36:23 |
| clear | 5:6,9 |
| cleared | 27:23 |
| close | 32:20 |
| college | 6:22 |
| come | 10:16 |
| command | 33:8 |
| | 35:8 38:11 |
| commencing | |
| | 1:15 |
| complete | 2:22 |
| | 40:8 |
| complex | 8:18 |
| | 9:4,6,10,16,24 |
| | 17:9 |
| complied | 4:3 |
| concluded | 39:18 |
| conduct | 16:4 |
| conducted | 25:1 |
| confuse | 5:8 |
| connection | 30:1 |
| | 33:22 |
| consider | 22:1 |
| consult | 38:8 |
| contact | 18:4 |
| contacted | 38:11 |
| | 41:5 |
| contained | 1:13 |
| continued | 17:14 |
| continuity | 2:23 |
| contract | 41:8,12 |
| conversation | 5:3 |
| cool | 5:20 |
| copies | 3:19 |
| copy | 3:18 |
| correct | 5:15 9:8 |
| | 19:7 20:17,19,20 |
| | 20:24 21:16 |

[correct - experienced]

Page 3

35:5 40:9
**council** 41:5
**counsel** 40:12,14
**county** 40:3
**course** 5:6 18:16
**court** 1:1,15 4:3
4:23 6:3,9 40:4
40:20 41:4,6
**crash** 3:15 13:4
23:8
**crushed** 22:12
24:6,13 25:5,15
25:20 26:22,22
**customary** 11:6
41:20
**cv** 1:6
**cvr** 40:24

**d**

**d** 3:2 4:1,5 38:1
41:1
**dash** 20:22 21:4
21:7
**dated** 41:22
**dates** 14:19
**day** 8:18 10:10
11:22 18:10
28:10,10,13
29:18 38:8,9
40:22
**dead** 10:3
**dealing** 28:17
**death** 21:25 22:2
22:15,18,25
34:24
**deciding** 34:21
**decision** 33:2,10
33:21 34:2 35:9

39:5,8
**defendant** 1:9
2:9
**defined** 34:25
35:2
**definitely** 19:23
**denied** 40:17
**department** 1:8
5:22 6:20 26:4
28:12
**depend** 24:2,8
24:22 26:20
**depending** 25:2
25:6
**depends** 25:12
**deposition** 1:12
1:14 3:14,18 4:7
4:12,18 5:13
13:10,21,24 14:5
14:25 32:18
39:17
**depth** 16:7
**derived** 34:18
**describe** 7:13
9:22 19:25
**description** 3:13
**detective** 7:21
**determine** 12:22
16:5 17:1 37:8
**determined** 33:8
**dianti** 1:4 4:11
**dictate** 33:5
**die** 35:4
**dies** 16:9
**different** 14:19
14:20 16:2
18:25 24:1,19
26:11

**differently** 8:8
**direct** 37:16 40:8
**direction** 20:6
**disassembly**
40:17,18
**disclose** 41:2
**disclosed** 41:21
**discretion** 33:4
**district** 1:1,1
**division** 1:2
**document** 11:19
16:21 22:14
25:10,11 26:8
34:2
**documentation**
32:17 38:23
39:4
**documented**
11:24 33:3
34:22 35:10
**documents**
31:11
**doing** 11:25
**door** 17:10
**dorsey** 32:23
**download** 23:9
**downloaded**
23:8
**drive** 1:17 2:11
30:20,25,25 31:2
**dubose** 2:4
**dubosemiller.c...**
2:7
**duly** 6:12

**e**

**e** 2:1,1 3:2 4:1,1
13:25 14:3 40:1

40:1 41:1
**early** 1:4 4:11
23:18,22 27:15
**effort** 16:19
17:23
**either** 33:19
**else's** 38:19
**employee** 40:12
40:13
**ended** 8:25
**entail** 28:4,5
**entailed** 28:8
**entitled** 5:9
39:17
**errors** 28:6
**esq** 2:4,10
**event** 11:2
**evidence** 12:20
17:16
**exact** 2:22
**exactly** 2:21
14:24,25 17:21
18:11,17 20:1
25:22 33:10
**examination** 3:5
6:14
**examined** 6:12
**exhibit** 3:12,14
3:15 4:6 13:3,8
13:9
**exhibits** 3:11,17
**expect** 24:5 26:3
26:5,7
**expected** 23:24
**experience** 8:2
**experienced**
19:12

Barry Walker
Early, Dianti v. Mays, John (Officer)

November 8, 2022

[explained - injury]

Page 4

| | | | |
|---|---|---|---|
| **explained** 14:24 | 29:25 30:2 | **ground** 4:22 | **huh** 2:23 5:1 |
| **expressly** 40:16 | **foregoing** 40:6 | 10:1 12:4,13 | 24:15 27:10 |
| **f** | 40:18 | 18:3 27:15,16 | 30:17 31:20 |
| **f** 2:4 40:1 | **forget** 6:6 | **guess** 8:13 15:15 | 34:14 37:3 |
| **fact** 23:4 27:22 | **friend** 7:12 | 16:1 19:15 24:2 | **hurt** 15:17 |
| **factor** 34:15,22 | **front** 9:1 27:16 | 24:23 27:6,25 | **hurting** 20:13 |
| **fair** 16:10,23,25 | 27:17 | 32:17 38:3 | **hypothetical** |
| 33:23 36:11 | **fulton** 7:9 | **guy** 29:21,23 | 23:20 |
| **familiar** 9:15 | **function** 8:10 | 30:12 | **i** |
| **far** 15:1 26:14 | **further** 33:11 | **guys** 32:10 | **identification** |
| 26:14 | 40:11 | **h** | 4:7 13:5,8 |
| **fashion** 24:1 | **g** | **h** 38:1 | **identify** 30:3 |
| **fast** 6:6 23:5,6 | **g** 4:1 38:1 | **habersham** 1:17 | **incident** 10:19 |
| 23:15 | **general** 8:8 | **hand** 12:23 | 18:21,22 23:4 |
| **fayette** 40:3 | **georgia** 1:1,17 | 30:16 | 30:1 35:9 37:1 |
| **fayetteville** 1:17 | 2:6,12 3:15 13:3 | **handing** 13:7 | **included** 31:11 |
| **feel** 11:12 14:22 | 34:11 40:2,5 | **handle** 33:18 | **indicate** 16:19 |
| **fell** 27:15,16 | 41:5 | **hansard** 1:15 | 18:4 |
| **felt** 27:17 | **give** 5:17 15:4 | 40:4,24 41:2,25 | **individually** 1:7 |
| **fender** 16:8 | 29:20 | **happen** 34:7 | 15:1 |
| 36:11,13,25 | **given** 15:2 | 35:22 | **information** |
| **file** 1:5 31:8,9 | **gloria** 37:23,24 | **happened** 8:22 | 14:19 15:2,5,14 |
| **final** 35:9 | **go** 11:17 31:9 | 12:19 17:2 18:8 | 17:22 |
| **financial** 41:16 | 34:1 38:20 | 18:9 33:23 | **informed** 13:24 |
| 41:18,19 | **going** 6:6 10:24 | **happens** 10:15 | 35:12 |
| **financially** 40:14 | 17:9 23:5,7,16 | **head** 24:16 | **injured** 15:18 |
| **find** 12:19 14:24 | 29:24 30:7 33:8 | **hear** 24:14 | 16:6,9 22:7 |
| 29:20 30:18 | 33:18 34:23 | **help** 12:23 | **injuries** 22:2,4 |
| 31:5,7 35:8 | 35:9 | **helps** 4:24 | 25:3,6 |
| **first** 6:12 8:25 | **good** 4:9 7:12 | **hey** 33:18 | **injury** 19:24 |
| **flat** 25:22 | 9:3 14:17 | **higher** 19:13 | 21:25 22:1,1,5 |
| **focus** 28:16 | **gotten** 23:21 | **hire** 28:11 | 22:14,18,25 |
| **following** 17:4,8 | **grammatical** | **hit** 8:21 18:23 | 24:12,12 25:5,14 |
| **follows** 6:13 | 28:6 | 22:19 27:4 | 26:20,21 33:3,4 |
| **foot** 19:22 | **gravely** 16:9 | 36:16 | 34:3,9,23,25 |
| **footage** 10:19,25 | **griffin** 2:12 | **hodgson** 37:23 | 35:4 36:6 37:11 |
| 20:22 21:5 | | 37:24 | |

Barry Walker
Early, Dianti v. Mays, John (Officer)

November 8, 2022

**[intense - narrative]**

Page 5

| | | | |
|---|---|---|---|
| **intense**  16:10 | **l** | **lying**  12:4 | 34:12 35:17,20 |
| **interest**  41:16,18 | **l**  41:1 | **m** | 36:2,7 37:5,7,12 |
| **interested**  40:15 | **lack**  38:12 | | 37:14 |
| **investigate**  8:11 | **lakes**  9:13 | **m**  1:14 40:4,24 | **memorial**  2:11 |
| 23:25 26:5 | **lately**  34:10 | 40:24 41:2,25 | **method**  18:22 |
| **investigated** | **law**  2:10 41:15 | **machine**  21:19 | **metropolitan** |
| 23:22 24:5 | 41:17 | **mail**  13:25 14:3 | 6:22 |
| 35:10 | **laying**  10:1 | **making**  28:6 | **mhb**  2:13 |
| **investigating** | **lead**  22:15,15 | **man**  30:1 | **micro**  32:9,11,12 |
| 18:22 | 38:13,14,15,21 | **manager**  7:23,24 | **miller**  2:4,4,7 |
| **investigation** | 39:3 | **march**  8:13 | 3:5 4:9,10,15,18 |
| 16:4,8,9 18:21 | **leg**  19:22,23 20:2 | **marked**  3:17 4:7 | 4:21 5:20,24 6:2 |
| 22:21 25:1 | 20:2 22:5,12,14 | 13:4,7 | 6:5,15 13:6 |
| 35:25 | 24:6,13 25:5,15 | **marks**  16:5,18 | 30:10 31:24 |
| **investigations** | 25:20,21,24 26:2 | 16:20 23:10 | 32:2,13,19,25 |
| 22:11 | 26:21,22,23 28:1 | **master**  7:16,16 | 39:13 |
| **investigator**  7:9 | 28:2 37:2 | **math**  7:1 | **mind**  32:5 35:3 |
| 38:15,21 | **legend**  2:20 | **matter**  39:18 | **mine**  21:8 |
| **j** | **lieutenant**  7:22 | **matthew**  2:10 | **minute**  7:15 |
| **john**  1:7 | 8:15 | **mays**  1:7 13:12 | **missed**  35:7 |
| **judicial**  41:5 | **life**  34:5,8,16,20 | 13:15 15:9 17:6 | **mohney**  19:9 |
| **k** | 35:19 36:6 37:6 | 17:8 18:8,9 | **moment**  13:10 |
| **ken**  19:9 | 37:9,12 | 20:15,16 23:21 | 37:19,20,22 |
| **kind**  4:21 7:13 | **line**  22:3 | 27:6,17,17 29:25 | **morning**  4:9 |
| 10:4 28:20 37:4 | **lion's**  8:1 | 38:18,21 | 14:25 |
| **kit**  11:11,18 | **little**  16:2,7 | **mean**  7:6 25:4 | **motor**  3:15 13:3 |
| **knew**  6:6 | 21:19 30:8 | 25:16,17 27:20 | **moving**  6:6 |
| **know**  4:21 5:6 | **llc**  2:4,10 | 31:14 33:13 | 17:10 |
| 5:10,16 7:4,19 | **long**  5:24 7:4,6,7 | 38:14,15 | **multiple**  23:6 |
| 9:10,13 11:13,23 | **look**  13:10 15:20 | **meaning**  17:5 | **n** |
| 13:11 15:13,23 | 16:4,5 20:3,9 | 38:9 | **n**  2:1 3:2 4:1 |
| 16:7 20:14 24:9 | 33:11 | **means**  10:14 | 38:1 |
| 26:24 27:1,2,3,3 | **looked**  12:20 | 35:4 | **n.e.**  2:5 |
| 28:1 30:6,6 | **looking**  20:13 | **measurements** | **name**  4:10 9:10 |
| 32:18 33:21 | 27:5 | 16:12 21:17,24 | 13:13 37:25 |
| 35:11,18,23 | **looks**  27:8 32:4 | 22:17 23:1 | **narrative**  27:13 |
| 38:24 39:10 | **lot**  9:18 19:16 | 26:12,16,17,18 | |
| | | 26:19 32:16 | |

Barry Walker
Early, Dianti v. Mays, John (Officer)

November 8, 2022

**[naturally - playing]**

Page 6

| | | | |
|---|---|---|---|
| **naturally** 5:3 | 20:16 23:21 | 39:10,13 | 34:11 |
| **necessarily** | 24:5 25:7 27:6 | **old** 35:24 | **pedestrian** 37:2 |
| 26:15 | 28:13,18 29:6,7 | **once** 27:14 | **people** 24:16 |
| **need** 6:16 | 29:25 | **opened** 17:10 | 36:16 |
| **negative** 2:24 | **officer's** 26:2 | **opinion** 25:8,9 | **person** 9:5 10:1 |
| **never** 21:9 | **officers** 12:18 | **opportunity** | 11:15 15:17 |
| **newsworthy** | 16:3 28:10 | 5:12,15,17 | 17:10,12 19:3,5 |
| 35:13,14 | **offices** 2:10 | **opposed** 4:25 | 19:8,18 25:19 |
| **nine** 34:13 | **oh** 6:5 13:13 | 25:7 | 29:1,5 34:5 |
| **nodding** 5:2 | 14:6 15:4 30:7 | **ordinarily** 15:4 | 38:15 41:13 |
| **normal** 18:22 | **okay** 4:15,21 | **original** 3:18 | **personal** 10:9 |
| 20:2 | 5:19,20 6:2,24 | 40:20 | 11:12 |
| **normally** 11:16 | 7:10,12 8:1,4,7 | **originally** 3:17 | **personally** 40:7 |
| 19:2 28:5 | 8:17 9:6,12,15 | **outcome** 40:15 | **phone** 11:20 |
| **northern** 1:1 | 9:18,22 10:7,10 | **outside** 23:23 | 35:12 |
| **notice** 3:14 4:6 | 10:14,18,21,24 | | **phonetic** 2:22 |
| 4:12,16 | 11:2,6,10,14,18 | **p** | **photocopying** |
| **november** 1:16 | 11:23 12:2,10,12 | **p** 2:1,1 4:1 | 40:17,19 |
| 40:22 41:22 | 12:16 13:1,17,20 | **page** 3:3,13 | **photograph** |
| **number** 3:13 | 13:23 14:1,6,18 | 27:13,14 | 22:13 |
| 13:8,9 38:16,17 | 15:4,8,11,15 | **pages** 40:6 | **photographs** |
| **numerous** 10:1 | 16:1,12,15,18,21 | **pain** 19:20 20:8 | 11:8 16:16 |
| **o** | 17:1,7,15 18:3,7 | 20:10 | 21:15 25:9 |
| **o** 4:1 38:1,1 41:1 | 18:20,25 19:8,20 | **paragraph** 27:14 | **photos** 16:24 |
| **o.c.g.a.** 4:4 41:8 | 19:22,25 20:4,7 | **park** 17:18 | 21:24 23:2 |
| **oath** 6:8,17 | 21:6,9,14,19 | **parked** 10:2 | 30:18 31:2 32:3 |
| **obviously** 4:23 | 22:4,6,9 23:3,12 | **part** 22:21 29:25 | 32:23 34:7 |
| 5:3 20:13 | 23:20,24 24:14 | **particular** 15:6 | **physical** 16:22 |
| **occurred** 15:21 | 24:16,23 25:4,16 | 24:21 32:8 33:9 | **pictures** 26:7 |
| 16:6 | 25:24 26:1,9 | 38:17 | 32:15 |
| **offered** 41:21 | 27:13,19 28:3,16 | **parties** 40:12,14 | **place** 22:6 |
| **officer** 1:7,7 7:14 | 28:19 29:14,18 | 41:21 | **plain** 35:24 |
| 7:16,17 8:21,23 | 30:7,18 31:4,4 | **party** 41:6,15,16 | **plaintiff** 1:5 2:3 |
| 9:1,4 11:4,4,5,7 | 31:18,23 32:12 | 41:17,18 | 4:11 |
| 12:18 13:12,15 | 33:16,21 34:1,14 | **patrol** 7:16,16 | **plaintiff's** 3:11 |
| 15:8 17:8 18:8,9 | 34:17,20,25 35:3 | 7:25 8:3,4,6,9,12 | 4:6 13:3,9 27:5 |
| 19:13,13 20:15 | 35:6,16,23 36:22 | 9:20 10:5 11:3 | **playing** 30:9 |
| | 36:25 37:8 | 20:21,25 27:17 | |

Barry Walker
November 8, 2022
Early, Dianti v. Mays, John (Officer)

**[please - run]**

Page 7

**please** 18:9
**point** 18:4 38:20
**police** 1:8 5:21
  10:2 12:3 25:7
  26:4 28:18
**policy** 22:11
  24:2,8,22
**position** 8:14
  24:10,24
**possibly** 23:10
  31:16
**potentially**
  22:15
**practice** 34:19
**preparation**
  13:20
**prepared** 14:23
  19:1 27:6
**pretty** 9:15
**primary** 8:10
**principal** 41:14
**print** 40:7
**probably** 13:18
  19:1 26:12,13
**proceeding** 41:7
  41:11
**proceedings**
  40:9 41:6
**produced** 3:19
  29:24
**prohibited** 41:8
**promoted** 7:21
  7:22,24
**properly** 14:23
**provide** 41:6,12
**prudent** 29:9
**pull** 10:25

**purposes** 4:8
  13:5,8
**pursuant** 1:12
  4:16 41:3
**put** 17:18

**q**

**question** 5:5,9
  24:24 32:6
  36:20
**questions** 5:8
  32:20 39:15,16
**quite** 21:12
**quote** 18:19

**r**

**r** 2:1 4:1 40:1
  41:1
**ran** 19:17 22:9
  22:11,18,19
  25:19,25
**ranking** 19:13
  29:6
**rates** 41:20
**reading** 1:13
**really** 32:16
**reason** 11:12
  14:17 30:22
**recall** 10:21
  16:15
**receive** 4:12
**received** 13:25
  14:3
**recognition** 40:7
**record** 17:5
**recount** 18:8
**reduced** 40:7
**refer** 37:10

**reference** 14:25
**referred** 33:7,12
**referring** 31:1
**refresh** 4:23
**regulations** 41:4
  41:10
**related** 33:3
**relationship**
  41:14
**relative** 40:11,13
**remember** 10:6
  10:23,24 11:12
  11:22,25,25
  12:11,12,13,15
  12:19 13:19
  16:17,20 17:25
  18:2,6,12,17
  19:18,23 20:1,1
  20:12,13,15
  29:19 33:23
  35:15 38:10
**repeat** 4:22
**rephrase** 5:7
**report** 3:15 12:1
  12:21,24 13:1,4
  13:11,12,16,17
  14:12 15:22,23
  15:24 27:6,7
  28:4,22 29:7,10
  31:12,14 34:8
  37:16,16,17,18
  38:18,25
**reported** 40:6,10
**reporter** 1:15
  4:3,23 6:3,9
  40:5,20
**reporting** 37:20
  41:4,7,12

**reports** 28:10
**represent** 4:11
**requirements**
  4:4
**respond** 11:19
  15:19 19:2,3,4
**responded** 9:18
  10:13 14:5
  15:19
**responding** 8:23
  11:3
**responses** 5:1
**responsible**
  38:16
**review** 5:13,16
  5:17 14:10 28:3
  28:8,12,21 29:9
  29:12
**reviewed** 27:9
  27:20,22 28:11
**right** 5:20 8:7
  10:18 18:20
  19:10 20:16
  22:21,22 29:23
  31:4 32:14 35:3
  35:6 36:24
**road** 9:7
**role** 15:15
**rolled** 27:16,18
  27:24
**rules** 4:22 41:3,9
**run** 19:18 24:6
  26:2,23,25 27:2
  27:3 28:14,18
  37:2

Case 1:22-cv-00816-SCJ   Document 59   Filed 03/15/24   Page 49 of 61
Barry Walker                                    November 8, 2022
Early, Dianti v. Mays, John (Officer)

[s - tell]                                                    Page 8

| s | | | |
|---|---|---|---|
| **s** 2:1 4:1 38:1 41:1,1 | **serious** 21:25,25 22:1,17,25 24:12 26:21 34:23,25 35:3 37:11 | **speak** 17:23 | **supplement** 31:6 31:6,10,14,21 32:3,15 |

**s**  2:1 4:1 38:1
  41:1,1
**saw**  22:8 25:18
**saying**  20:11
  24:14 27:24
**says**  27:14
**scene**  9:23 11:19
  11:24 12:17,21
  15:16 16:5,13,22
  16:22 17:16
  22:14 25:10,11
  26:8 27:1,23
  29:6 32:4,17
  33:2 34:22
  35:25 36:1 37:4
  37:13,13
**scj**  1:6
**sd**  32:9,11,12
**seal**  40:20
**second**  11:2
  29:20 39:12
**section**  4:4 41:8
**see**  6:5,16 8:13
  9:2 10:12,24
  13:13 14:12
  18:3 19:22
  24:16 26:20,22
  29:21 30:16,20
  31:9,19,22 32:2
  32:3,23
**seeing**  16:20
  19:18 20:2
**seen**  10:18 19:16
**sense**  5:10 23:15
**separately**  13:17
**sergeant**  7:17,18
  7:21,21

**serious**  21:25,25
  22:1,17,25 24:12
  26:21 34:23,25
  35:3 37:11
**seriousness**
  25:14
**services**  41:7,13
**shannon**  9:13
**share**  8:1
**shared**  31:2
**shift**  10:15
**show**  10:25
  29:24
**showed**  14:8
**shut**  37:12
**sic**  2:21
**sign**  5:16,18
  33:19,19
**signature**  40:20
  40:24 41:24
**signed**  28:22
  29:6,10
**significant**  23:9
**signing**  1:14
**similar**  23:25
  26:9
**situation**  15:6
  24:21 26:20
  28:17,20 33:9,14
**somebody**  8:22
  15:24 22:11
**someone's**  16:6
**sops**  33:5,6
  34:17,21,24
**sorry**  6:5 12:7
**sort**  9:23 22:10
**sound**  27:24

**speak**  17:23
**specific**  18:7
**specifically**
  20:14,15
**speech**  2:23 40:6
**speed**  23:11
**spell**  37:25
**spelling**  2:22
**spoke**  12:18,18
  12:20 18:2
**staff**  33:8
**stand**  27:16
**started**  7:14
**state**  34:11 40:2
  40:5
**states**  1:1
**station**  21:21,22
  21:24 22:16
  23:2 26:15 34:6
  34:10,12 35:21
  35:23
**stipulations**  1:13
**stolen**  17:8
**stop**  16:19 17:12
**stopped**  17:17
**street**  2:5 7:18
  7:18
**struck**  9:5 17:12
  17:21 23:18,21
  29:8
**stumbled**  27:15
**sudden**  14:22
**sued**  15:1,9
**suite**  2:5,11
**supervision**  40:8
**supervisor**  11:21
  19:10 26:4
  35:11 39:9

**supplement**  31:6
  31:6,10,14,21
  32:3,15
**supplemental**
  13:18
**support**  8:12
**supports**  17:17
**supposed**  15:21
  33:5
**sure**  5:1,14 9:3
  11:1 13:19
  15:20 21:2,3,14
  22:10 28:6
  31:19 32:7
  33:10 38:3 39:6
**sworn**  6:3,12

| t |
|---|

**t**  40:1,1
**take**  11:7 13:10
  16:12 21:24
  23:1 24:10 25:9
  26:7 28:10 32:4
  34:9 35:17
**taken**  1:12 4:19
  23:2 32:24
**talk**  13:20 18:1
  29:4 31:24
  36:15,17,19
**talking**  35:24
  36:11,12,13,14
  36:16,25 37:1
**tangible**  32:16
**tanya**  2:4 4:10
**team**  8:5
**tell**  5:7 8:20
  12:16 13:2
  17:20 18:11,25

[tell - went]                                                                                   Page 9

20:7,9 23:4,6
29:1 30:3 34:4
35:19 37:11
**telling**   22:13
26:21,24 28:25
36:5
**ten**   6:1,17
**terms**   34:21
**testified**   6:13
**theory**   19:12,14
**thereto**   40:21
**thing**   16:1
**think**   8:15 10:8
11:1 13:1 18:20
21:1,3 25:2
32:22 35:16
39:10,11
**thought**   2:22
13:13 29:8
**threatening**   34:5
34:8,16,20 35:19
36:6 37:6,9,12
**thrown**   14:20,20
**tickets**   8:11
**time**   8:16,23
14:21,22 15:17
17:12 19:16
21:12,23 28:21
29:4 34:4 36:15
36:17,19 38:17
38:19
**times**   14:20
28:13
**tire**   16:5,18,20
23:10 27:18
**today**   4:13 9:14
13:21,24 14:7,8
15:10,11 26:24

32:18 37:21
**told**   17:4 18:8,9
18:17 20:16
28:23
**total**   21:21,22,23
22:16 23:1
26:14 34:6,9,12
35:21,23
**town**   11:16 19:4
**traffic**   7:15,20
7:22 8:2,5,8,10
8:15 11:4,5,7
15:18,19,25 16:3
19:6 21:6,13
22:10 26:4 29:5
33:3 34:3,21
35:24 36:1
37:15,19
**trailing**   2:22
**trajectory**   7:13
**transcript**   2:20
5:13 40:9,18
**treated**   35:10
**tremendously**
4:25
**true**   40:8
**trust**   6:16
**try**   16:5
**trying**   5:8 12:19
19:15 29:20
30:2 36:23
**tuesday**   1:16
**turned**   9:1
**twelve**   6:25 7:1
**twisted**   20:5
**two**   6:23 8:22
**typically**   11:11
23:3 29:15 33:7

34:11
**typos**   5:14

**u**

**u**   41:1
**uh**   2:23,24,24
5:1,1,1 24:15
27:10 30:17
31:20 34:14
37:3,22,22
**unable**   18:1
**undersigned**
40:19
**understand**   5:5
19:15 20:14
22:10,23 36:18
**understanding**
16:2,3 34:1
**union**   1:8 5:21
5:25 6:17 7:12
8:18 24:25 26:4
36:4,9 37:4
**unit**   7:15,20,22
8:2,8,10,16
15:19,25 19:6
21:6 26:5 27:17
29:2,5 37:15,19
38:6
**unit's**   22:10
**united**   1:1
**unknown**   2:22
**upload**   32:10
**uploaded**   30:21
30:23
**use**   21:20
**usual**   41:20
**utilize**   11:20
21:23 22:16

23:1

**v**

**vague**   22:18
**vehicle**   3:15 9:1
13:4 17:3,10,11
17:11,13,13,16
17:17,18 22:12
23:7,7,8,9,11,16
29:8
**vehicles**   23:5
**victim**   25:6
**video**   28:11 30:9
**videos**   28:12
**voluminous**
28:21
**vs**   1:6

**w**

**waived**   1:14
**walker**   1:12 3:4
4:9,14,17,20
5:19,23 6:1,11
31:25 32:20
39:14
**walks**   30:11
**want**   5:15 18:7
22:10 30:3
**wanted**   31:5
**watch**   30:4
**way**   12:22 15:21
16:22 20:2
23:22 24:11,24
31:18,22 38:24
**ways**   23:6
**we've**   34:10
**went**   7:14,17,20
7:25 9:3 35:14

Barry Walker
November 8, 2022
Early, Dianti v. Mays, John (Officer)

**[withdrawn - yesterday]**                                                    Page 10

**withdrawn**
  40:16
**witness**  3:3 6:8
  32:7,11
**word**  38:12
**words**  5:14
**work**  8:6 21:8,9
  21:12 38:3
**worked**  6:21,22
  7:11 21:11,11
  33:9
**works**  21:10
**wrap**  31:4
**wreck**  8:23
**write**  8:11
**wrong**  20:5

**x**

**x**  3:2

**y**

**y'all**  21:19
**yards**  34:13
**yeah**  7:8 9:20
  10:17 13:15
  18:15 21:22
  24:4,20 30:15
  32:1
**year**  7:19
**years**  6:1,17,23
  6:24,25 7:1,11
**yesterday**  15:12

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

## VERITEXT LEGAL SOLUTIONS
## COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **DIANTI EARLY**, | ) |
| | ) |
| *Plaintiff*, | ) |
| v. | ) |
| | )    Civil Action No. 1:22-cv-00816-SCJ |
| | ) |
| **OFFICER JOHN MAYS**, | ) |
| Individually, as an officer of the | ) |
| UNION CITY POLICE | ) |
| DEPARTMENT, | ) |
| | ) |
| *Defendant*. | ) |

### NOTICE OF DEPOSITION OF OFFICER JOHN MAYS

**TO:** **Officer Barry Walker**
c/o Matthew Bennet
1012 Memorial Drive, Suite 13
Griffin, Georgia 30223

You are hereby notified that on **November 8, 2022, at 10 a.m.,** I will

proceed to take the deposition of Officer Barry Walker at McNally, Fox, Grant &

Davenport, P.C., 100 Habersham Drive, Fayetteville, Georgia 30214. The

deposition will be taken upon oral examination, with a written and/or sound and

visual record made thereof (e.g. videotape, LiveNote, etc.) pursuant to Rule 30

of the Federal Rules of Civil Procedure. The deposition will be taken by Tanya

F. Miller, Esq. before a notary public or certified shorthand reporter authorized to

administer oaths in the State of Georgia. The oral examination will continue from

day to day until its completion. The deposition will be taken for the purposes of



cross-examination, discovery, and for all other purposes permitted under the

Federal Rules of Civil procedure or other applicable law.

Respectfully submitted this 3rd day of November 2022.

DUBOSE MILLER, LLC

/s/Tanya F. Miller
Tanya F. Miller
Georgia Bar. No. 508434
ATTORNEY FOR PLAINTIFF

75 14th St. NE, Suite 2110
Atlanta, GA 30309
404-720-8111

## CERTIFICATE OF SERVICE

I hereby certify that I have caused service of the within and foregoing
Notice of Deposition of Officer John Mays, to be made upon all parties in the
above-referenced matter via the electronic filing system:

Matthew Bennett
Bennett Law Office, LLC
1012 Memorial Drive, Suite 13
Griffin, Georgia 30223
mhb@bennettlawofficellc.com

Submitted, this 3rd day of November 2022.

/s/Tanya F. Miller
Tanya F. Miller
Georgia Bar. No. 508434
ATTORNEY FOR PLAINTIFF

| Agency Case Number 20-002897 | | Agency NCIC Number GA0600600 | | GEORGIA MOTOR VEHICLE CRASH REPORT | | County FULTON | | Date Rec. by GDOT | |
|---|---|---|---|---|---|---|---|---|---|
| **Estimated Crash** | | **Dispatch** | | **Arrival** | | **Total Number of** | | | **Inside City of** |
| Date 03/01/2020 | Time 1730 | Date 03/01/2020 | Time 1730 | Date 03/01/2020 | Time 1745 | Vehicles 2 | Injuries 0 | Fatalities 0 | **UNION CITY** |

| Road of Occurrence  BUFFINGTON ROAD | At Its Intersection With _____ | ☐ Corrected Report |
|---|---|---|
| Not At Its Intersection But _____   ☐ Miles  ☐ North  ☐ East   ☐ Feet  ☐ South  ☐ West | Of _____ | ☐ Sup To Original |
| Latitude (Y)          33.57034374   (Format)          00.00000 | Longitude (X)          -84.51084339   (Format)          -00.00000 | ☐ Hit and Run |

| Unit # 1 | ■ Driver  ☐ Ped  ☐ Bike | LAST NAME EARLY | | FIRST RAMON | MIDDLE DIANTI | Unit # 1 | ☐ Driver  ■ Ped  ☐ Bike | LAST NAME EARLY | | FIRST RAMON | MIDDLE DIANTI |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Address  5644 SOUTH CREST LN | | | | | | Address  5644 SOUTH CREST LN | | | | |
| ☐ Susp At Fault | | | | | | ☐ Susp At Fault | | | | | |
| City LITHONIA | | State GA | Zip 30038- | | DOB      1997 | City LITHONIA | | State GA | Zip 30038- | | DOB 03/28/1997 |
| Driver's License No. | | Class | State | | Country US | Driver's License No. | | Class | State | | Country US |

| Insurance Co. PRIVLAGE UNDER WRITERS | Policy No. PA1890803 | | Telephone No. | Insurance Co. | Policy No. | | Telephone No. |
|---|---|---|---|---|---|---|---|
| Year 2017 | Make JEEP | Model GRAND CHEROKEE MP | | Year 0 | Make | Model | |
| VIN 1C4RJEBG5HC877489 | | Vehicle Color BLACK | | VIN | | Vehicle Color | |
| Tag # RLE5431 | State GA | County FULTON | Year 2020 | Tag # | State | County | Year |
| Trailer Tag # | State | County | Year | Trailer Tag # | State | County | Year |

| ☐ Same as Driver | Owner's Last Name OLSEN | First STEPHEN | Middle REID | ☐ Same as Driver | Owner's Last Name | First | Middle |
|---|---|---|---|---|---|---|---|
| Address  8 WHITEWATER TRL NW | | | | Address | | | |
| City ATLANTA | State GA | Zip 30327 | | City | State | Zip | |
| Removed By: | | | ☐ Request  ☐ List | Removed By: | | | ☐ Request  ☐ List |
| Alco Test: | Type: | Results: | Drug Test:  Type:  Results: | Alco Test: | Type: | Results: | Drug Test:  Type:  Results: |
| First Harmful Event: | | Most Harmful Event: | Operator/Ped Cond: | First Harmful Event:  6 | | Most Harmful Event: | Operator/Ped Cond:  2 |
| Operator Contributing Factors: | | ___   ___ | ___   ___ | Operator Contributing Factors:  28 | | ___ | ___ |
| Vehicle Contributing Factors: | | Roadway Contributing Factors: | | Vehicle Contributing Factors: | | Roadway Contributing Factors:  1 | |
| Direction of Travel: | Vehicle Maneuver: | | Non-Motor Maneuver: | Direction of Travel:  3 | Vehicle Maneuver: | | Non-Motor Maneuver: |
| Vehicle Class:  1 | Vehicle Type:  11 | | Vision Obscured: | Vehicle Class: | Vehicle Type: | | Vision Obscured: |
| Number of Occupants:  0 | Area of Initial Contact: | | Damage to Veh: | Number of Occupants:  0 | Area of Initial Contact: | | Damage to Veh: |
| Traffic-Way Flow: | Road Comp: | | Road Character: | Traffic-Way Flow: | Road Comp:  2 | | Road Character:  3 |
| Number of Lanes: | Posted Speed:  0 | | Work Zone:  0 | Number of Lanes: | Posted Speed:  0 | | Work Zone:  1 |
| Traffic Control: | | Device Inoperative: ☐ Yes ■ No | | Traffic Control:  0 | | Device Inoperative: ☐ Yes ■ No | |

| Citation Information: | | | Citation Information: | |
|---|---|---|---|---|
| Citation # _____ | O.C.G.A. § _____ | | Citation # _____ | O.C.G.A. § _____ |
| Citation # _____ | O.C.G.A. § _____ | | Citation # _____ | O.C.G.A. § _____ |
| Citation # _____ | O.C.G.A. § _____ | | Citation # _____ | O.C.G.A. § _____ |

### COMMERCIAL MOTOR VEHICLES ONLY

| Carrier Name: | | | | Carrier Name: | | | |
|---|---|---|---|---|---|---|---|
| Address | | City | State   Zip | Address | | City | State   Zip |
| U.S. D.O.T. # | | No. of Axles | G.V.W.R. | U.S. D.O.T. # | | No. of Axles | G.V.W.R. |
| Cargo Body Type | Vehicle Config. | ☐ Interstate  ☐ Intrastate | Fed. Reportable  ☐ Yes   ☐ No | Cargo Body Type | Vehicle Config. | ☐ Interstate  ☐ Intrastate | Fed. Reportable  ☐ Yes   ☐ No |
| C.D.L.? | ☐ Yes ☐ No | C.D.L. Suspended? | ☐ Yes ☐ No | C.D.L.? | ☐ Yes ☐ No | C.D.L. Suspended? | ☐ Yes ☐ No |
| Vehicle Placarded? | ☐ Yes ☐ No | Hazardous Materials? | ☐ Yes ☐ No | Vehicle Placarded? | ☐ Yes ☐ No | Hazardous Materials? | ☐ Yes ☐ No |
| Haz Mat Released? | ☐ Yes ☐ No | | | Haz Mat Released? | ☐ Yes ☐ No | | |
| If YES:  Name or four Digit Number from Diamond or Box: _____ | | | | If YES:  Name or four Digit Number from Diamond or Box: _____ | | | |
| One Digit Number from Bottom of Diamond: _____ | | | | One Digit Number from Bottom of Diamond: _____ | | | |
| ☐ Ran Off Road  ☐ Down Hill Runaway  ☐ Cargo Loss or Shift  ☐ Separation of Units | | | | ☐ Ran Off Road  ☐ Down Hill Runaway  ☐ Cargo Loss or Shift  ☐ Separation of Units | | | |

GDOT-523 (07/17)

EXHIBIT 2

MAYS 107

## COLLISION FIELDS

| Manner of Collision: | Location at Area of Impact: | Weather: | Surface Condition: | Light Condition: |
|---|---|---|---|---|
| | | | | |

## NARRATIVE

On Sunday March 01 2020, at approximately 1646 hours, Officer MAYS, of the Union City Police Department was on patrol in the parking lot of the Exxon Gas Station located at 3985 Jonesboro Road in Union City Fulton County Georgia.

While on patrol Officer MAYS, observed a Black in color 2017 Jeep Grand Cherokee tag number RLE5431 VIN number 1C4RJEBG5HC877489 backed up in the front door area of the Exxon. MAYS, observed the front passenger seat occupied by a black male. Due to MAYS, having Pryor knowledge of a stolen Black Jeep that had been involved in several crimes with in the City Of Union City, as well as surrounding agencys, and also that the occupants were known to be armed with a firearm and possibly dangerous. MAYS continued to observe the vehicle.

Approximately one minute later, a black male EARLY, exited the store and while he was wa king to the driver side of the Black Jeep, MAYS observed a large bulge in the front waist band of EARLYS gray sweat pants, that did not appear to be normal. Once EARLY got into the driver side of the Black Jeep, he drove off toward Buffington Road. At this time the tag was visible. MAYS advised Fulton County Dispatch to conduct a Georgia Crime Information Center search of the vehicles (continued...)

## DIAGRAM

## PROPERTY DAMAGE INFORMATION

| Damage Other Than Vehicle: | Owner: |
|---|---|
| | |

## WITNESS INFORMATION

| Name (Last, First) | Address | City | State | Zip Code | Telephone Number |
|---|---|---|---|---|---|
| , | | | | | |
| , | | | | | |

## OCCUPANT INFORMATION

| # | Name (Last, First) | | | | | Address | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Name (Last, First)  EARLY, DIANTI | | | | | Address  5644 SOUTHCREST LN LITHONIA, GA | | | | |
| | Age  22 | Sex  M | Unit #  1 | Position  9 | Safety Eq  0 | Ejected  0 | Extricated  2 | Air Bag | Injury  2 | Taken for  0 Treatment |
| | Injured Taken To | | By | | EMS Notified Time (Fatality Only)  0000 | | EMS Arrival Time (Fatality Only)  0000 | | Hospital Arrival Time (Fatality Only)  0000 | |
| 2 | Name (Last, First)  MAYS, JOHN | | | | | Address  5060 UNION STREET UNION CITY, GA, 30291- | | | | |
| | Age  43 | Sex  M | Unit #  2 | Position  1 | Safety Eq | Ejected  0 | Extricated  0 | Air Bag | Injury | Taken for  0 Treatment |
| | Injured Taken To | | By | | EMS Notified Time (Fatality Only)  0000 | | EMS Arrival Time (Fatality Only)  0000 | | Hospital Arrival Time (Fatality Only)  0000 | |
| 3 | Name (Last, First) | | | | | Address | | | | |
| | Age | Sex | Unit # | Position | Safety Eq | Ejected | Extricated | Air Bag | Injury | Taken for Treatment |
| | Injured Taken To | | By | | EMS Notified Time (Fatality Only) | | EMS Arrival Time (Fatality Only) | | Hospital Arrival Time (Fatality Only) | |
| 4 | Name (Last, First) | | | | | Address | | | | |
| | Age | Sex | Unit # | Position | Safety Eq | Ejected | Extricated | Air Bag | Injury | Taken for Treatment |
| | Injured Taken To | | By | | EMS Notified Time (Fatality Only) | | EMS Arrival Time (Fatality Only) | | Hospital Arrival Time (Fatality Only) | |

## ADMINISTRATIVE

| Photos Taken:   ☐ Yes  By: ☐ No | Officer Note: If collision resulted in a fatality, please send prompt notification to the GDOT Crash Reporting Unit via either email at GeorgiaFARS@dot.ga.gov or Fax at (404) 635-2963. |
|---|---|

| Report By: MAYS, JOHN | Agency: GA0600600 | Report Date: 03/01/2020 | Checked By: WALKER, BARRY | Date Checked: 07/01/2020 |
|---|---|---|---|---|

GDOT-523 (07/17)    *MAIL TO: Georgia Department of Transportation, CRASH REPORTING UNIT, 935 East Confederate Ave., Atlanta, GA 30316-2590*

| **Agency Case Number**<br>20-002897 | **Agency NCIC Number**<br>GA0600600 | **GEORGIA<br>MOTOR VEHICLE CRASH REPORT** | | **County**<br>FULTON | **Date Rec. by GDOT** |
|---|---|---|---|---|---|

| **Estimated Crash** | | **Dispatch** | | **Arrival** | | **Total Number of** | | | **Inside City of** |
|---|---|---|---|---|---|---|---|---|---|
| Date<br>03/01/2020 | Time<br>1730 | Date<br>03/01/2020 | Time<br>1730 | Date<br>03/01/2020 | Time<br>1745 | Vehicles<br>2 | Injuries<br>0 | Fatalities<br>0 | UNION CITY |

| Road of<br>Occurrence BUFFINGTON ROAD | | | At Its<br>Intersection With | | ☐ Corrected Report |
|---|---|---|---|---|---|

| Not At Its<br>Intersection But _____ | ☐ Miles<br>☐ Feet | ☐ North<br>☐ South | ☐ East<br>☐ West | Of _____ | ☐ Sup To Original |
|---|---|---|---|---|---|

| Latitude (Y)<br>(Format) | 33.57034374<br>00.00000 | | Longitude (X)<br>(Format) | -84.51084339<br>-00.00000 | ☐ Hit and Run |
|---|---|---|---|---|---|

| Unit #<br>2 | ■ Driver<br>☐ Ped<br>☐ Bike | **LAST NAME**<br>MAYS | | **FIRST**<br>JOHN | **MIDDLE**<br>AARON | Unit # | ☐ Driver<br>☐ Ped<br>☐ Bike | **LAST NAME** | | **FIRST** | **MIDDLE** |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ☐ Susp At Fault | | **Address**<br>5060 UNION STREET | | | | ☐ Susp At Fault | | **Address** | | | |

| City<br>UNION CITY | State<br>GA | Zip<br>30291- | DOB<br>1976 | City | State | Zip | DOB |
|---|---|---|---|---|---|---|---|

| Driver's License No. | Class<br>C | State<br>GA | Country<br>US | Driver's License No. | Class | State | Country |
|---|---|---|---|---|---|---|---|

| Insurance Co.<br>GIRMA | Policy No.<br>GIRMA 1 | | Telephone No. | Insurance Co. | Policy No. | | Telephone No. |
|---|---|---|---|---|---|---|---|

| Year<br>2012 | Make<br>CHEVROLET | | Model<br>IMPALA | Year | Make | | Model |
|---|---|---|---|---|---|---|---|

| VIN<br>2G1WD5E35G1164351 | | Vehicle Color<br>WHITE | | VIN | | Vehicle Color | |
|---|---|---|---|---|---|---|---|

| Tag #<br>GV8336K | State<br>GA | County<br>FULTON | Year<br>2021 | Tag # | State | County | Year |
|---|---|---|---|---|---|---|---|
| Trailer Tag # | State | County | Year | Trailer Tag # | State | County | Year |

| ☐ Same as Driver | **Owner's Last Name**<br>CITY OF UNION CITY | **First** | **Middle** | ☐ Same as Driver | **Owner's Last Name** | **First** | **Middle** |
|---|---|---|---|---|---|---|---|

| Address<br>5047 UNION STREET | | | | Address | | | |
|---|---|---|---|---|---|---|---|

| City<br>UNION CITY | State<br>GA | Zip<br>30291- | | City | State | Zip | |
|---|---|---|---|---|---|---|---|

| Removed By: | | ☐ Request<br>☐ List | Removed By: | | ☐ Request<br>☐ List |
|---|---|---|---|---|---|

| Alco Test: | Type: | Results: | Drug Test: | Type: | Results:<br>-1 | Alco Test: | Type: | Results: | Drug Test: | Type: | Results: |
|---|---|---|---|---|---|---|---|---|---|---|---|

| First Harmful Event: | Most Harmful Event: | Operator/Ped Cond: | First Harmful Event: | Most Harmful Event: | Operator/Ped Cond: |
|---|---|---|---|---|---|

| Operator Contributing Factors: | | | Operator Contributing Factors: | | |
|---|---|---|---|---|---|

| Vehicle Contributing Factors: | Roadway Contributing Factors: | Vehicle Contributing Factors: | Roadway Contributing Factors: |
|---|---|---|---|

| Direction of Travel: | Vehicle Maneuver: | Non-Motor Maneuver: | Direction of Travel: | Vehicle Maneuver: | Non-Motor Maneuver: |
|---|---|---|---|---|---|

| Vehicle Class:  2 | Vehicle Type:  1 | Vision Obscured: | Vehicle Class: | Vehicle Type: | Vision Obscured: |
|---|---|---|---|---|---|

| Number of Occupants:  0 | Area of Initial Contact: | Damage to Veh: | Number of Occupants: | Area of Initial Contact: | Damage to Veh: |
|---|---|---|---|---|---|

| Traffic-Way Flow: | Road Comp: | Road Character: | Traffic-Way Flow: | Road Comp: | Road Character: |
|---|---|---|---|---|---|

| Number of Lanes: | Posted Speed:  0 | Work Zone:  0 | Number of Lanes: | Posted Speed: | Work Zone: |
|---|---|---|---|---|---|

| Traffic Control: | | Device Inoperative: ☐ Yes ■ No | Traffic Control: | | Device Inoperative: ☐ Yes ☐ No |
|---|---|---|---|---|---|

| Citation Information: | | | Citation Information: | | |
|---|---|---|---|---|---|
| Citation # _____ | O.C.G.A. § _____ | | Citation # _____ | O.C.G.A. § _____ | |
| Citation # _____ | O.C.G.A. § _____ | | Citation # _____ | O.C.G.A. § _____ | |
| Citation # _____ | O.C.G.A. § _____ | | Citation # _____ | O.C.G.A. § _____ | |

| **COMMERCIAL MOTOR VEHICLES ONLY** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Carrier Name: | | | | Carrier Name: | | | | |

| Address | City | State | Zip | Address | City | State | Zip |
|---|---|---|---|---|---|---|---|

| U.S. D.O.T. # | No. of Axles | G.V.W.R. | U.S. D.O.T. # | No. of Axles | G.V.W.R. |
|---|---|---|---|---|---|

| Cargo Body Type | Vehicle Config. | ☐ Interstate<br>☐ Intrastate | Fed. Reportable<br>☐ Yes ☐ No | Cargo Body Type | Vehicle Config. | ☐ Interstate<br>☐ Intrastate | Fed. Reportable<br>☐ Yes ☐ No |
|---|---|---|---|---|---|---|---|

| C.D.L.? | ☐ Yes ☐ No | C.D.L. Suspended? | ☐ Yes ☐ No | C.D.L.? | ☐ Yes ☐ No | C.D.L. Suspended? | ☐ Yes ☐ No |
|---|---|---|---|---|---|---|---|
| Vehicle Placarded? | ☐ Yes ☐ No | Hazardous Materials? | ☐ Yes ☐ No | Vehicle Placarded? | ☐ Yes ☐ No | Hazardous Materials? | ☐ Yes ☐ No |
| Haz Mat Released? | ☐ Yes ☐ No | | | Haz Mat Released? | ☐ Yes ☐ No | | |

| If YES: Name or four Digit Number from Diamond or Box: _____ | If YES: Name or four Digit Number from Diamond or Box: _____ |
|---|---|
| One Digit Number from Bottom of Diamond: _____ | One Digit Number from Bottom of Diamond: _____ |

| ☐ Ran Off Road  ☐ Down Hill Runaway  ☐ Cargo Loss or Shift  ☐ Separation of Units | ☐ Ran Off Road  ☐ Down Hill Runaway  ☐ Cargo Loss or Shift  ☐ Separation of Units |
|---|---|

GDOT-523 (07/17)

Page 4 of 6

### COLLISION FIELDS

| Manner of Collision: | Location at Area of Impact: | Weather: | Surface Condition: | Light Condition: |
|---|---|---|---|---|
| | | | | |

### NARRATIVE

On Sunday March 01 2020, at approximately 1646 hours, Officer MAYS, of the Union City Police Department was on patrol in the parking lot of the Exxon Gas Station located at 3985 Jonesboro Road in Union City Fulton County Georgia.

While on patrol Officer MAYS, observed a Black in color 2017 Jeep Grand Cherokee tag number RLE5431 VIN number 1C4RJEBG5HC877489 backed up in the front door area of the Exxon. MAYS, observed the front passenger seat occupied by a black male. Due to MAYS, having Pryor knowledge of a stolen Black Jeep that had been involved in several crimes with in the City Of Union City, as well as surrounding agencys, and also that the occupants were known to be armed with a firearm and possibly dangerous. MAYS continued to observe the vehicle.

 Approximately one minute later, a black male EARLY, exited the store and while he was wa king to the driver side of the Black Jeep, MAYS observed a large bulge in the front waist band of EARLYS gray sweat pants, that did not appear to be normal. Once EARLY got into the driver side of the Black Jeep, he drove off toward Buffington Road. At this time the tag was visible. MAYS advised Fulton County Dispatch to conduct a Georgia Crime Information Center search of the vehicles (continued...)

### DIAGRAM

### PROPERTY DAMAGE INFORMATION

| Damage Other Than Vehicle: | Owner: |
|---|---|

### WITNESS INFORMATION

| Name (Last, First) | Address | City | State | Zip Code | Telephone Number |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

### OCCUPANT INFORMATION

| # | Name (Last, First) EARLY, DIANTI | | | | | Address 5644 SOUTHCREST LN LITHONIA, GA | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Age 22 | Sex M | Unit # 1 | Position 9 | Safety Eq 0 | Ejected 0 | Extricated 2 | Air Bag | Injury 2 | Taken for 0 Treatment |
| | Injured Taken To | | By | | EMS Notified Time (Fatality Only) 0000 | | EMS Arrival Time (Fatality Only) 0000 | | Hospital Arrival Time (Fatality Only) 0000 | |

| # | Name (Last, First) MAYS, JOHN | | | | | Address 5060 UNION STREET UNION CITY, GA, 30291- | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 2 | Age 43 | Sex M | Unit # 2 | Position 1 | Safety Eq | Ejected 0 | Extricated 0 | Air Bag | Injury | Taken for 0 Treatment |
| | Injured Taken To | | By | | EMS Notified Time (Fatality Only) 0000 | | EMS Arrival Time (Fatality Only) 0000 | | Hospital Arrival Time (Fatality Only) 0000 | |

| # | Name (Last, First) | | | | | Address | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 3 | Age | Sex | Unit # | Position | Safety Eq | Ejected | Extricated | Air Bag | Injury | Taken for Treatment |
| | Injured Taken To | | By | | EMS Notified Time (Fatality Only) | | EMS Arrival Time (Fatality Only) | | Hospital Arrival Time (Fatality Only) | |

| # | Name (Last, First) | | | | | Address | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 4 | Age | Sex | Unit # | Position | Safety Eq | Ejected | Extricated | Air Bag | Injury | Taken for Treatment |
| | Injured Taken To | | By | | EMS Notified Time (Fatality Only) | | EMS Arrival Time (Fatality Only) | | Hospital Arrival Time (Fatality Only) | |

### ADMINISTRATIVE

| Photos Taken: ☐ Yes By: ■ No | *Officer Note: If collision resulted in a fatality, please send prompt notification to the GDOT Crash Reporting Unit via either email at GeorgiaFARS@dot.ga.gov or Fax at (404) 635-2963.* | | |
|---|---|---|---|
| Report By: MAYS, JOHN | Agency: GA0600600 | Report Date: 03/01/2020 | Checked By: WALKER, BARRY | Date Checked: 07/01/2020 |

GDOT-523 (07/17)    *MAIL TO: Georgia Department of Transportation, CRASH REPORTING UNIT, 935 East Confederate Ave., Atlanta, GA 30316-2590*

| SUPPLEMENT | | |
|---|---|---|
| GEORGIA MOTOR VEHICLE CRASH REPORT | | |
| Agency Case Number: 20-002897 | Estimated Crash Date: 03/01/2020 | Officer Name: MAYS, JOHN |

**NARRATIVE**

registration.

The vehicle left the parking lot traveling North Bound on Buffington Road. MAYS continued to follow the vehicle while he was waiting on the returns from dispatch. The vehicle made a right turn into the Parks Of Netherly Apartments Located at 6770 Buffington Road in Union City, Fulton County, Georgia. MAYS still awaiting returns from dispatch, continued to follow the vehicle into the apartment complex. Fulton County Dispatched advised MAYS the returns on the vehicle returned stolen out of the City Of Atlanta.

At this time MAYS notified dispatch that he was attempting to pull the vehicle over and advised of the location activating emergency equipemnt on his city issued patrol unit. The vehicles motion continued at approximately 13 MPH through the complex disregarding MAYS blue lights. MAYS activated his sirens and the vehicle continued to building 1400. MAYS continued to follow the vehicle knowing that the road was soon going to dead end to a cul-de-sac.

While the vehicle was approaching the cul-de-sac, the front drivers side and passenger side doors opened. MAYS observed the passenger jump out of the vehicle, fleeing on foot toward the wood line. Seconds later the driver EARLY jumped out of the driver side door and left the vehicle rolling. The vehicle ran over a curb and struck a tree before coming to a complete stop.

Once EARLY jumped out of the moving vehicle, MAYS approached the cul-de-sac in his patrol unit. EARLY appeared to loose his balance before falling to the ground. Once EARLY fell to the ground he stumbled attempting to stand before he fell on the ground and rolled in front of MAYS patrol unit. MAYS felt a bump as if the front tire had rolled over something. MAYS, quickly exited his patrol car and ran around to the passenger side at which point EARLY stood up and fled on foot into the woods.

(continued...)

**ADDITIONAL CITATION INFORMATION**

| Unit # ____ : | | Unit # ____ : | |
|---|---|---|---|
| Citation # _____ | O.C.G.A. § _____ | Citation # _____ | O.C.G.A. § _____ |
| Citation # _____ | O.C.G.A. § _____ | Citation # _____ | O.C.G.A. § _____ |
| Citation # _____ | O.C.G.A. § _____ | Citation # _____ | O.C.G.A. § _____ |
| Citation # _____ | O.C.G.A. § _____ | Citation # _____ | O.C.G.A. § _____ |
| Citation # _____ | O.C.G.A. § _____ | Citation # _____ | O.C.G.A. § _____ |
| Citation # _____ | O.C.G.A. § _____ | Citation # _____ | O.C.G.A. § _____ |
| Citation # _____ | O.C.G.A. § _____ | Citation # _____ | O.C.G.A. § _____ |

**ADDITIONAL OCCUPANT INFORMATION**

| Name (Last, First) , | | | | | Address ,, | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Age | Sex | Unit # | Position | Safety Eq | Ejected | Extricated | Air Bag | Injury | Taken for Treatment |
| Injured Taken To | | By | | EMS Notified Time (Fatality Only) | | EMS Arrival Time (Fatality Only) | | Hospital Arrival Time (Fatality Only) | |

| Name (Last, First) , | | | | | Address ,, | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Age | Sex | Unit # | Position | Safety Eq | Ejected | Extricated | Air Bag | Injury | Taken for Treatment |
| Injured Taken To | | By | | EMS Notified Time (Fatality Only) | | EMS Arrival Time (Fatality Only) | | Hospital Arrival Time (Fatality Only) | |

| Name (Last, First) , | | | | | Address ,, | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Age | Sex | Unit # | Position | Safety Eq | Ejected | Extricated | Air Bag | Injury | Taken for Treatment |
| Injured Taken To | | By | | EMS Notified Time (Fatality Only) | | EMS Arrival Time (Fatality Only) | | Hospital Arrival Time (Fatality Only) | |

| Name (Last, First) , | | | | | Address ,, | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Age | Sex | Unit # | Position | Safety Eq | Ejected | Extricated | Air Bag | Injury | Taken for Treatment |
| Injured Taken To | | By | | EMS Notified Time (Fatality Only) | | EMS Arrival Time (Fatality Only) | | Hospital Arrival Time (Fatality Only) | |

| Name (Last, First) , | | | | | Address ,, | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Age | Sex | Unit # | Position | Safety Eq | Ejected | Extricated | Air Bag | Injury | Taken for Treatment |
| Injured Taken To | | By | | EMS Notified Time (Fatality Only) | | EMS Arrival Time (Fatality Only) | | Hospital Arrival Time (Fatality Only) | |

GDOT-523 SUPP (07/17)

**SUPPLEMENT**
GEORGIA MOTOR VEHICLE CRASH REPORT

| Agency Case Number: 20-002897 | Estimated Crash Date: 03/01/2020 | Officer Name: MAYS, JOHN |

**NARRATIVE**

MAYS exited his patrol unit and began chasing EARLY into the woods, tackling him from behind. EARLY started resisting MAYS and reaching down the front of his pants. MAYS, continued giving loud verbal commands and trying to secure EARLYS hands telling EARLY, to stop resisting and put his hands behind his back. While resisting, EARLY was able to reach into his pants and pull out a Black Glock 9x19 serial number BBRT082 and threw it into the woods in front of him.

After a brief scuffle MAYS, was able to detain EARLY, placing him in double locked handcuffs to the rear. Once EARLY, was detained MAYS, immediately secured the weapon then placed it on the hood of his patrol car. MAYS, then advised dispatch of the out standing passenger. MAYS, then tried to stand EARLY to his feet and he stated " i cant stand you just ran over my foot". MAYS, then had EARLY to sit in the rear seat of the jeep. At approximately 1650 hours MAYS, notified dispatch to start grady to this location in reference to EARLYS, left leg injury.

Once Grady unit 822 arrived on scene EARLY, was transported to Grady by Grady number 822 for his leg injury. Officer SIMMONS, of the same department escorted the ambulance to Grady. MAYS, had the vehicle impounded by South Side Towing. MAYS, obtained Warrants on EARLY, for 16-8-7 and 16-10-24 . The FireArm with magazine and thirteen rounds of ammo was placed into evidence as well as a Black Apple cell phone and a Black Scale . A California tag number 8EMP955 was located in the vehicle and placed into property as well as one Black zara tennis shoe. A fireArm lock was placed on the firearm.

Paper work was faxed to the complaint room. No further action was taken.

**ADDITIONAL CITATION INFORMATION**

| Unit # ____ : | | Unit # ____ : | |
|---|---|---|---|
| Citation # _____ | O.C.G.A. § _____ | Citation # _____ | O.C.G.A. § _____ |
| Citation # _____ | O.C.G.A. § _____ | Citation # _____ | O.C.G.A. § _____ |
| Citation # _____ | O.C.G.A. § _____ | Citation # _____ | O.C.G.A. § _____ |
| Citation # _____ | O.C.G.A. § _____ | Citation # _____ | O.C.G.A. § _____ |
| Citation # _____ | O.C.G.A. § _____ | Citation # _____ | O.C.G.A. § _____ |
| Citation # _____ | O.C.G.A. § _____ | Citation # _____ | O.C.G.A. § _____ |
| Citation # _____ | O.C.G.A. § _____ | Citation # _____ | O.C.G.A. § _____ |

**ADDITIONAL OCCUPANT INFORMATION**

| Name (Last, First) , | | | | | Address  , , | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Age | Sex | Unit # | Position | Safety Eq | Ejected | Extricated | Air Bag | Injury | Taken for Treatment |
| Injured Taken To | | By | | EMS Notified Time (Fatality Only) | | EMS Arrival Time (Fatality Only) | | Hospital Arrival Time (Fatality Only) | |

| Name (Last, First) , | | | | | Address  , , | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Age | Sex | Unit # | Position | Safety Eq | Ejected | Extricated | Air Bag | Injury | Taken for Treatment |
| Injured Taken To | | By | | EMS Notified Time (Fatality Only) | | EMS Arrival Time (Fatality Only) | | Hospital Arrival Time (Fatality Only) | |

| Name (Last, First) , | | | | | Address  , , | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Age | Sex | Unit # | Position | Safety Eq | Ejected | Extricated | Air Bag | Injury | Taken for Treatment |
| Injured Taken To | | By | | EMS Notified Time (Fatality Only) | | EMS Arrival Time (Fatality Only) | | Hospital Arrival Time (Fatality Only) | |

| Name (Last, First) , | | | | | Address  , , | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Age | Sex | Unit # | Position | Safety Eq | Ejected | Extricated | Air Bag | Injury | Taken for Treatment |
| Injured Taken To | | By | | EMS Notified Time (Fatality Only) | | EMS Arrival Time (Fatality Only) | | Hospital Arrival Time (Fatality Only) | |

| Name (Last, First) , | | | | | Address  , , | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Age | Sex | Unit # | Position | Safety Eq | Ejected | Extricated | Air Bag | Injury | Taken for Treatment |
| Injured Taken To | | By | | EMS Notified Time (Fatality Only) | | EMS Arrival Time (Fatality Only) | | Hospital Arrival Time (Fatality Only) | |

GDOT-523 SUPP (07/17)